# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CAMERON MATHEW ROSE,

    Plaintiff,

v.

THE CITY OF RENO, *et al.*,

    Defendants.

Case No.: 3:19-cv-00166-MMD-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF Nos. 1, 1-1

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). Plaintiff also filed a motion for assistance with service. (ECF No. 5.) After a thorough review, the court recommends granting the IFP application, and allowing some claims to proceed, dismissing some claims with leave to amend, and dismissing others with prejudice. It is further recommended that the motion for assistance with service be denied as moot.

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Plaintiff cannot pay the filing fee; therefore, the application should be granted.

## II. SCREENING

**A. Standard**

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is

essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

Plaintiff's complaint names the following defendants: the City of Reno, Judge Dorothy Nash Holmes, City of Reno Police Department, Police Department Officer Bohr, Reno Police Officer Borba, City of Reno Police Sergeant John Doe 1, City Prosecuting Attorney Angela Gianoli, Club Cal-Neva Restaurant and Casino, Donald Stewart, Eldorado Resorts, Inc., Jeff Siri,

John Does 2-6, Joseph Hanek, Kathy Howard, Michael Blanco, and Michael Herrick. (ECF NO. 1-1 at 1.) The complaint contains four counts, each of which will be discussed below. Each count relates to Plaintiff's removal from several local casinos and subsequent arrest and prosecution.

**1. Count I**

Plaintiff alleges that on March 16, 2017, he entered the Cal-Neva with a small backpack that had a blanket strapped to the top. He was confronted by security guard Donald Stewart, who told Plaintiff that bed rolls were not permitted and he needed to take it elsewhere. Plaintiff continued on to the sports book to place a bet for March Madness. Stewart confronted Plaintiff at the sports book and again told Plaintiff to take the blanket and his possessions elsewhere. Plaintiff ignored him and told him to get a manager. Plaintiff then set his stuff down and took a seat. Plaintiff told Stewart he was not going to leave.

Then the Cal-Neva manager, Kathy Howard, arrived. Plaintiff maintained he had done nothing wrong. Howard checked Plaintiff's identification, and first stated Plaintiff could stay with his backpack, but advised Plaintiff it would not be permitted the next day, but Plaintiff disagreed with her. Then Howard told Plaintiff he needed to "shut his mouth." Plaintiff stood his ground and refused to leave. Howard asked for the Reno Police Department to be called to charge Plaintiff with trespassing.

The police arrived and told Plaintiff he had to leave or be arrested. Plaintiff stated he was being unconstitutionally excluded without a reason. Officer Borba arrested him. As he was being escorted out, he asked Borba to obtain witness statements, but Officer Borba refused. Plaintiff was transported to the Washoe County Detention Facility and was released after midnight.

Plaintiff asserts that he was excluded from the Cal-Neva for possessing a backpack, which was not a posted policy, and he had not previously trespassed so as to warrant exclusion. He further

contends that Howard restricted Plaintiff's free speech by hinging his right to access on not further contesting their request for him to leave with his belongings. He claims that his seizure by Reno Police was unlawful, and that witnesses were not questioned. Plaintiff states that he is asserting the following claims based on these facts: unlawful exclusion based on disabilities in a place of public accommodation; unlawful seizure; coercion; deprivation of free speech and expression; and a due process violation.

**a. ADA**

Plaintiff appears to claim that Howard and Stewart (and presumably the Cal-Neva) violated the Americans with Disabilities Act (ADA) when they excluded Plaintiff from their property.

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*.

The language of Plaintiff's complaint appears to invoke Title III of the ADA and public accommodations.

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Public accommodations include, among others, hotels/motels, restaurants and bars, a place of exhibition or entertainment. 42 U.S.C. § 12181(7). Discrimination under Title III includes "the imposition or

application of eligibility criteria that screen out or tend to screen out an individual with a disability … from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations" unless that criteria is necessary to provide those things. 42 U.S.C. § 12182(2)(A)(i).

As such, to state a claim for discrimination under Title III of the ADA, a plaintiff must allege: (1) he/she has a disability, (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation, and (3) he/she was denied public accommodations by the defendant because of his/her disability. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citations omitted).

Plaintiff asserts that he was excluded from the Cal-Neva based on his disabilities, but he does not allege that he suffers from any particular disability or that he was excluded based on his disability. Instead, he admits that he was excluded because he possessed a backpack with a blanket and refused to leave with it when asked.

The ADA claim should be dismissed; however, because it is not clear that Plaintiff could not amend to state a claim, Plaintiff should be given leave to amend. Plaintiff should be advised that if he states a colorable claim, it may only proceed against the place of public accommodation (i.e., Cal Neva) and not the individual employees.  Stewart and Howard should be dismissed with prejudice.

**b. First Amendment Free Speech**

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

The crux of Plaintiff's First Amendment free speech claim against Howard is that she told Plaintiff to shut his mouth, hinging his ability to stay at the property on his willingness to do so.

The First Amendment's Free Speech Clause provides: "Congress shall make no law … abridging the freedom of speech." The Fourteenth Amendment makes this law applicable to the States.

Howard, the complaint admits, was acting as the manager of the Cal Neva, and as such she could not be considered a person acting under color of state law. Therefore, the First Amendment free speech claim against Howard should be dismissed with prejudice.

Insofar as Plaintiff intended to sue the Cal Neva for this violation, he does not state a claim. "The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Manhattan Community Access Corporation v. Halleck*, 139 S.Ct. 1921, 1926 (2019). Said another way, "the Free Speech Clause prohibits only *governmental* abridgement of speech. The Free Speech clause does not prohibit *private* abridgement of speech." *Id*. at 1928 (citations omitted, emphasis original). The "state-action doctrine distinguishes the government from individuals and private entities." *Id*. (citation omitted). Under Supreme Court precedent:

> [A] private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, see, e.g., *Jackson [v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)], 95 S.Ct. 449; (ii) when the government compels the private entity to take a particular action, see, e.g., *Blum v. Yaretsky*, 457 U.S. 991, 1004-1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); or (iii) when the government acts jointly with the private entity, see, e.g., *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-942, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

*Id.*

///

///

Plaintiff has not included allegations that would indicate Cal Neva was a state actor. Even if he had, his claim would still fail. In *Venetian Casino Resort, L.L.C. v. Local Joint Executive Board of Las Vegas*, the Venetian Casino owned a sidewalk along Las Vegas Boulevard following the widening of the boulevard to add a lane of traffic where a public sidewalk was previously in place. The casino agreed that the function of the new sidewalk on its property would be the same as the former public sidewalk. The Ninth Circuit concluded it was still a public forum subject to the First Amendment's free speech clause. *Venetian,* 257 F.3d 937, 943 (9th Cir. 2001).The courts have not extended this theory to the inside of a private entity casino, even though it is open to the public. Therefore, the free speech claim should be dismissed with prejudice.

**c. Unlawful seizure**

The Fourth Amendment protects individuals "against unreasonable searches and seizures" by police officers. *See* U.S. Const. amend IV. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001); *see also Rosenbaum v. Washoe Cnty*, 663 F.3d 1071, 1076 (9th Cir. 2011) (noting that it is well established that an unlawful arrest violates the Fourth Amendment and gives rise to a claim for damages under § 1983).

Construing the allegations liberally, Plaintiff should be allowed to proceed with his unlawful seizure claim against Officer Borba since he appears to allege that there was not probable cause to arrest him for trespass.

Plaintiff does not include allegations to state a claim against the City of Reno/Reno Police Department. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-05 (1978); *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983

for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker."). Therefore, they should be dismissed. Plaintiff should be given leave to amend to the extent he wishes to proceed against the City of Reno/Reno Police Department on this claim, but any amended complaint must include factual allegations to support such a claim.

### d. Due process

Plaintiff's due process claim is based on the allegation that Officer Borba refused Plaintiff's request to take witness statements.

While an officer may not ignore exculpatory evidence that would negate a finding of probable cause, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (citation and quotation marks omitted).

Plaintiff does not allege what witness statements Borba should have taken, or how they were exculpatory. Therefore, this claim should be dismissed with leave to amend.

Finally, the court notes that Plaintiff mentions coercion, but there is no federal civil rights claim for coercion. Instead, Plaintiff's claims are more appropriately analyzed under the specific constitutional amendments and statutes discussed above.

### 2. Count 2

Plaintiff alleges that on May 6, 2017, he had made a few wagers at the Silver Legacy and Eldorado sports books. He went into the Silver Legacy to view the events, and after going to the restroom and returning to the sports book, he was confronted by security guard Michael Blanco. He was asked for identification, which he provided, and it came back negative for any prior trespass. Nevertheless, Blanco asked Plaintiff to leave. Plaintiff tried to explain to Blanco that he

had a right to use the property as a place of public accommodation and demanded to speak with a manager.

Security manager Michael Herrick arrived and Plaintiff tried to explain that they were not following Reno Municipal Code 8.10.010, as he did not have a prior record of trespass. Herrick still demanded Plaintiff leave, and Plaintiff refused. Plaintiff continued to refuse to leave and then was taken into custody and put into a recorded interrogation room in handcuffs.

The Reno Police Department subsequently arrived, and he again tried to explain he had not been trespassing. There were four officers, including Officer Bohr. Plaintiff was arrested and charged with a residential trespassing charge of trespassing not amounting to burglary.

Plaintiff alleges he was unlawfully excluded from the Silver Legacy for being in possession of excessive baggage, unlawfully seized, and his due process rights were violated.

**a. ADA**

As with Count 1, Plaintiff does not allege that he suffers from any particular disability or that he was excluded based on his disability. Instead, he admits that he was excluded because he excessive baggage. Plaintiff should be given leave to amend to attempt to state a claim under the ADA. Again, if he chooses to amend regarding the ADA claim, it may only proceed against the place of public accommodation and not the individual employees.  Therefore, Blanco and Herrick should be dismissed with prejudice.

**b. Unlawful Seizure**

Again, Plaintiff claims that his arrest for trespass was not supported by probable cause. Construing the allegations liberally, Plaintiff should be allowed to proceed against Officer Bohr for this claim. Plaintiff may proceed against the Doe officers once they are identified.

As with Count I, Plaintiff has not stated a claim against the City of Reno/Reno Police Department. Therefore, they should be dismissed from Count II, but with leave to amend.

To the extent Plaintiff is seeking to assert an unlawful seizure claim against Blanco and/or Herrick and the Silver Legacy, he does not make that clear, and there are no allegations that would plausibly suggest that they were state actors. Plaintiff should be given leave to amend, if possible, if he seeks to assert an unlawful seizure claim against Blanco, Herrick and/or the Silver Legacy.

**c. Due Process**

In Count II, Plaintiff does not state what conduct he claims violated his due process rights, other than the unlawful seizure, which was addressed under the Fourth Amendment above. Therefore, this claim should be dismissed with prejudice.

**3. Count 3**

Plaintiff alleges that on May 13, 2017, he entered to Eldorado Casino to make a bet at the sports book, unaware this was a part of the Silver Legacy property. Just before he was about to leave, he was confronted by two security guards for the Eldorado. He provided his identification and was checked for prior trespassing cases. Plaintiff noticed Michael Blanco with a few other security guards, including Joseph Hanek. Plaintiff was given back his identification and was told he was free to go; however, Michael Blanco then instructed his co-workers that Plaintiff was not free to go.

Plaintiff thought the situation was "unnecessarily escalating" and tried to run out of the property. He was grabbed by John Does 2-6 and Michael Blanco, and was taken to the ground while they tried to handcuff Plaintiff. Due to his resistance, the employees used ankle locks on Plaintiff, twisting his ankle hoping to gain his compliance. Eventually they removed his backpack and were able to cuff him, and dragged him to a security room and put him in a holding room to

wait for the Reno Police Department. Sergeant John Doe 1 arrived, and Plaintiff was cited. After leaving the property, he noticed intense pain in his ankle that had been twisted by an Eldorado employee. He went to Renown hospital and was treated for a sprained ankle.

In Count 3, Plaintiff asserts claims of unlawful seizure and excessive force.

Plaintiff's unlawful seizure and excessive force claims mainly center on the alleged conduct of John Does 2-6, Blanco, and possibly Hanek; however, he does not assert facts that would make it plausible to believe that these Eldorado/Silver Legacy employees or the Eldorado/Silver Legacy were state actors so as to state claims against them under section 1983. Again, private entities/individuals may be considered state actors if they perform a traditional, exclusive public function; the government compelled them to take a particular action; or, the government acted jointly with the private entity. Therefore, this claim should be dismissed with leave to amend, if possible, to attempt to state a claim against these defendants that sufficiently alleges facts upon which it is plausible that these defendants were state actors.

Nor is it clear what claim Plaintiff if Plaintiff is asserting a claim such as unlawful arrest/seizure against Sergeant John Doe 1. He does not state facts supporting a claim that his citation/arrest was not supported by probable cause. Instead, he asserts that he was put in a holding room after he attempted to flee, and then Sergeant John Doe 1 arrived and cited him. Plaintiff should be granted leave to amend to attempt to state a claim against Sergeant John Doe 1.

**4. Count 4**

Plaintiff alleges that on July 18, 2017, he was tried under Reno Municipal Code 8.10.010 for trespassing. Dorothy Nash Holmes was the presiding judge, and the prosecuting city attorney was Angela Gianoli. Plaintiff was told at his arraignment he would not get legal counsel because no jail time was being requested.

He met with the prosecuting attorney on July 18th, who tried to get Plaintiff to enter a guilty or no contest plea, and Plaintiff refused. He claims that the Gianoli coached the prosecution's witnesses into "altering incriminating aspects of their behaviors and presenting the Plaintiff as having been a disturbance." He claims he did not have counsel and so he could not subpoena witnesses, such as a witness at the Cal Neva incident. Plaintiff claims that Gianoli took advantage of an inexperienced non-lawyer. Judge Holmes gave Plaintiff until August 18, 2017 to file his arguments, and Plaintiff filed a 60-page brief. She made her ruling in November of 2017, which Plaintiff claims was in error (in the meantime he was re-arrested on an unrelated matter and detained). He claims that Judge Holmes sentenced him to 60-days jail time, that was suspended for a year.

Any claims in Count 4 should be dismissed with prejudice because the named defendants are immune from suit. *See In re Castillo,* 297 F.3d 940, 947 (9th Cir. 2002) (judges have absolute immunity for "acts performed … that relate to the 'judicial process'" which includes "charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives" or "the commission of grave procedural errors"); *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-44 (2009); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Plaintiffs claims fall squarely within the conduct protected by absolute prosecutorial and judicial immunity. *See Imbler*, 424 U.S. at 430-31 (prosecutorial immunity applies to conduct "intimately associated with the judicial phase of the criminal process," protecting prosecutors when performing traditional activities related to initiation and presentation of criminal prosecutions); *Milstein v. Cooley*, 257 F.3d 1004, 1008-09 (9th Cir. 2001) ("This immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution.").

///

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 1). Plaintiff is permitted to maintain this action without prepaying the filing fee or giving security therefor. This order granting IFP status does not extend to the issuance of subpoenas at government expense.

(2) The complaint (ECF No. 1-1) should be **FILED**.

(3) The complaint should be allowed to **PROCEED** with: the unlawful seizure claim in Count I against Borba; the unlawful seizure claim in Count 2 against Bohr, and the Doe officers when identified.

(4) The following claims should be **DISMISSED WITH LEAVE TO AMEND**: the ADA claims in Count 1 against the Cal Neva and in Count 2 against the Silver Legacy; the unlawful seizure claims against the City of Reno/Reno Police Department in Counts 1 and 2; the due process claim in Count 1; the unlawful seizure claim against Herrick and the Silver Legacy in Count 2; the unlawful seizure and excessive force claims in Count 3.

(5) The following claims should be **DISMISSED WITH PREJUDICE**: the ADA claims in Count 1 against Stewart and Howard, and in Count 2 against Blanco and Herrick; the free speech claim in Count 1; the due process claim in Count 2; the claims in Count 4; the claims for coercion.

(6) Plaintiff should be given 30 days from the date of any order adopting and accepting this Report and Recommendation to file an amended complaint correcting the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint

will no longer be before the court. Plaintiff shall clearly title the amended pleading as "AMENDED COMPLAINT." If Plaintiff fails to file an amended complaint within the 30 days, he should be advised that the complaint will proceed only on the claims allowed to go forward that are discussed above.

(7) The court will issue summonses for the defendants and address service once the amended complaint is filed, or the deadline to file an amended complaint passes, whichever occurs first. Therefore, the motion for assistance with service (ECF No. 5) should be **DENIED AS MOOT**.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 18, 2019.

*William G. Cobb*
William G. Cobb
United States Magistrate Judge