Cameron Mathew Rose

1580 Mill St Apt. A

Reno, NV 89502 (Mailing Address)

775-321-1033

Email: jesusmarijuana@yahoo.com (preferred means of communication)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAMERON MATHEW ROSE, ) | |
| Plaintiff, ) | |
| vs. ) | **CASE NO.** 3:19-cv-00166 |
| THE CITY OF RENO ) | |
| CITY OF RENO JUDGE DOROTHY NASH HOLMES ) | **CIVIL RIGHTS COMPLAINT** |
| CITY OF RENO POLICE DEPARTMENT ) | **PURSUANT TO** |
| CITY OF RENO POLICE OFFICER BOHR ) | **ADA TITLE III CFR PART 36** |
| CITY OF RENO POLICE OFFICER BORBA ) | **"JURY TRIAL DEMANDED"** |
| CITY OF RENO POLICE SERGEANT JOHN DOE#1 ) | |
| CITY PROSECUTING ATTORNEY ANGELA GIANOLI ) | |
| CLUB CAL-NEVA RESTARANT AND CASINO ) | |
| DONALD STEWART ) | |
| ELDORADO RESORTS INC. ) | |
| JEFF SIRI ) | |
| JOHN DOE #2 ) | |
| JOHN DOE # 3 ) | |
| JOHN DOE # 4 ) | |
| JOHN DOE # 5 ) | |
| JOHN DOE # 6 ) | |
| JOSEPH HANEK ) | |
| KATHY HOWARD ) | |
| MICHAEL BLANCO ) | |
| MICHAEL HERRICK ) | |
| Defendants, ) | |

1

## A. JURISDICTION

1)  This complaint alleges that the civil rights of Plaintiff, Cameron Mathew Rose who presently resides in Reno, Nevada where he is homeless, were violated by the actions of the below named individuals which were directed against Plaintiff at Cal-Neva, Silver Legacy, Eldorado, and through the Reno Municipal Courts on the dates of March 16th 2017, May 6th 2017, May 13th 2017, and July 18th 2017.

## DEFENDANTS

1) Defendant, City of Reno, located at One East First St., Reno, NV 89501, with a Mailing address of PO Box 1900, Reno, NV 89505. This Defendant is sued in its official capacity. This Defendant was acting under color of law as the City was the government agency used to permit and enforce, through malicious persecution, the unlawful exclusion of the Plaintiff from a place of public accommodation which has violated ADA and state laws.

2) Defendant, City of Reno Municipal Court Judge Dorothy Nash Holmes, who is employed as a Reno Municipal Court Judge at the Reno Municipal Court located at 1 South Sierra St with the mailing address of P.O. Box 1900 Reno, Nevada 89505. The Defendant is sued in her official. The Defendant was acting under color of law as the presiding Judge who handled the case in a perfunctory manner, who deliberately disregarded the law for her own agenda, and violated the Plaintiffs Due Process rights through refusal of legal council , 5th Amendment rights to protection from self incrimination as a result of being forced to defend oneself in trial, 6th Amendment violation of right to confront witnesses, and ignored the burden of proof requirements while providing no supportive legal basis for her decisions.

3) Defendant, City of Reno Police Department, who is a Government Law Enforcement Agency located at 455 East 2nd Street Reno, Nevada 89501. The Defendant is sued in its official capacity. The Defendant was acting under color of the law as the law enforcement agency used to enforce the unlawful of exclusion of the Plaintiff.

2

**DEFENDANTS CONTINUED**

4) Defendant, City of Reno Police Officer Bohr, badge #13246, who is employed as a Reno Police Officer by the City of Reno Police Department located at 455 East 2nd Street Reno, Nevada 89501. The Defendant is sued in his official capacity. The Defendant was acting under color of the law as the arresting officer who violated the Plaintiff's 4th Amendment right by unlawfully seizing the Plaintiff to enforce Silver Legacy's discriminatory unlawful exclusion.

5) Defendant, City of Reno Police Officer Borba, badge #12639, who is employed as a Reno Police Officer by the City of Reno Police Department located at 455 East 2nd Street Reno, Nevada 89501. The Defendant is sued in his official capacity. The Defendant was acting under color of law as the arresting officer who violated the Plaintiff's 4th Amendment right by unlawfully seizing the Plaintiff to enforce Cal-Neva's discriminatory unlawful exclusion.

6)  Defendant, City of Reno Police Sergeant John Doe #1, who is employed as a Reno Police Officer by the City of Reno Police Department located at 455 East 2nd Street Reno. The Defendant is sued in his official capacity. The Defendant was acting under color of law as the officer who cited the Plaintiff when Eldorado employee's used excessive force on the Plaintiff.

7) Defendant, City of Reno Prosecuting Attorney Angela Gianoli, who is employed as a Prosecuting Attorney for the City of Reno located at One East First St., Reno, NV 89501 with a mailing address of PO Box 1900, Reno, NV 89505. The Defendant is sued in her official capacity.  The Defendant was acting under color of law as the Prosecuting Attorney who tried the Plaintiff in a perfunctory manner and who colluded with witnesses, by instructing them on what was needed to say, just to obtain a conviction, rather then focusing on if an actual crime had or had not been committed which resulted in the Plaintiff being falsely convicted.

# DEFENDANTS CONTINUED

8) Defendant, Club Cal-Neva, located at 38 East 2nd St, Reno, Nevada 89501 with a mailing address of P.O. Box 2071 Reno, Nevada 89505. The Defendant is sued in its official capacity. The Defendant was acting under color of law as the as the place of public accommodation that violated ADA laws through malicious use of the City of Reno Police Department, the City of Reno and the Reno Judicial Court System.

9) Defendant, Donald Stewart, who is employed as a Security Guard for Club Cal-Neva located at 38 East 2nd St, Reno, Nevada 89501 with a mailing address of P.O. Box 2071 Reno, Nevada 89505. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law as the individual who confronted the Plaintiff over a "bed roll" for which the Plaintiff was discriminatory unlawfully excluded and who testified under oath and lied about when he declared Defendant needed to leave the property as the city's only witness for the Cal-Neva incident.

10) Defendant, Eldorado Resorts Inc., a Corporation associated with Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501, Silver Legacy Hotel/Casino located at 407 North Virginia Street, Reno Nevada 89501, and other Hotel/Casino's with the off site business address located at 100 West Liberty Street Reno, Nevada 89501. The Defendant is sued in its official capacity. The Defendant was acting under color of law as the place of public accommodation that violated ADA and state laws through malicious use of the City of Reno Police Department, the City of Reno, and the Reno Judicial Court System.

11) Defendant, Jeff Siri, who is the owner of Club Cal-Neva located at 38 East 2nd St, Reno, Nevada 89501 with a mailing address of P.O. Box 2071 Reno, Nevada 89505.The Defendant is sued in his official capacity. The Defendant was acting under color of law as the owner of the place of public accommodation that violated ADA and state laws through malicious use of the City of Reno Police Department, the City of Reno, and the Reno Judicial Court System.

4

**DEFENDANTS CONTINUED**

12) Defendant, John Doe # 2, who is employed as a manager at Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law through use of excessive force on the Plaintiff under the guise of trespassing claims.

13) Defendant, John Doe # 3, who is employed as an unknown position at Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law in assisting in the unlawful use of excessive force on the Plaintiff under the guise of trespassing claims.

14) Defendant, John Doe # 4, who is employed as an unknown position at Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law in assisting in the unlawful use of excessive force on the Plaintiff under the guise of trespassing claims.

15) Defendant, John Doe # 5, who is employed as an unknown position at Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law in assisting in the unlawful use of excessive force on the Plaintiff under the guise of trespassing claims.

16) Defendant, John Doe # 6, who is employed as an unknown position at Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law in assisting in the unlawful use of excessive force on the Plaintiff under the guise of trespassing claims.

# DEFENDANTS CONTINUED

17) Defendant, Joseph Hanek, who was employed as a Security Guard for Eldorado Hotel/Casino located at 345 North Virginia Street, Reno, Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law as one of the assisting employees in the unlawful use of excessive force on the Plaintiff under the guise of trespassing. The Defendant, who was the only testifying witness for the Eldorado case that committed perjury on the witness stand when he claims that the Plaintiff tried to run off the property without his Identification.

18) Defendant, Kathy Howard, who was employed as a manager for Club Cal-Neva located at 38 East 2nd St, Reno, Nevada 89501. The Defendant is sued in her individual and official capacity. The Defendant was acting under color of law as the manager who made the official demand for trespassing charges and the police called on the Plaintiff, after the Defendants attempts at coercing the Plaintiff to "shut his mouth" and accepting her demands failed, due to that they were violating ADA and state laws through malicious use of the City of Reno Police Department, the City of Reno, and the Reno Judicial Court System.

19) Defendant, Michael Blanco, who was employed as a Security Guard for Eldorado/Silver Legacy Hotel/Casino located at 407 North Virginia Street, Reno Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law as the original person to confront the Plaintiff over "excessive baggage," which violates ADA and state laws. The Defendant also was involved in the use of excessive force on the Plaintiff in the Eldorado case. The Defendant was one of two involved in testifying in the Silver Legacy case where the Defendant lied under oath about the Plaintiff being upset over being asked for ID and not over being asked to leave.

20) Defendant, Michael Herrick, who is employed as a Security Manager for Silver Legacy located at 407 North Virginia Street, Reno Nevada 89501. The Defendant is sued in his individual and official capacity. The Defendant was acting under color of law by authorizing the unlawful exclusion of the Plaintiff from a place of public accommodation that violated ADA and state laws through malicious use of the City of Reno Police Department, the City of Reno, and the Reno Judicial Court System. The Defendant was the other one of two involved in testifying in the Silver Legacy case who lied about the Plaintiff's demeanor while under oath.

1  Jurisdiction is invoked pursuant to ADA TITLE III 28 CFR PART 36 (Discrimination of those
2  with Disabilities of a place of public accommodation); pursuant to 28 U.S.C. section 1343 (a)(3);
3  pursuant to Title 42 U.S.C. section 1983 (deprivation of constitutional rights); pursuant to Title
4  18 U.S.C. section 241 (conspiracy of rights); pursuant to Title 18 U.S.C. section 242 (deprivation
5  of rights under color of law)  25 CFR 11.406 (coercion).

### B.  NATURE OF THE CASE

The Plaintiff was forcefully removed, through use of the Reno Police Department, on
several occasions from several properties under RMC 8.10.010 Trespassing, which escalated
from discriminative reasons related to the Plaintiffs chronic homelessness associated with the
Plaintiffs disabilities. In two cases the Defendant's tried to coerce the Plaintiff off property, yet
despite pleas made by the Plaintiff that the Defendant's actions violated the law and the Plaintiffs
constitutional rights, ultimately the Reno Police Department was used to unlawfully enact
discriminatory unlawful exclusion upon the Plaintiff. The justifications given for exclusion of the
Plaintiff as stated in trial were for being in possession of a "bed roll" (blanket strapped to
backpack) and "excessive baggage."

The Plaintiff was maliciously prosecuted and convicted under RMC 8.10.010 despite the
statute having the provision that "*if the property was open to the public at the time the warning
must have been given within the previous 6 months.*" The City of Reno cases, presented by City
Attorney Angie Gianoli and presided over by Judge Dorothy Nash Holmes, brought 4 witnesses
to testify against the Plaintiff over 3 cases, which excluded arresting officers, other employees
involved or supportive witnesses. The 4 witnesses conveniently all agreed in each case that the
Plaintiff had been belligerent, aggressive, and loud as the premise for the Plaintiffs removal from
the properties.

Despite the City's claims no examples of belligerent nor aggressive behavior we're provided by witnesses other then blanket statements of "such behavior" by City witnesses. The only example given is that the Plaintiff was "yelling about his constitutional rights" and refused to leave after being demanded to by security on each occasion.

A perfunctory trial was conducted that completely ignored standards set in law. For example the burden of proof was pushed off as the Plaintiff's responsibility as a defendant to prove beyond a reasonable doubt of his innocence. Further, the Plaintiff was refused legal council, with not even stand-by council provided, with the justification that since "No jail time was being requested" the courts were not required or deserved, despite that at sentencing the Plaintiff was given 60 days jail time suspended sentence which is still a sentence with jail time. The Plaintiff's right to a fair trial based off truth in evidence was not allowed.

As a result of being refused legal council the Plaintiff was denied his 5th Amendment right to not self incriminate as the Plaintiff stated he "often times gets loud," due to his disabilities which include mania and anxiety, which were used as admissions of guilt and taken out of context to provide justification where their was none. The Plaintiff was not allowed to invoke his 6th Amendment right to confront witnesses due to having issues with understanding how to get subpoenas to a location he could not enter to get witnesses info. Additionally the Plaintiff was unaware of what witnesses the state was bringing and the responsibility to subpoena arresting officers was made the Plaintiffs to assure the accuracy or lack there of, of state witnesses claims.

The Plaintiff alleges that the presiding Judge never gave legitimate consideration to the Arguments Of The Plaintiff, which were not given any recognition of professional consideration, with basis of example in that the Judge did not read or understand the timely filed 60 page brief provided as defense of the Plaintiff, with no legal argument to substantiate the verdict as contradiction to Plaintiffs arguments.

The Plaintiff contends that the statement provided by the Judge in her ruling that the Plaintiff provided a "*detailed factual argument*" that "*cites copious common law principles*" contradicts a guilty verdict. One can't have a factual argument when your argument is that you are not guilty and be guilty! The Plaintiff notes that the Judge didn't even comprehend the Plaintiffs main argument in the brief filed which was primarily that good cause must have existed not no cause in order to justify a lawful right to exclusion.

The Plaintiff further alleges that City of Reno Prosecuting Attorney, coached state witnesses in what to say, with only the goal of obtaining a conviction and not finding the facts of the case requiring proof that a crime had been committed through violation of all parts associated with a legal statute.

Plaintiff contends that the abuses of due process, in trespassing cases, related to places of public accommodation, that ignores the requirements of obtaining a legal restraining or stay away order, and the fact that these place of public accommodation received tax payer paid legal council provided by the City of Reno while the Plaintiff was refused legal council, to be disturbing.

Finally the Plaintiff has at least one witness who can contest a majority of the state's witness Donald Stewart's testimony, showing malicious intent upon the City's witnesses, that the Plaintiff was unable to have in trial. With a look at the proceedings held, the Plaintiff can show inaccuracies and illogicalities that are clearly altered for the state's benefit to manipulate an unlawful conviction.

## C. CAUSE OF ACTION

**COUNT 1:** The following civil rights have been violated: Unlawful exclusion of the Plaintiff based on his disabilities in a place of public accommodation, Unlawful seizure of the Plaintiff, Coercion, Deprivation of Free Speech and Expression, and Due Process violation.

On March 16th 2017, the Plaintiff entered Cal-Neva with a small backpack that had a blanket strapped to the top. While going up the escalator, at the Center Street entrance, the Plaintiff was confronted by Security Guard Donald Stewart, who was going down the escalator, who spotted the Plaintiff and said that "bed rolls were not permitted and he needed to take it elsewhere." This supposed policy is/was nowhere posted on the property, the Plaintiff has frequented the establishment on several occasions with no prior issues, and thus the Plaintiff continued to the Sports Book where he intended to go. This was the first day of NCAA March Madness.

Donald Stewart again confronted the Plaintiff, at the Sports Book, while the Plaintiff was waiting in line to make a bet shortly thereafter, again declaring that the Plaintiff "needed to take the blanket and his possessions elsewhere." The Plaintiff ignored the man, only bluntly telling Mr. Stewart to go get a manager, and proceeded to a ticket writer to place his wager. Given the circumstances the bookie asked permission to proceed from Donald Stewart who still allowed the Plaintiff to make a bet. He stated though that after the Plaintiff would still be required to leave.

After the Plaintiff again ignored Donald Stewart's demand to leave and proceeded to his normal viewing area and sat his stuff down in a corner and took a seat. At the time Peter Stewart, an uninvolved witness, whom was present during the incident, but was at the time unavailable for trial can attest to the continued confrontation which had already elicited a demand to vacate the property, contrary to testimony at trial.

Donald Stewart persisted that the Plaintiff had to go with additional security arriving at this time. The Plaintiff took an authoritative stance and declared that he "was not going to leave, he had done nothing wrong, that the establishment was a place of public accommodation and

must respect his constitutional rights, that his intrusion was unnecessary and illegal, that he has had the very same belongings with him on several other visits with no issue, that they were disturbing his right to quiet enjoyment of the facility, and to go get a manager, end of discussion."

The Plaintiff remained seated, quietly, and waited until the manager arrived. Prior to her arrival, the Plaintiff was congratulated on taking a stance, and briefly discussed his pick, initiated by a fellow patron using the casino that was in the area. One of the Security Guards, whom the Plaintiff was unable to subpoena due to lack of knowledge to the employees name, along with the stay away order issued as a result of the allegations, even questioned why the Plaintiff was being bothered, as the Plaintiff was "constantly there with the backpack, no problem, all the time."

When Kathy Howard, the Cal-Neva manager arrived, the Plaintiff continued to stand his ground that he had done nothing wrong and thus the demand for exclusion was unlawful as there was no grounds of reason. The Plaintiff was requested his ID, which he provided so as to check and verify he has not previously been trespassed, which came back clear.

After running the Plaintiffs information Kathy Howard declared that the Plaintiff would be permitted to stay with his backpack with the blanket attached to it. Kathy Howard stipulated with this directive that "the next day the backpack would not be permitted." The Plaintiff again disagreed declaring, "If it was good yesterday, it is good today, then its good tomorrow too there, should be no difference as to do so amounts to a permanent ban."

At this point that Kathy Howard tells the Plaintiff that he needs to "shut his mouth" and hinges his right to stay on property based upon whether or not the Plaintiff would shut his mouth and just accept their demands and expectations. The Plaintiff again stood by his rights to which Kathy Howard then demands that the Reno Police Department be called and the Plaintiff charged with trespassing. It is around this time that Kathy Howard snidely remarked to the Plaintiff that "Contrary to his belief they don't have to follow the constitution," in reference to the Plaintiffs repeated claims to his rights being violated. Kathy Howard was never present at trial.

1    While the Plaintiff waited for the Police, he again remained seated and waited quietly,
2    watching the sporting events as any normal patron would do. During this time the Plaintiff was
3    left alone until police arrived as Security including Donald Stewart and Manager Kathy Howard
4    stayed in the area but away from the Plaintiff leaving him alone without issues to the rights of
5    other patrons. When an Officer arrived the Plaintiff was instructed he had to leave or be arrested.
6    The Plaintiff again stood by his claim that the law was being violated and that they were
7    unconstitutionally excluding him without reason. The Plaintiff declared that if he must be
8    arrested then he would hold the Officer, the Police Department, the Casino, and the City
9    accountable for the violations.

10    When instructed to stand up, by the Arresting officer, to be arrested, the Plaintiff
11    complied and continued to assert that the arrest was unlawful. Officer Borba the arresting officer,
12    badge number 12639, at one point told the Plaintiff, in reference to his claims that the property
13    was place of public accommodation and the arrest unlawful, insisted "Good luck changing the
14    law, that the property was private." Before leaving the area and going down the escalator from
15    floor 3 to 2, the Plaintiff requested Officer Borba to obtain witness statements but Officer Borba
16    refused stating "it wasn't his job." The Plaintiff was transported to Washoe County Detention
17    Facility where he was released by court services after midnight the new day following his arrest.

18
19    In summary the Plaintiff was excluded from Cal-Neva for being in possession of a
20    backpack with a blanket strapped on it. These claimed policy violations were not posted in any
21    way. No prior incidences existed where the Plaintiff had been Trespassed to warrant exclusion
22    with no reason. When attempts to coerce the Plaintiff off property failed, management restricted
23    the Plaintiff's free speech by hinging the Plaintiffs right to access expecting the Plaintiff to not
24    further contest the intrusions and just accept their demands, which resulted in the managers
25    demand that the Plaintiff be removed and charged with trespassing by Reno Police Department
26    after the Plaintiff didn't meet her expectations, which resulted in the unlawful seizure of the
27    Plaintiff. Due to lack of proper officer training witnesses were not questioned and the Officer
28    enforced a Municipal Code outside of its provisions which resulted in the malicious prosecution
of the Plaintiff.

**COUNT 2:** The following civil rights have been violated: Unlawful exclusion of the Plaintiff based on his disabilities by a place of public accommodation. Unlawful seizure of the Plaintiff. Coercion. Due Process violation.

On May 6th 2017, the Plaintiff to avoid the rain had made a few wagers for the day at Silver Legacy and Eldorado Sports Books prior to the events. The Plaintiff went in to Silver Legacy to view the events. After using the latrine and returning to the Sports Book the Plaintiff was confronted by Security Guard Michael Blanco. The Plaintiff was asked for identification, which he provided, and was checked for prior trespassing cases which came back negative.  Despite this, Michael Blanco stated that, "he is going to have to ask the Plaintiff to leave."

The Plaintiff sighed and pulled out some paperwork, that he had recently wrongly filed with the courts for the Cal-Neva case, where the Plaintiff tried to reason with Mr. Blanco, by reading Venetian Casino Resort vs. Local Joint Executive Board of Las Vegas et. al., where the Plaintiff tried to explain he had a right to use the property as it's a place of public accommodation and demanded to talk with a manager. The Defendant and the Plaintiff then waited and watched the hockey game that was in overtime while waiting for management that the Plaintiff had a wager on.

Security Manager Michael Herrick arrived to which the Plaintiff tried  to explain his cases including stating that they were not following RMC 8.10.010 as he had not been trespasses before. Mr. Herrick did not care and still demanded that the Plaintiff leave to which the Plaintiff asserted he wouldn't. Michael Blanco and Michael Herrick then tried every way they could just to walk the Plaintiff off property, but the Plaintiff continued to refuse to leave and was taken into custody where the Plaintiff was put in a recorded interrogation room in handcuffs with his two backpacks still on. While in the interrogation room the Plaintiff became more vocal about his rights being violated.

When the City of Reno Police Department arrived, the Plaintiff again brought up the Venetian Case to the officers, and pointed out repeatedly how the arresting charge of RMC 8.01.010 required that if the property was open to the public at the time the warning must have been given within the previous 6 months which was made clear to them had not been established. There was 4 officers in total with 2 actively involved and 2 assisting officers. One of the arresting officers was Officer Bohr badge # 13246. The officers discussed for a period of time the provision that had not been met associated with RMC 8.10.010 but still arrested the Plaintiff charging him instead with a residential trespassing charge of trespassing not amount to burglary.

In summary, the Plaintiff was unlawfully excluded from Silver Legacy for being in possession of "excessive baggage." After attempts at coercing the Plaintiff off property failed, the Plaintiff was taken into custody, and then arrested which resulted in an unlawful seizure of the Plaintiff. Due to provisions associated with RMC 8.10.010 having not been met the arresting officers charged the Plaintiff under a different statute.

**COUNT 3:** The following civil rights have been violated: Unlawful seizure of the Plaintiff. Excessive force. Due Process violation.

On May 13th, 2017 the Plaintiff entered Eldorado Hotel Casino to make a bet at the Sports Book, unaware that the Eldorado was part of Silver Legacy property, but arrived just after the game had started. Just before the Plaintiff was about to leave the Plaintiff was confronted by 2 Security Guards for Eldorado. The Plaintiff was asked for Identification which he provided and was checked for prior trespassing cases. During this time the Plaintiff noticed Michael Blanco join with a couple other Security Guards. Amongst the Security Guards that confronted the Plaintiff was Joseph Hanek. The trespassing check came back cleared, the Plaintiff was given back his ID and the Plaintiff was told he was free to go but Michael Blanco instructed his coworkers that the Plaintiff was not free to go.

The Plaintiff seeing the situation unnecessarily escalating tried to run out of the property. The Plaintiff was grabbed by several employees, John Doe's #2-6 and Michael Blanco, which resulted in the Plaintiff being taken down to the ground then they tried to handcuff the Plaintiff. Due to the Plaintiffs resistance the employees used ankle locks on the Plaintiff twisting the Plaintiffs ankle in ways it's not supposed to go hoping pain would get the Plaintiff to comply to their unnecessary attack and unneeded seizure of the Plaintiff. Eventually they removed the Plaintiffs backpack and were able to cuff the Plaintiff where he was dragged to a Security room with a separate recorded holding room that the Plaintiff was put in to wait for the Reno Police Department. When an Officer, Sergeant John Doe #1, arrived the Plaintiff was cited instead of being arrested and free to leave. After leaving the property the Plaintiff noticed intense pain in the ankle that had been twisted around by an Eldorado employee. The Plaintiff went to Renown Hospital where he was treated for a sprained ankle.

In summary, the Plaintiff was confronted for trespassing, in which an altercation was escalated to allow excessive and unnecessary force, used to detain the Plaintiff who was in the act of doing what was desired in leaving the property. The excessive force used on the Plaintiff resulted in a hospital visit for a sprained ankle that the Plaintiff received as a result.

**COUNT 4:** The following civil rights have been violated: Due Process violations including refused legal council, reversed Burden of Proof, disregard to legal statute and breach of claims. 6th Amendment violation in right to confront witnesses. 5th Amendment violation to the Plaintiffs right not to self incrimination 8th Amendment violation to cruel and unusual punishment. Malicious persecution. Perjury committed by the City of Reno witnesses. Conspiracy of rights. Collusion.

On July 18th 2017 the Plaintiff was tried under RMC 8.10.010 Trespassing by the City of Reno. The presiding Judge was Dorothy Nash Holmes and the City Prosecuting Attorney was Angela Gianoli. The case #'s were CR17-02983, CR17-05916, and CR17-06624. After the first incident the Plaintiff attended his arraignment where he was first told that he would not be getting legal council because "no jail time was being requested." The Plaintiff then began work on filing a Motion to Dismiss pertaining to the Cal-Neva case along with a Motion to Continue, so that the Plaintiff could try to find his witnesses to subpoena, should the Motion to Dismiss be denied.

The Plaintiff making a mistake believing he could file his paperwork on a Friday April 28th 2017, which would have been on time within Nevada regulations, was unable to file the paperwork until May 1st 2017, as the City of Reno clerks office for the Reno Municipal Court was not open. The Silver Legacy incident occurred on May 6th, 2017 and the Motion to Dismiss is what the Plaintiff used when discussing the law with Michael Blanco. The Plaintiff specifically read from Venetian case cited in that brief. The Motion to Dismiss was denied due to procedural errors on the Plaintiff's part, such as not being filed timely and more importantly the Plaintiff didn't even remember to sign the document, although it was served on the City properly and the City did file a response to the motion. The motion to continue was granted however prior to the other two incidences pushing a May 8th 2017 trial to a June 14th 2017 trial date.

On June 13th 2017 the Plaintiff was arrested for missing court on the citation issued on the Eldorado incident mistaking that the matters had been already conjoined into one case. Despite the Plaintiff's informing Deputies that he had trial the next day he was unable to attend

1    and another FTA warrant was issued for the Plaintiff's arrest for the Cal-Neva and Silver Legacy

2    incidents. Even with the recent warrant issued the Plaintiff was released from Washoe

3    County  Detention Facility the same day as his scheduled court appearance, and made his way to

4    Court Services to check in with his case manager. It was the Plaintiff's case manager who

5    informed the Plaintiff that he did in fact have the warrant issued on him.

6

7        The Plaintiff immediately proceeded across the street from the District Court House to the

8    Municipal Court House where he was detained by a U.S. Marshall over the warrants. The

9    Plaintiff was placed in handcuffs and taken to a detainment room where the Plaintiff showed he

10   had just been released from Washoe County Detention Center and he wasn't trying to go right

11   back providing documentation. The Marshall went and discussed the matters with a judge just

12   prior to the days end, which otherwise would have resulted in the Plaintiff's re-incarceration, but

13   instead the Plaintiff was released and a July 18th 2017 trial date was set and held.

14       On July 18th prior to appearing before the Judge, the Plaintiff met with Prosecuting

15   Attorney Angela Gianoli, who again tried to resolve the issue by obtaining a guilty or no contest

16   plea, which the Plaintiff continued to refuse to do, claiming "He knows that a place of public

17   accommodation can not exclude for no reason and since he had not been belligerent or causing

18   problems for example, they had no case." The original concept is someone has to have done

19   something wrong to be a criminal. The Plaintiff again included mentioning the provision

20   associated with RMC 8.10.010 pertaining to places open to the public.

21

22       After meeting with Angela Gianoli the Plaintiff witnessed the Prosecuting Attorney's

23   witnesses Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek go in and discuss

24   the specifics of how they could prosecute the case. The Plaintiff is alleging that this is when the

25   City Attorney coached the witnesses into altering incriminating aspects of their behaviors and

26   presenting the Plaintiff as having been a disturbance which is why he was Trespassed. The

27   Plaintiff notes the ironic repetitiveness of witness answers, such as claims of belligerence, to

28   which this claim was repeated in statements made by City witnesses used in trial that the Plaintiff
     had acted in such a way. The city Attorney nor its witnesses provided the courts with

1    any actual supportive examples of expressed behavior, besides the Plaintiff refused to leave and

2    that the Plaintiff was declaring that his constitutional rights were being intruded upon in a loud

3    and belligerent manner.

4

5       Although, on an earlier noted date the Plaintiff had requested a continuance, so that the

6    Plaintiff could subpoena witnesses, the Plaintiff provided no witnesses at trial. The Plaintiff was

7    unable to accomplish the difficult task given the circumstances. This could have been avoided if

8    legal council had been provided. Examples of difficulties faced given the circumstances include,

9    but are not limited to, not being able to serve subpoenas for lack of information on witnesses and

10   the Plaintiff couldn't obtain the information from the accused properties for the Plaintiff was

11   currently under a trespass sanction due to the allegations under trial.

12      Information would include the names of employees involved such as a heavy set security

13   guard who was present on the day who even noted and asked "Why were they making an issue

14   with this guy (the Plaintiff), he is in here all the time with his bag and doesn't cause any

15   problems," Another would have been one of the slot attendants who worked for Cal-Neva whom

16   the Plaintiff associated with all the time. Another employee who could recount instances where

17   the Plaintiff was asked to quiet down, due to an on-site radio show being broadcasted, where the

18   Plaintiff complied with no issue. This also includes the fact that the Plaintiff was never provided

19   a complete witness list by the Prosecuting Attorney to even know who was being questioned and

20   that the arresting officers were not even going to be present at trial. Something the Plaintiff

21   expected would automatically happen.

22

23      Also, given that the Plaintiff was provided no legal council, the at the time Defendant was

24   compelled in order to provide some sort of presentable legal defense to the allegations and claims

25   made by the city, to self incriminate himself. Examples include the Plaintiff agreeing that he can

26   be loud, and that he was loud, when in fact the Plaintiff was not unreasonably loud given the

27   unnecessary confrontation and situation. He was not disturbing other guests as City witnesses

28   were able to claim. without proof.

A witness the Plaintiff should be able to provide for the courts who was present at the Cal-Neva incident, who goes by the name of Peter Stewart, who the Plaintiff prior to the trial held knew him only as "Cowboy," which is a name not allowed on a subpoena, was one of the witnesses the Plaintiff wanted at trial due to being a witness to the event. But the Plaintiff didn't run into Peter Stewart until after the trial had been conducted in August of 2017. The Plaintiff is currently still in contact with and can be present as a witness for the Plaintiff in these proceedings who can attest to the appropriate behavior expressed by the Plaintiff that was not disturbing other patrons.

The fact is the City Prosecuting Attorney intentionally took advantage of the situation of an inexperienced non barred lawyer so she could manipulate an unlawful judgement in her favor. This can be evidently seen in that over 3 separate occasions, 4 witnesses reported the same exact word for word justifications pertaining to the Plaintiff, as to why the Plaintiff was trespassed. Because the Plaintiff was "belligerent, aggressive" (means same thing as belligerent in fact to be belligerent is of higher aggression and redundant), "and loud."

Additional manipulations of events include, Donald Stewart's testimony that, he had not previously requested the Plaintiff to leave, that it wasn't until his loud, aggressive and belligerent behavior that he was trespassed and not the bedroll which prompted the initial confrontation in the first place. Plaintiff's witness Peter Stewart can attest that as soon as he saw the Plaintiff walk to the area and put his stuff down he was already being demanded to leave, and that at one point the Plaintiff was given permission to stay but a manager told the Plaintiff to shut his mouth and was thus Trespassed for the reason of exercising his right to free speech and not be coerced into leaving.

These manipulations continue with Michael Blanco's testimony which claimed he had only wanted to see the Plaintiff's identification and that the Plaintiff, despite having provided identification, had issue with being asked to do so and this was the Plaintiffs reason for demanding a supervising manager and not that he was being told to leave. It is again relayed that if it was the Plaintiff's belligerent, aggressive, and loud behavior as to why he was trespassed.

When the security manager Michael Herrick arrives his testimony claimed that the Plaintiff was already belligerent, aggressive, loud, and disturbing other patrons when he arrived, despite Michael Blanco's testimony that the Plaintiff and he watched a hockey game, his volume was a 3 out of a scale of 5 which equals average not loud, and admitted that the Plaintiff showed him paperwork and discussed the law.

Even Joseph Haneck for the third incident was able to convince the judge that despite having issues with providing ID for the Silver Legacy case, the Plaintiff provided ID again with no issue, but then tried to run out of the building without his ID and the use of force used against the Plaintiff was not discussed as if this was irrelevant as putting hands on citizens and wrestling with them on the ground for 10-15 minutes is routine.

And yet again the Plaintiff was belligerent, aggressive, and loud on this occasion too. Ironic coincidence? The Plaintiff challenges it is not. If the City had such a good case against the Plaintiff, why is it that manipulations into the time of demand to leave the property have been used rather then owning the moment? Because unless the Plaintiff was actually belligerent, aggressive, or loud the City had no justification for the intrusion and deprivation of the Plaintiff's rights.

After the trial was conducted a decision was not immediately rendered by Judge Holmes. Instead The Plaintiff was instructed that he would be given until August 18th 2017 to file his arguments. The Plaintiff in turn filed properly a 60 page detailed brief that covered every legal aspect that supported the Plaintiff's contention that in order for a property open to the public to exclude people, a good reason to exclude must be given over no reason, which included "copious common law principles," including Nevada statutes which define Casinos as a place of public accommodation, covered the basis that blankets nor excessive baggage were posted policies as noted by City witnesses and violated void for vagueness laws, included also was the claims associated with this case that homelessness, specifically those who are chronically homeless, are protected under the American with Disabilities Act., and so much more. The obvious

1  inexperience of the Plaintiff in acting as council can be seen through the Plaintiffs repeated
2  reference as the City being the State.

3

4    In turn the City timely responded to the Plaintiff's arguments within a month's time as the
5  Plaintiff was given. On October 16th, 2017 the Plaintiff was arrested on unrelated matters. The
6  Plaintiff was arraigned by Judge Holmes despite actively going over the cases discussed in this
7  brief. When the Plaintiff plead not guilty, the detention of the Plaintiff continued, while the 3
8  cases were still under decision.

9

10    In fact the Plaintiff remained incarcerated for 47 days, in which during this time in late
11  November the Judge made her ruling, which is filled with errors. The Plaintiff stood before Judge
12  Holmes on November 30th 2017 for sentencing where the Plaintiff despite having been denied
13  legal council, because no jail time was being requested, was sentenced to 60 total day's jail time,
14  suspended, for a period of 1 year. Thus doesn't this still constitute jail time? After sentencing the
15  Plaintiff, the Judge made it clear her opinion, telling the Plaintiff that "he brought this on himself
16  as all he had to do was listen and do what he was told and this wouldn't have happened." After
17  the proceedings it was brought up how the Plaintiff had been continued under incarceration since
18  Judge Holmes had left the Plaintiff in jail for at the time was 46 days under a jaywalking
19  allegation. Both Angela Gianoli and Judge Holmes admitted this was excessive, in which the
20  Plaintiff was put before Judge O'Neil for a hearing to get released, which the Plaintiff was,
    despite having trial the following Monday.

21

22    During the Plaintiff's incarceration, the Plaintiff hand wrote 3 copies for a motion to
23  appeal. Due to the manner in which the Plaintiff was being detained these legal documents were
24  not received by the courts. As a result the Plaintiffs right to appeal was in turn refused to be
25  allowed due to filing requirements not being met despite the Plaintiff kiting his intent. Which
26  leaves the Plaintiff no other options to seek redress for the due process and other violations that
    have occurred.

27

28

As mentioned earlier, the order provided by Judge Holmes was filled with errors. 15 plus errors in fact, including but not limited to a wrongly dated court order; a clear misunderstanding of the Plaintiff's claims made in the 60 page brief filed by the Plaintiff, which the Judge herself declared in her verdict that the brief was a "detailed factual argument" that "cited copious common law principles" which includes, that the Plaintiff's unacknowledged argument that is repeated over two dozen times within the first 20 pages of good cause being needed is not comprehended; a clear reversal of the burden of proof is declared noting "there was no evidence presented, other than the defendant's (Plaintiff) supposition, that he was trespassed for being homeless;" that the manner in which casino's are allowed to trespass citizens violates their due process rights; and yet not one supportive legal perspective is used to contend with the Plaintiff's arguments.

Is this how the courts work where an argument is presented but allowed to be ignored? If RMC 8.10.010 specifically declares that "if the property was open to the public at the time" as was applicable, then "the warning must have been given within the previous 6 months," which wasn't applicable, why was this irrelevant? 6 pages to recount the fictitious events only presented by City witnesses of events rather then covering any of the arguments presented in a legal form is preposterous and a blatant disregard for the standard of law. This is an example of the Plaintiff's claim to the perfunctory manner in which the Judge handled the case. She clearly took no care to the law and rendered her own arbitrary personal opinion which is contrary to the laws that govern the State and our country.

In summary, the Plaintiff was unlawfully convicted under 3 cases for a violation to RMC 8.10.010 despite not having met the required provisions associated with the municipal code, in which a complete mockery trial was conducted to perfunctorily go through the motions to pretend as if the City and the casino's were not repeatedly depriving the Plaintiff of his constitutional rights. The Plaintiff was permitted an archaic legal defense with no legal council which resulted in the Plaintiff being forced to self incriminate himself, nor was the Plaintiff's right to present an actual defense to the claims through truth in evidence to the events through a properly conducted process which includes getting those associated with the events side of the story, which would

include the bookie who took the Plaintiff's wager while being confronted, the video and audio from the detainment rooms used, and the presence of involved officers and other witnesses if a scene was really caused. Instead the Plaintiff was railroaded into having his right to access of a place of public accommodation hinge upon whether he was desired to be permitted through an arbitrary decision of any employee. While allowing the Plaintiff time to file a 60 page argument that was essentially ignored, this act seems rendered by Judge Holmes in order to pretend as though she provided the Plaintiff a fair trial when everything else she did went against current legal procedures and standards. The Judge in turn took no consideration to the innocence of the Plaintiff and was only focused on protecting the unlawful acts done by the city through the abuse of the casino's expectations. The Plaintiffs Due Process rights were violated in several ways giving the Plaintiff no opportunity to even have a chance to be given a fair trial and be given consideration towards the Plaintiffs innocence.

## Complete Summary of the Plaintiff's Claims

The Plaintiff is first and foremost questioning if, as perceived by some citizens, that "a business has the right to refuse service to anyone," is an actual law and for the specific legal statute which grants businesses open to the public the right to exclude for no reason, if it even exists.

Second, the Plaintiff is challenging, should any legal statutes exist that permits businesses open to the public to exclude for no reason, which legal standing holds authority, a businesses right to exclude for no reason or public accommodation law which does not permit businesses open to the public the right to exclude for no reason but rather exists the standard of good cause?

The Plaintiff further, queries whether citizens who meet the federal definition of being chronically homeless, as the Plaintiff does, qualifies under federally protected special interest group classification of those with disabilities and if the places of public accommodation violated ADA laws through their unlawful exclusion of the Plaintiff due to his chronic homelessness.

The Plaintiff is further, looking for clarification on whether businesses licensed in the United States must follow the Constitution of the land and their respective states. It seems that the Constitution would hold no standing if all that was needed to be exempt is to be established as a

business regardless of jurisdiction being established within the United States in which the Constitution is suppose to hold the highest authority.

The Plaintiff is challenging, whether the denial of a court appointed council or even stand by council violated the Plaintiffs Due Process rights and if this denial inhibited the Plaintiffs right to truth in evidence and a fair trial. The Plaintiff notes that given the normal procedure in self represented cases to conduct a Faretta Hearing one was not even considered as part of the process. Whether this denial prevented the Plaintiff the opportunity to obtain relevant witnesses due to the stay away order instituted while the allegations were processed needs to be addressed.

The Plaintiff is additionally challenging, whether the refusal to council resulted in the self incrimination of the Plaintiffs comment that he gets "loud and animated" as proof that the Plaintiff had acted on these occasions in a loud and belligerent manner.

The Plaintiff brings a facial challenge, pertaining to the legality of businesses designated as a place of public accommodation, being permitted to make policies that inhibit the public and violate the constitution as permissive. Examples include the right to seize property without warrant or to exclude citizens based upon citizens being constrained to keep their possessions with them. This challenge references not only the right to exclude on the basis of possessing a backpack as being unlawful but also references situations like Wal-Mart forcing customers to have a backpack put in a locker to permit use of the property and movie theaters refusing service of those in possession of a backpack and businesses around Keystone Ave that refuse service to food for those with bags who try to force people to leave their belongings unattended outside.

The Plaintiff challenges, if these policies are permissive, if clear and noticeable notice must be present so to accommodate a person's right to know that they are doing something wrong.

The Plaintiff desires that the conduct and performance of Judge Dorothy Holmes be subject to scrutiny as to whether the Judge was biased in her decisions rooted not in law but based upon her own opinion which violated the Plaintiffs Due Process rights. Did the Judge satisfy holding a trial where "proof beyond a reasonable doubt" was satisfied? Did the Judge disregard provisions associated with the criminal allegations? Can a contradictory verdict be admissible considering the Judge proclaimed the Plaintiffs legal claims to be factual and provided no counter arguments to support her ruling otherwise? Did the Judge actually comprehend the

claims of the Plaintiff? Did the Judge give the Plaintiff a fair trial? Was the Plaintiffs right to appeal disregarded by the Judge to avoid being scrutinized for being an unfair and unlawful trial and verdict?

The Plaintiff questions, if the City Attorney's coaching of witnesses violates ethical codes and the integrity of the courts? Whether having discussions where statements are manipulated and scripted impedes the process of truth in evidence.

The Plaintiff questions whether it was the Plaintiffs responsibility to subpoena officers associated with the incidences in order to prove accuracy of witness claims or if the City was required to provide these witnesses for cross examination if needed and desired in the Plaintiffs defense? The Plaintiff wants to address whether the City's negligence in providing a witness list could have contributed to the Plaintiffs lack of knowledge in the witnesses who would be present for questioning. The Plaintiff queries if Officer Burma's refusal to collect witness statements violated the Plaintiffs Due Process rights?

The Plaintiff brings to attention how a place of public accommodation can get to circumvent the trespassing process and receive tax payer paid assistance to prosecute those they desire as unwelcome who refuse to accept the business employees personal prejudices and bias or businesses with intrusive policies and if this is permissive. How can these businesses receive free legal council sponsored by the state but providing legal council, or even stand by council, to the accused Plaintiff was too much of a burden? How does this represent a fair trial?

And The Plaintiff looks to obtain an actual legal argument supporting or denying the arguments presented to the courts in the 60 page brief filed with the courts by the Plaintiff with an actual legal basis supporting the judgement to provide grounds for the decisions made.

## D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELEIF

1) Have you filed in state or federal courts involving the same or similar facts as involved in this action. _____ Yes __x__ No If your answer is "Yes," describe each lawsuit. (If more than one, describe the others on an additional page following the below outline)

2) Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted _____ Yes __x__ No. If your answer is "Yes," describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page following the below outline).

3) Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures? _____ Yes __x__ No. If your answer is "No," did you not attempt administrative relief because the dispute involved the validity of a: (1)_____ disciplinary hearing; (2)__x__ state or federal court decision; (3)__x__ state or federal law or regulation; (4)_____ parole board decision; or (5)_____ other.

## E. REQUEST FOR RELEIF

I believe that I am entitled to the following relief: A reversal on the unlawful convictions with the records sealed; established that Corporations are required by law to follow the Constitution; established that the homeless are a recognized protected special interest group, as chronically homeless should not be the only protected homeless, protected only because of the requirement of a disability; established that all places of public accommodation, as defined per NRS 651.050, unless good cause for exclusion is shown, i.e. unruly patrons, must obtain lawful stay away orders, from the courts, on patrons of the public, to exclude citizens from places of public accommodation; accountability from those that have violated my rights to include, impeachment of Judge Holmes, jail time for those who committed perjury, a and retraining of officers. Punitive damages. Damages for intentional infliction of emotional distress for the suffering I have had to go through. Court costs. Rulings on the noted challenges.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

_____

(Signature of Petitioner)

03-26-19
_____

(Date)

27