

Cameron Mathew Rose
561 Keystone Ave #257
Reno, NV 89503
(775) 683-7487
jesusmarijuana@yahoo.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

"NO COPY"

| | |
|---|---|
| CAMERON MATHEW ROSE, | Case No.: 3:19-cv-00166 |
| Plaintiff, | |
| vs. | **SCHOOL IS IN SESSION: FINAL COMPLAINT** |
| CITY OF RENO ET AL, | |
| Defendants | |

**STATEMENT OF FACTS**

**PART 1: WHAT PLAINTIFF IS CLAIMING**

A. **MAIN POINTS BEING ARGUED**

**1.** That the Plaintiff did not violate RMC 8.10.010, because the clear stipulation that specifically pertains to public accommodations, that "*If the property was at the time open to the public the warning must have been given within the previous six months,*" which has thus far been disregarded and remains unaddressed.

The Plaintiff claims that the stipulation does not grant places of public accommodation the same right to exclusion, exclusion based on a simple demand, that a private accommodation (a private residence) has, which the municipal code is also applicable to. Rather exclusion is only warranted for "good reason," as provided by Legislators, to have been violated first, hence the clear and district separation through the stipulation associated with the municipal code. (*Incident 1 and 2*)

That the Plaintiff did not violate RMC 8.10.010 because the Plaintiff did not willfully remain on the property. The Plaintiff was never given an opportunity to leave nor was he asked to leave on his own free will, upon learning that the Silver Legacy and Eldorado were under the same ownership, and thus that the Plaintiff was at the time currently trespassed from both properties relating to the unlawful trespass relating to incident 2.

Instead of notifying the Plaintiff and making a simple request to leave, Defendants Michael Blanco, Joseph Hanek, and five other unidentified Eldorado employees, immediately circled around the Plaintiff, thereby preparing

to physically detain the Plaintiff without need, prompting the Plaintiff to attempt to "run off the property" in order to try to avoid a physical assault of his persons and to try to leave on his own free will.

Defendants instead physically restrained and detained the Plaintiff, including using pain compliance techniques (ankle locks), creating violations to unreasonable use of force, false arrest and false imprisonment, malicious prosecution and acting without lawful authority. Therefore, the Plaintiff did not willingly remain on the property but rather he was kept on property by Defendants without need to create a violation where one was not intended. (*Incident 3*)

**2.** That the Plaintiff did not behave in a belligerent, aggressive, or loud manner as claimed by city witnesses Donald Stewart, Michael Blanco, Michael Herrick and Joseph Hanek at trial. That "contesting constitutional rights are being violated" is not an aggressive act that creates a threat to others nor does it display an act of aggression, as no harm can come from the constitutionally protected statement, in order to satisfy claims made of belligerent, aggressive, or loud conduct unpermitted by law. The Plaintiff further notes, that casinos and patrons, under normal operating circumstances, can be quite loud and that being loud on its own merits, does not constitute a sufficient reason to exclude unless a reasonable request to quiet down is made and ignored, because again volume levels do not necessarily constitute an aggressive act .

The Plaintiff is claiming, that since no other examples were testified as evidence to support the expressed un-permittable conduct, other than that that Plaintiff "contested his constitutional rights were being violated," burdens the question, what specifically was "belligerent, aggressive, and loud" about the Plaintiff's conduct? Further, why was the Plaintiff portrayed as having behaved extra aggressively, when belligerent already means highly aggressive, followed again by the description of the Plaintiff having been additionally aggressive, as if this was asserting a different inappropriate conduct acted upon by the Plaintiff? Yet again, the only claimed aggressive behavior was that the Plaintiff had contested his constitutional rights were being violated.

The Plaintiff can prove through numerous irregularities and contradictions made by the City's witnesses, showing perjured statements made by City witnesses, as the events would not have transpired the way they did, if the Plaintiff was in fact behaving belligerent, aggressive, and loud. I.e. Plaintiff talking his way to remain on property, Plaintiff watching a hockey game and the Plaintiff walking with Defendants as they tried to coerce the Plaintiff off the property as these are not aggressive displays of conduct. (*Incidents 1, 2, and 3 as claimed in Incident 4*)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 2

**3.** That contrary to customary application, maintaining that a prerequisite for discrimination, is that a recognized protected special interest group was discriminated against be first established, in order for protections for violations to arise, is contrary to how special interest groups obtained their recognized rights in the first place. That these protections exist, because these rights existed for others, yet have been denied to these people unnecessarily, is how these equal rights came about. Meaning that in order for protections to a special interest group to arise a violation to rights protected for the common man must have occurred first. Not vice versa that violations can occur only if, one can prove, that they were discriminated against under a recognized protected special interest group.

The Plaintiff is arguing that when discrimination based on a protected special interest group do arise, as are the circumstances in this case, this is an enhancement to constitutional violation(s) that have already occurred, because these specially protected interests groups are acknowledged as being an unpermitted excuse for exclusion, as they have historically been segregated and excluded from enjoying the same equal rights to the use of places of public accommodations, separate from the common man, without a legitimate reason. Thus, a common individual excluded for no reason also has right to a claim where clearly established rights have been violated. I.e. Refusal of service for no reason enforced through use of state actors to effectuate an unlawful seizure. Which includes in this case that the Plaintiff was subjected to cruel and unusual punishment, through criminalizing the Plaintiff's status of being homeless and not conduct, to effectuate an unlawful seizure of the Plaintiff to permit no reason exclusion. (*Incident 4 and thus ruled in this case*)

**4.** That discrimination based on an individual's chronic homelessness is discrimination based on a class of individuals with a disability and thus should be protected as a recognized special interest group as defined by law. Given that to be defined federally as "chronically homeless" one must first have a disability, and that it has been recognized that often it is the individual's disabilities that are creating the circumstances of homelessness, discrimination of the homeless can be linked to discrimination of an established protected special interest group in those with disabilities. This perspective, of whether the chronically homeless are a specially protected interest group under the recognized protected special interest group of those with disabilities, is an argument of first impression before the courts. (*Incidents 1, 2, 3, and 4*)

**5.** That the Defendants, Kathy Howard, Donald Stewart, Michael Blanco, and Michael Herrick, used coercion, through threat of arrest and malicious use of law enforcement to intimidate, deprive, and punish the Plaintiff for speaking up against intrusion related to his constitutionally protected rights to inclusion. (*Incidents 1 and 2*)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 3

**B.  NO REASON EXCLUSION IS UNPERMITTED BY LAW**

**1.** That places of public accommodation do not have a right to arbitrarily exclude others on demand without "good reason." Good reason can include a multitude of examples including but not limited to: destruction of property; posted policy or eligibility criteria violations i.e. smoking in unpermitted areas, motorcycle gang colors, no shoes-no shirt-no service, age restrictions, and now even required masks, etc.; being the cause of a disturbance of peace; being over intoxicated; having already been prior trespassed with it current and so on and so forth.

That by permitting on demand exclusion, would neglect clear and substantially established common law practices pertaining to places of public accommodation, such as public transportation law and innkeepers common law, with a lot of the same standards applying to hospitals, gas stations, restaurants, and all other places of public accommodation, whom have not been granted the authority to exclude on demand without legitimate cause as described in the paragraph above. In gist, the commonly understood customary notion that a "business reserves the right to refuse service for any reason," is only if "good reason" exists as any reason.

Additionally, the expectation of "good reason for exclusion" is to help ensure that arbitrary and discriminatory exclusions of recognized specially protected interest groups do not occur. If a place of public accommodation can exclude on demand for no reason, what is to prevent discriminatory exclusions? If reasonable reasons for wanting exclusion are not needed, and a place of public accommodation can exclude just upon demand, then rights protecting exclusion based on race, religion, disability, or some other form of protected special interest group, cannot be protected. (*Incidents 1, 2, and 3*)

**C.  POLICIES/ELIGIBILITY CRITERIA USED TO EXCLUDE VIOLATE THE LAW TO PERMIT ARBITRARY NO REASON EXCLUSION**

**1.** That claimed policy/eligibility criteria are in violation of Title III of ADA as the claimed issues were not a direct threat to the safety or health of others and that the policy/eligibility criteria are based on stereotypes and stigma associated with being homeless, in that they are not welcome. And that claimed eligibility criteria/policies are not in fact house rules but arbitrarily claimed infractions used to subject homeless to no reason exclusion through statement alone. (*Incidents 1 and 2*)

**2.** That un-posted policies allow for arbitrary application of procedures, that deny a patron a right to be free to steer between lawful and unlawful conduct, and that laws (rules) give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he/she may act accordingly. It acts as an establishment of

SCHOOL IS IN SESSION: FINAL COMPLAINT - 4

fact to officers that reason to exclude exists and that officers are not being used in a manipulative way to permit unlawful arbitrary and discriminatory exclusion through arbitrary enforcement. (*Incidents 1 and 2*)

**3.** That the demand to shut one's mouth or leave was unreasonable as it places an individual's right to inclusion on the ideological vicissitudes of the listener where no authority to make such a demand existed. In that the original reason for exclusion was withdrawn yet wanton use of authority over the Plaintiff was exerted. And that the original reason for exclusion discriminated against the Plaintiff for simply being homeless. (Incident 1)

**4.** That claimed policies/eligibility criteria of "suspicious suspect who looked lost" and "excessive baggage" are vague and ambiguous allowing for arbitrary enforcement. In that claimed reasons for exclusion are definitively discriminating against the Plaintiff for being homeless and nothing else. (Incident 2)

**D.  DISCRIMINATION BASED ON DISABILITIES**

**1.** That the Plaintiff was discriminated upon for being chronically homeless as the Plaintiff has disabilities that are related to why the Plaintiff was homeless and meets the federal definition of being chronically homeless. That it was the under the conditions of the Plaintiff being solely being in possession of items that by modern standards are normally innocent, which are related to the Plaintiff's homelessness, that were turned into an unnecessary issue to justify intrusion and exclusion. (*Incidents 1, 2, and 3*)

**2.** That Defendants were able to use specific components of the Plaintiff's disabilities to justify exclusion. I.e. psychomotor agitation and general loud behavior the Plaintiff displays, under the circumstances. (Incidents 1 and 2)

**3.** That aspects of the Plaintiff's disabilities, were targeted and manipulated to permit no reason exclusion and justification for doing so. Specifically, the psychomotor agitation aspects of the Plaintiff's Manic disorder and through presenting the Plaintiff to have essentially acted "out of control" when the Plaintiff was not. Thereby, manipulating the Plaintiff's Manic disorder, to present the Plaintiff to have been acting like a maniac, without basis other than, that the Plaintiff was contesting his Constitutional rights were being violated. (*Incidents 1, 2, 3, and 4*)

**4.** That the Plaintiff was denied participation and equal enjoyment of a place of public accommodation due to his disabilities which are linked to why the Plaintiff was homeless.  (*Incident 1, 2, and 3*)

**E.  UNREASONABLE AND UNNECESSARY USE OF AUTHORITY**

**1.** That the Plaintiff's right to liberty, autonomy, and dignity were intruded on through the unreasonable demands and wanton use of authority exerted over the Plaintiff by the Defendants. (*Incidents 1, 2, 3, and 4*)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 5

**2.** That the Defendants did not have lawful authority to seize the Plaintiff, use force against the Plaintiff or detain the Plaintiff in a security room off of the casino floor given the circumstances. (Incidents 2 and 3)

**3.** That it was the Defendants not the Plaintiff who acted aggressive and unreasonable under the circumstances. (*Incidents 1, 2, and 3*)

## F.  **FREE SPEECH**

**1.** That the Defendants used coercion, by threat of exclusion and subsequent arrest for refusal to leave, to silence the Plaintiff from speaking out, by hinging the Plaintiff's general invitation on accepting the arbitrary and unreasonable demand made without question. (Incident 1)

**2.** In that individuals have a right to speak out against unlawful and unreasonable experiences and thereby by doing so does not constitute criminal on its own merits. (*Incidents 1, 2, and 4*)

## G.  **UNLAWFUL SEIZURE**

**1.** That through excluding the Plaintiff for no reason, and using state actors to effectuate a no reason exclusion, the Defendants Kathy Howard, Donald Stewart, Officer Borba, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, and Officer Tom, have deprived the Plaintiff of his right to be free in his persons. And that through unlawful use of authority and unreasonable use of force, the Defendants Michael Blanco, Joseph Hanek and 5 unidentified Eldorado employees, also deprived the Plaintiff of his right to be free in his person.

In that through ignoring relevant provisions associated with RMC 8.10.010 casinos were permitted an abridgment to NRS 463.0129(1)(E), by allowing no reason exclusion which is not permitted by legislative law. The Plaintiff was excluded over his status of being homeless and not conduct and through "on demand exclusion" which is a right that has not been granted to places of public accommodation through legislative action. (*Incidents 1, 2, and 3*)

## H.  **CRUEL AND UNUSUAL PUNISHMENT**

**1.** That by using circumstances which focused on the Plaintiff's status of being homeless as reason for exclusion, rather than specific conduct, was a violation to the 8th Amendment, in that the Plaintiff was criminalized for being homeless.

**2.** That through the involuntary circumstances associated with being homeless, and being forced to keep the Plaintiff's personal possessions on him at all times to keep the Plaintiff's personal property safe, that by modern standards are normally harmless and innocent, that by permitting places of public accommodation the right to exclude

1  solely based on the Plaintiff's property, allows for arbitrary exclusion from any place of public accommodation simply

2  because the Plaintiff was homeless, which is further cruel and unusual punishment as the Plaintiff would be

3  continuously guilty of a crime. (*Incidents 1 and 2*)

4  **I.  SUBSTANTIVE DUE**

5      **1.** That it is not derived upon fundamental fairness to permit arbitrary deprivations of individuals inalienable

6  rights just because a place of public accommodation is a private entity. That by opening its doors to the public in the

7  pursuit of financial gain, a place of public accommodation loses its right to "on demand exclusion," reverting instead

8  to a patron must have presented "good reason" to exclude.

9      That through the custom of permitting revocation of a person's general invitation to a place of public

10  accommodation, similar to a private residence through a simple "demand to leave," violates substantive due process

11  right as there is no fundamental fairness in permitting unreasonable and arbitrary seizures to enforce exclusion when

12  an individual has not behaved in a manner that warrants intrusion or exclusion.

13      That on demand exclusion allows for the practice of unlawful seizures, as it negates an individual's

14  culpability to a crime, as the willful intent of the Plaintiff was his right to inclusion in incident 1 and 2. It also allows

15  for potential use of unreasonable force to be used unnecessarily to enforce expected exclusion, such was the

16  circumstances in incident 3 where the Plaintiff tried to leave the property but was physically prevented by Defendants

17  because he was already on property.

18      That it is not based around fundamental fairness to criminalize the Plaintiff's status of being homeless for

19  expecting exclusion. That the Plaintiff had just as much of a right to his property as he did to his general invitation to

20  the property willing the Plaintiff did not create legitimate health or safety issues.

21      And that it is not fundamentally fair to exert a wanton use of authority over individuals where an individual

22  has not acted in a manner that causes them to lose their autonomy i.e. good cause. And that speaking up against

23  unlawful intrusion does not create an act of criminality. (*Incidents 1, 2, and 3*)

24  **J.  EQUAL PROTECTION UNDER THE LAW**

25      **1.** That cruel and unusual punishment over the Plaintiff's status of being homeless and not conduct is a

26  violation of equal protection. (*Incidents 1,2,3, and 4*)

27      **2.** That exclusion through discrimination of one's disabilities, in this case linked to an individual's chronic

28  homelessness, is not equal protection under the law. (*Incidents 1,2, and 4*)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 7

**3.** That permitting on demand exclusion from places of public accommodation, creates unequal protections of the law as it permits rights to some places of public accommodation that are not granted to others. I.e. public transportation law and innkeepers' common law. This also thereby permits arbitrary no reason and discriminatory exclusion. And that Defendants made it clear they think are above the law as they do not have to follow the constitution, through the claim made by Kathy Howard during incident one and was also stated by Michael Herrick at trial (*Incidents 1, 2, and 4*)

**4.** In that Defendants used coercive tactics to deter the Plaintiff from exerting his rights to inclusion in order to deprive the Plaintiff of his constitutional rights. (*Incidents 1 and 2*)

**5.** That if arbitrary, discriminatory, and erratic arrests without cause from a place of public accommodation are to be avoided, giving patrons the ability to know what is right and wrong through conspicuous postings of policy are required. This also protects officers from enforcing discriminatory or arbitrarily declared rules. (*Incidents 1 and 2*)

**6.** That permitting on demand no reason exclusion creates an abatement to individuals inalienable rights where a place of public accommodation has more rights than the patrons whom they have granted a general invitation to the use of the property with the intent of financial gain. (*Incidents 1, 2, and 4*)

**7.** That it creates unequal protection under the law as it permits and encourages places of public accommodation the right to arbitrarily seize an individual's person, thereby permitting physically confrontational behavior for places of public accommodation, where similar conduct by the Plaintiff would result in an assault charge. It further would take away an individual's right to then defend oneself against physical abuse. What would have happened if the Plaintiff had physically fought back in incident 3? (*Incidents 2 and 3*)

**8.** In that Defendants were granted authority, normally invested in state actors, to handcuff and detain the Plaintiff for a misdemeanor allegation, going outside the Defendants scope of lawful authority as the Plaintiff was not a threat to himself or others nor committed a felony which would permit arrest. (*Incidents 2 and 3*)

**9.** That when Officer Borba refused to obtain witness statements, at the request of the Plaintiff, that the Officer created unequal protection of the law, as only the Defendants, Cal-Neva's, expectation for exclusion were being protected rather than determining if unlawful conduct had been displayed by the Plaintiff to warrant exclusion. Which if the circumstances were in the Defendants favor this would have provided additional witnesses which would

SCHOOL IS IN SESSION: FINAL COMPLAINT - 8

have only strengthened the case, thus no reason to not at least try to obtain statements from witnesses existed. (*Incident 1*)

**10.** In that Defendants were granted tax payer covered city attorneys to prosecute the Defendant who was forced to create a legal defense to criminal allegations as a homeless man, with disabilities, without any legal representation, as the Plaintiff was forced to act in pro per, a violation of the Plaintiff's due process rights. (*Incident 4*)

**11.** In that the prosecution withheld evidence, requiring the Plaintiff to have to request it by subpoena contrary to law, which put the Plaintiff at a disadvantage. The Plaintiff contests that video/audio recordings as necessitated by law were withheld, knowing that the events would have been incriminating in that it should unreasonable and discriminative conduct of the Defendants. This was done because the prosecution knew the Plaintiff was not familiar with the difficult subpoena process and could thus withhold damaging evidence. (*Incident 4*)

**12.** In that Prosecuting Attorney, Angie Gianoli, conspired with Defendants, Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, in a meeting just prior to trial, in order to deprive the Plaintiff of his rights, by committing perjury through knowingly falsely depicting the Plaintiff as having behaved belligerent, aggressive, and loud, without supporting evidence, other than the Plaintiff contested his constitutional rights were being violated, knowing that without some sort of claimed unpermitted conduct, no lawful reason for exclusion existed. (*Incident 4*)

**13.** In that the Presiding Judge, Dorothy Nash Holmes, held a Kangaroo Court which ignored recognized standards of law or justice, such as relevant provisions associated with a legal code (RMC 8.10.010). Or for example, ignored due process rights, such as a decision was made based on a predetermined conclusion, the Plaintiff was given no right to witnesses, the Plaintiff was not given a right to all available evidence such as video/audio related to incidents as required by law, anything the city witnesses claimed was held as fact without question, and the Plaintiff was not afforded legal representation, thereby creating an inferior brand of adjudication. (*Incident 4*)

**K.  PROCEDURAL DUE PROCESS**

**1.** That through Officer Borba's refusal to obtain witness statements at the request of the Plaintiff deprived the Plaintiff's due process right to procure witnesses in his favor. (*Incident 1*)

**2.** That through Defendants Michael Blanco and Michael Herrick attempts to coerce the Plaintiff off of the property, by attempting to deceive the Plaintiff, and thereafter handcuffing and then detaining the Plaintiff in a security

SCHOOL IS IN SESSION: FINAL COMPLAINT - 9

room off the casino floor once the Plaintiff again refused to leave for no reason, where the audio/video recordings were not forthright provided as required by law, denied the Plaintiff his right to procure evidence and witnesses in his favor. (*Incident 2*)

**3.** That through Defendants unreasonable use of force, handcuffing and detaining of the Plaintiff on the casino floor, with subsequent removal to a security room off the casino floor, where the audio/video recordings were not forthright made available that are required by law, denied the Plaintiff his right to procure evidence and witnesses in his favor. (*Incident 3*)

**4.** That the Plaintiff was denied his right to confront his accusers, as the city prosecuting attorney intentionally left the involved officers out of the trial, declaring "that if the Plaintiff wanted these witnesses it was his obligation as the acting attorney to have gotten this task accomplished and he had plenty of time," despite Officers clear involvement in the charges.

This is likely due to the prosecution understanding that the officers in Incident 2 who under normal circumstances recognized that RMC 8.10.010 was inapplicable would have been detrimental to the prosecution's case. And that with Officers available, the claims of belligerent, aggressive, and loud behaviors could no longer be corroborated as these were not the events but rather the Plaintiff had simply refused to leave claiming no reason exclusion based on discrimination of his status of being homeless. (*Incident 4*)

**5.** That through denying the Plaintiff his right to council, the Plaintiff was deprived of his right to procure witnesses in his favor, as the Plaintiff did not have access to the properties which is the only connection the Plaintiff had to many witnesses. (*Incident 4*)

**6.** That despite clearly established fact, that not only was the Plaintiff homeless and qualified for indigent court appointed legal counsel, but that the Plaintiff also suffers from mental illnesses, yet the Plaintiff was expected to defend himself against criminal allegations with no formal education or legal training and no legal assistance whatsoever, not even standby counsel, while still being expected to perform at the same standards as, the prosecuting attorneys representing the Casinos interests, created an obvious and egregious separation of equality under the law, as only the interests of the places of public accommodation were being considered. (*Incident 4*)

**7.** That by denying the Plaintiff counsel, the courts deprived the Plaintiff of well-established due process rights which denied the Plaintiff an opportunity to form a defense as the Plaintiff was withheld relevant evidence that through Nevada Gaming Laws that is required to be provided, by requiring that the Plaintiff understand how to file

SCHOOL IS IN SESSION: FINAL COMPLAINT - 10

subpoenas and navigate the legal system as a disabled homeless man. These expectations include prosecutions obligation to ensure that arresting officers, who were an involved party, were present for questioning at trial. (*Incident 4*)

**8.** That by denying the Plaintiff counsel the courts denied the Plaintiff access to counsel for appeals leaving again the burden on a disabled homeless individual to navigate the vast legal system and know the ins and outs in order to have his rights considered. (*Incident 4*)

**9.** That by denying the Plaintiff counsel the Plaintiff was subjected to proceedings where the only person looking out for the Plaintiff's rights was the Plaintiff. Not even the Presiding Judge seemed to care. (*Incident 4*)

**10.** That by forcing the Plaintiff to act in pro per the courts forced the Plaintiff into self-incrimination as the only way to provide a defense was to speak. (*Incident 4*)

**11.** That given the reason for refusal of council was because "no jail time was being requested," is not only an irrelevant issue, but rather if equal protection under the law was being upheld. I.e. the place of public accommodation received state sponsored representation so too did the Plaintiff have this right. That the Plaintiff was ultimately sentenced to 60 days suspended, violated the claim of no jail time, regardless of if the Plaintiff did or did not end up serving those suspended days in jail, as this was jail time being requested. (*Incident 4*)

**12.** That the Prosecution was not forthright with Discovery in attempts to hide as many incriminating facts as possible. I.e. the video from the security room during incident 2 would have clearly shown Michael Herrick berating the Plaintiff over his homelessness and treating the Plaintiff as an inferior human being for simple being homeless. A reasonable reason for the Plaintiff to have become upset and "loud." And unreasonable, malicious, and incriminating on behalf of the City's case and its witness. (*Incident 4*)

**13.** That the required standard of burden of proof in a criminal proceeding, beyond a reasonable doubt, was given extensive leniency by Judge Holmes in favor of the prosecution who had to only perform a perfunctory case with the only evidence being the testimony of 4 witness with 3 incidents on 3 different days in order to obtain a conviction. Yet, the highly relevant stipulation associated with RMC 8.10.010, that if the property was open to the public at the time the warning  must have come within the previous six months, thus a required element to prove a violation has been neglected and treated irrelevant considering witnesses testimony acknowledged that the Plaintiff had never been trespassed from the properties before. (*Incident 4*)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 11

**14.** That by conspiring to deprive the Plaintiff of his rights, through fictitiously portraying the Plaintiff as having behaved belligerent, aggressive, and loud, deprived the Plaintiff's due process right to a fair trial. That by the prosecuting attorney telling witnesses what to say, when she was not present during the incidents, instead of allowing witnesses to present the facts, lacks integrity and makes city witnesses testimony highly suspect as it is not their depiction of events but prosecuting attorney Angie Gianoli's. (*Incident 4*)

**15.** That the Presiding Judge had a predetermined decision that the Plaintiff was already guilty creating a partial tribunal where the courts were just going through the motions to render a predetermined conviction. (*Incident 4*)

**L.  CONSPIRACY TO DEPRIVE RIGHTS**

The Plaintiff is claiming that the defamatory statements were made, because it was recognized by the prosecuting attorney, through the first motion to dismiss filed by the Plaintiff pertaining to the Cal-Neva incident, that without some aspect of "good reason" no reason for exclusion existed, and thus no reason to prosecute existed under the circumstances. This can be seen through the decision to pursue an unlawful conviction in the way the prosecuting attorney coached city witnesses to intentionally and maliciously commit defamation of the Plaintiff's character, thereby presenting the Plaintiff as having been "out of control," instead of that the Plaintiff was simply demanded to leave and refused because he felt he was being discriminated against and unlawfully excluded for being homeless, so he was arrested.

Thus, in order to obtain a verdict these statements were conspired and scripted by city Prosecutor Angie Gianoli with city witnesses Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, when the prosecuting attorney talked with Defendants immediately prior to the trial. This was done to deprive the Plaintiff of his protected rights and to provide justification for exclusion where no justification existed despite that this element was unnecessary to prove a violation of RMC 8.10.010.

So why present the Plaintiff as having been hostile, which created a falsified narrative to create good reason to exclude, if places of public accommodation could exclude simply because they said so? The Plaintiff highlights the fact that perjury is criminal conduct impermissible by Nevada Gaming Law standards! So why lie and create a false narrative if they did not have to? (*Incident 4*)

**M.  PERJURY**

SCHOOL IS IN SESSION: FINAL COMPLAINT - 12

**1.** That the Defendants, Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, through coaching from Angie Gianoli, perjured themselves in order to present the Plaintiff as having behaved belligerent, aggressive and loud, to create reason for exclusion where none existed. That contrary to the facts that the Plaintiff had simply refused to leave as no good reason to exclude existed, the Defendants knowingly claimed, that the Plaintiff had behaved in a manner which would warrant exclusion, but not under RMC 8.10.010, as the Plaintiff had not behaved in such a manner, because the prosecution knew they needed good reason to exclude but did not have good reason so they needed to create reason. (Incident 4)

### N.  **DEFAMATION OF CHARACTER**

**1.** That the Defendants, Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, through coaching from Angie Gianoli, perjured themselves in order to present the Plaintiff as having behaved belligerent, aggressive and loud, to create reason for exclusion where none existed. That contrary to the facts that the Plaintiff had simply refused to leave as no good reason to exclude existed, the Defendants knowingly claimed, that the Plaintiff had behaved in a manner which would warrant exclusion, when the Plaintiff had not behaved in such a manner, because the prosecution knew they needed good reason to exclude but didn't have good reason so they needed to create reason.

### O.  **MALICIOUS PROSECUTION**

**1.** That the Defendants maliciously used RMC 8.10.010 to evict the Plaintiff from the premises through a no reason exclusion based upon the Plaintiff simply being homeless.

**2.** That the Defendants lied in order to obtain an unlawful conviction without considering that the lies being used were an unnecessary element to prove given the charge used.

**3.** That the despite the city clearly knowing it had no case, rather than dropping the charges, the prosecuting attorney coached witnesses into altering events to portray circumstances where good reason to exclude would be warranted despite that the conduct of the Plaintiff is a mute factor when considering charges under RMC 8.10.010 but not NRS

### P.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**1.** That the Defendants intentional used the Plaintiff's status of being homeless to exclude and criminalize the Plaintiff for refusal to accept the unlawful discriminatory exclusion.

**2.** That the City, through the Prosecuting attorney Angie Gianoli, knew that the Plaintiff had not committed a violation to RMC 8.10.010 but pursued an unlawful conviction through known lies and embellishments.

**PART 2: VIOLATIONS**

**A.   INCIDENT 1:** CAL-NEVA

**(1) False Arrest/False Imprisonment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (Due Process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection under the law).

**(US Constitution) 12.** 1st Amendment right to free speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How False Arrest Occurred**: **1.** The Plaintiff was arbitrarily arrested under a "No Reason Exclusion," through RMC 8.10.010 (trespassing), by disregarding the relevant provision associated within the municipal code, that if the property was open to the public at the time the warning must have been given within the previous six months.

This was done to permit an abridgment to NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators), NRS 651.070 (equal enjoyment of places of public accommodation by those with disabilities), and Title III of the ADA §36.202(a)(denial of participation of places of public accommodation through discrimination of the chronically homeless. A class of individuals with disabilities) by permitting policies/eligibility criteria without regard to associated stereotypes and stigma.

The Plaintiff was originally confronted by Donald Stewart and demanded to leave for a claimed "bedroll eligibility criteria/policy violation" (statement made by City witness Donald Stewart at trial). This claimed infraction was later during the incident, permitted by management (also acknowledged by City witness Donald Stewart at trial).

This claimed policy/eligibility criteria is not posted in order to permit arbitrary and discriminatory exclusion. The Plaintiff is further alleging that the claimed eligibility criteria/policy is not in fact a house rule but rather a point of interest used only to impermissibly exclude the homeless, who are often involuntarily constrained to keeping their personal possessions on them.

Which includes, those who are chronically homeless, who are homeless based on their disabilities. The expectation for exclusion was not based off a safety or health violation that caused a disruption to the normal operations or unacceptable conduct displayed by the patron to give "good reason" for exclusion.

The Plaintiff notes, that if the claimed policy/eligibility criteria of no "bedrolls" or more precisely a blanket held secure to a backpack, was in fact a house rule:

    1) The Policy/Eligibility Criteria would be applied across the board to all patrons on all parts of the property (mothers in the dinners are permitted blankets for little ones; the pub crawl has had permitted blankets i.e. the Onesie Crawl).

    2) Eligibility Criteria/Policies would be precisely posted in a conspicuous manner which would be expected to be followed, with no exceptions made (as management did in this case), to avoid biased arbitrary enforcement of rules, unless other modifications have been granted through legal decree.

    3) The Policy/Eligibility Criteria issue would have previously been brought to the Plaintiff's attention during the prior 6 months where no violations or disruptions to the normal operations were brought up despite the Plaintiff being in visible possession of the same contested property under the circumstances.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 15

Yet, the Plaintiff was ultimately excluded, because the Plaintiff was unreasonably demanded by Kathy Howard to "shut his mouth or leave." This violation hinged the Plaintiff's right to inclusion, on silencing the Plaintiff from continuing speaking out on protecting his right to inclusion. This is also a request that does not take into consideration the psychomotor agitation [urge to keep talking] component of the Plaintiff's Manic disability. Additionally, no current Policy/Eligibility criteria exists to permit arbitrary application to one's general invitation as this would be contrary to NRS 463.0129(e) and common law.

The unreasonable demand made by Kathy Howard, occurred when the Plaintiff had been contesting his constitutional rights would be violated through any further enforcement of claimed discriminatory policy, as prior to the demand no reason to exclude then existed, after talking it over with management no reason existed, so why should any other days be different with no reason, which violated NRS 651.080(a)(b)(c), NRS 651.090(a)(b)(c), and Title III of ADA §36.206(b)(c[1-2]).

Immediately after being told to "shut his mouth or leave," the Plaintiff questioned, how talking down to someone in a disrespectful and authoritative manner was professional or equal treatment, and as a result the Plaintiff was unlawfully declared trespassed, by Cal-Neva employees Kathy Howard giving Donald Stewart permission to "call the police," and the Plaintiff was arrested by Reno Police Department (RPD) Officer Borba badge #12639 for refusing to leave because no reason to exclude existed.

Upon the Officers arrival no investigation was made as to if the Cal-Neva had lawful reason to exclude. It was instead expected that they said leave that means leave. Officer Borba also ignored the Plaintiff's requests for the Officer to obtain witness statements, claiming he did not have to. Officer Borba was of the perspective that if a place of public accommodation staff said leave that means leave, including telling the Plaintiff "Good Luck, changing the law on that one," when the Plaintiff was contesting that arresting people for having done nothing wrong was a violation to the law.

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(2) Coercion Legal Authority**: **(Federal)** **1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA)** **3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2])

SCHOOL IS IN SESSION: FINAL COMPLAINT - 16

(coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat. **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (Due Process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right not to be deprived of life, liberty, property, and pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to permit arbitrary No Reason Exclusion**: 1. RMC 8.10.010 (trespassing).

**Rights/Privileges Interfered, Deprived, and Punished for Speaking Out About Intrusion**: **1.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **2.** NRS 651.070 (equal enjoyment by those with disabilities). **3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **5.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat). **6.** 1st Amendment right to contest infringement of rights (free speech)/Nevada Constitution Article 1 Section 9. **7.** 4th Amendment right to be free from unlawful seizure/Nevada Constitution Article 1 Section 18. **8.** 8th Amendment right to be free from cruel and unusual punishment/Nevada Constitution Article 1 Section 6. **9.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process/Nevada

Constitution Article 1 Section 1. **10.** 14th Amendment equal protection under the law/Nevada Constitution Article 1 Section 24.

**How Coercion Occurred: 1.** Defendant Donald Stewart used a fictitious policy to provide arbitrary justification used to exclude homeless from the Casino without cause. The Plaintiff went about his business and proceed to the sports book to make a wager.

Donald Stewart followed the Plaintiff to the sports book where the Plaintiff was waiting in line and again demanded that the Plaintiff leave the property and to take the Plaintiff's personal possessions elsewhere as he was not welcome. The Plaintiff stated that Donald Stewart was intruding upon the Plaintiff's rights for no reason asked for a manager and then proceeded to the sports book counter to place a wager.

**2.** Donald Stewart followed the Plaintiff to the counter still expecting the Plaintiff to leave. The bookie (person who takes a sports bet), asked Donald Stewart if the Plaintiff could make a bet and was permitted by Donald Stewart (acknowledged by Donald Stewart at trial), declaring that afterwards the Plaintiff would still have to leave.

After placing his bet, the Plaintiff proceeded to his normal viewing area, sat his bag against the wall out of the way, and took a seat in an available chair along the wall. Donald Stewart persisted that the Plaintiff had to leave in which at this time another unknown security arrived to assist Donald Stewart.

The Plaintiff in a more assertive manner contested his constitutional rights were being violated (statement made by City Witness Donald Stewart at trial). The Plaintiff claimed, that "he (Donald Stewart) was violating my (the Plaintiff) constitutional rights, was disturbing my right to the quiet enjoyment of the premises for no reason, claiming a policy that is discriminatory," and that "he (Donald Stewart) had no reason to be mandating that I (the Plaintiff) leave," and because of that the Plaintiff demanded to speak with management.

**3.** When management, Kathy Howard, arrived she first checked the Plaintiff for any prior issues where the Plaintiff would have been trespassed, but no incidents existed (stated by Donald Stewart at trial). After hearing the Plaintiff's complaint, Kathy Howard stated the Plaintiff could remain on property with the contested items (backpack with blanket attached called a "bedroll"), for the day.

When the Plaintiff spoke up again about how the arbitrary application of policy would still be violating his Constitutional rights, the Plaintiff was demanded to "shut his mouth or leave."

SCHOOL IS IN SESSION: FINAL COMPLAINT - 18

**4.** After questioning how the demand was an acceptable way to talk to a patron, the Plaintiff was ultimately punished (arrested) for speaking out about the way he was being spoken to.

**5.** Kathy Howard's proclamation that "much to his (the Plaintiff) dismay, they don't have to follow the Constitution.

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(3) Denial of Participation Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment; **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process; **16.** 14th Amendment equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.080(a)(b)(c) (coercion). **21.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to permit arbitrary No Reason Exclusion:** 1. RMC 8.10.010 (trespassing).

**Connection to Disabilities**: **1.** A public accommodation shall not subject an individual on the basis of disabilities of such individual or class, directly or through other arrangements, to a denial of the opportunity of

the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

The chronically homeless are a class of individuals with disabilities. Often these individuals are homeless due to the individual's disabilities. The Plaintiff was at the time chronically homeless by federal definition and it was the Plaintiff's disabilities that were primary factors to the Plaintiff's homelessness.

As a result of being homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, that criminalized activities which by modern standards are normally innocent, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation, and not based on unlawful conduct by the Plaintiff but rather the Plaintiff's status of being chronically homeless.

The property in question did not pose a direct threat to the safety or health of others nor did it disrupt the normal operations of the Casino. In fact, management permitted a modification to the claimed policy, but then hinged the Plaintiff's right to inclusion on silencing the Plaintiff from contesting that his constitutional rights were being violated, as an unnecessary and unreasonable display of authority.

This unreasonable demand further targeted the Plaintiff's psychomotor agitation, urge to keep speaking, aspects of the Plaintiff's manic disorder. Given that the contested items had been permitted, the Defendants had no cause for authority to be exerted over the Plaintiff to make such a demand and to expect government assistance in excluding a patron that had given no reason to be excluded.

After being permitted the items, with the Plaintiff proving to have been within his lawful rights to access the property, the Defendants had no basis for a denial of participation and thus had an obligation to stop disturbing the Plaintiff's right to enjoy the goods and services, not make unreasonable demands with the Plaintiff expected to comply, in order to maintain the Plaintiff's right to inclusion. This expectation hinges an individual's general invitation on the ideological vicissitudes of the listener and allows for arbitrary no reason exclusions.

**How a Denial of Participation Occurred**: 1. The Plaintiff was originally refused service by Donald Stewart for being in possession of claimed "bedroll/blanket policy violation." The claimed policy is not compliant with Title III of ADA §36.208 Direct Threat as it was used to stereotype the homeless/chronically homeless, for no

SCHOOL IS IN SESSION: FINAL COMPLAINT - 20

reason exclusion. After persistence from Donald Stewart that the Plaintiff had to leave the Plaintiff demanded to speak with management

**2.** The Plaintiff convinced management that the original items being contested would be permitted for the day. When the Plaintiff commented how any future enforcement of claimed policy would amount to a "permanent no reason exclusion" the Plaintiff was told by Kathy Howard to "shut his mouth or leave." When the Plaintiff questioned Kathy Howard's crude behavior was acceptable the Plaintiff was subsequently declared trespassed and then arrested.

**(4) Denial of Equal Enjoyment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 9 (free speech). **6.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **7.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 8.** 1st Amendment Free Speech. **9.** 4th Amendment right to be secure in persons. **10.** 8th Amendment right to be free from cruel and unusual punishment. **11.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process. **12.** 14th Amendment equal protection under the law.

**(Nevada Law) 13.** NRS 199.310 (malicious prosecution). **14.** NRS 200.460(1) (false arrest). **15.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **16.** NRS 651.070 (equal enjoyment by those with disabilities). **17.** NRS 651.080(a)(b)(c) (coercion). **18.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary No Reason Exclusion**: **1.** RMC 8.10.010 (trespassing).

**Connection to Disabilities**: **1.** All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the ground of a disability.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 21

The chronically homeless are a class of individuals with disabilities. Often these individuals are homelessness due to the individual's disabilities. The Plaintiff was at the time chronically homeless and it was the Plaintiff's disabilities that were a primary factor to the Plaintiff's homelessness.

As a result of being homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, that criminalized activities which by modern standards are normally innocent, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation, and not based on unlawful conduct by the Plaintiff but rather the Plaintiff's status of being chronically homeless.

The property in question did not pose a direct threat to the safety or health of others nor did it disrupt the normal operations of the Casino. In fact, management permitted a modification to the claimed policy. But then hinged the Plaintiff's right to inclusion on silencing the Plaintiff from contesting that his constitutional rights were being violated as an unnecessary and unreasonable display of authority.

This unreasonable demand further targeted the Plaintiff's psychomotor agitation, urge to keep speaking, aspects of the Plaintiff's manic disorder. Given that the contested items had been permitted, the Defendants had no cause for authority to be exerted over the Plaintiff to make such a demand.

After being permitted the items, with the Plaintiff proving to have been within his lawful rights to right to equal enjoyment of the property, it was the Defendants obligation to stop disturbing the Plaintiff, not make unreasonable demands with the Plaintiff expected to comply to maintain the Plaintiff's right to inclusion. As this hinges an individual's right to equal enjoyment on the ideological vicissitudes of the listener and allows for arbitrary application to a patron's general invitation.

**How a Denial of Equal Enjoyment Occurred**: **1.** The Plaintiff was originally refused service by Donald Stewart for being in possession of claimed "bedroll/blanket policy violation." The claimed policy was arbitrarily being used to stereotype the homeless/chronically homeless, to permit no reason exclusion. After persistence from Donald Stewart that the Plaintiff had to leave the Plaintiff demanded to speak with management.

**2.** The Plaintiff convinced management that the original items being contested would be permitted for the day.

When the Plaintiff after commented how any future enforcement of the arbitrarily claimed policy would amount

to a "permanent no reason exclusion," the Plaintiff was told by Kathy Howard to, "shut his mouth or leave." When the Plaintiff questioned Kathy Howard's crude behavior was acceptable the Plaintiff was subsequently declared trespassed and then arrested.

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(5) Eligibility Criteria Based on Stereotypes Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities. **4.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 5.** Nevada Constitution Article 1 Section 1 (due process). **6.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **7.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 8.** 8th Amendment right to be free from cruel and unusual punishment; **9.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process; **10.** 14th Amendment equal protection under the law.

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary No Reason Exclusion**: **1.** RMC 8.10.010 (trespassing).

**Claimed Criteria**: **1.** That blankets/bedrolls are unpermitted. Enforced to exclude the homeless unreasonably based off their personal property.

**Stereotypes**: **1.** Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.

**How Eligibility Criteria, of "Unpermitted Blanket/Bedrolls," is Being Used to Stereotype and Exclude the Chronically Homeless, a Class of Individuals with Disabilities**: **1.** The fictitious and arbitrarily applied eligibility criteria of unpermitted blankets/bedrolls is criteria being used only to exclude the homeless without cause, that is not applied evenly to all patrons, as a means to further separate, exclude and stigmatize the homeless, who often tend to have disabilities, from participation based on their property and not their conduct.

The Criteria of no "bedrolls/blankets" does not meet the standards set forth in Title III of ADA §36.208 Direct Threat. The Plaintiff's blanket attached to his backpack identified as a bedroll does not pose a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids and services.

In fact, during the incident a modification to the claimed eligibility criteria occurred that did not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. Instead the Plaintiff's right to inclusion was hinged upon the Plaintiff "shutting his mouth," forcing and creating the expectation that the Plaintiff must accept the abusive, unnecessary, and wanton display of authority which hinged the Plaintiff's right to inclusion upon the ideological vicissitudes of the listener and ignored relevant factors associated with the Plaintiff's disabilities i.e. psychomotor agitation (the urge to keep talking).

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(6) Claimed Policy Based on Stereotypes Legal Authority**: (Federal) **1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.302(a) (policy noncompliant with Title 3 of ADA §36.208 Direct Threat).

**(Nevada Constitution) 5.** Nevada Constitution Article 1 Section 1 (due process). **6.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **7.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process. **10.** 14th Amendment equal protection under the law.

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary No Reason Exclusion**: **1.** RMC 8.10.010.

**Claimed Policy**: **1.** That blankets/bedrolls are unpermitted. Enforced to exclude the homeless unreasonably based off their personal property.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 24

**Stereotypes**: **1.** Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.

**How Claimed Policy, of "Unpermitted Blanket/bedrolls, is Being Used to Stereotype and Exclude the Chronically Homeless, a Class of Individuals with Disabilities**: **1.** The fictitious and arbitrarily applied policy of unpermitted blankets/bedrolls is a policy being used to exclude the homeless without cause, that is not applied evenly on all patrons, as a means to further separate, exclude and stigmatize the homeless, who often tend to have disabilities, from participation based on their property and not their conduct.

The policy of no "bedrolls/blankets" does not meet the standards set forth in Title III of ADA §36.208 Direct Threat as the Plaintiff's blanket attached to his backpack identified as a bedroll does not pose a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids and services.

In fact, during the incident a modification to the claimed policy occurred that did not fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations. Instead the Plaintiff's right to inclusion was hinged upon the Plaintiff "shutting his mouth," forcing and creating the expectation that the Plaintiff must accept the abusive and unnecessary display of authority which hinged the Plaintiff's right to inclusion upon the ideological vicissitudes of the listener and ignored relevant factors associated with the Plaintiff's disabilities i.e. psychomotor agitation (the urge to keep talking).

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(7) Cruel and Unusual Punishment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983(violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.206(b)(c[1-2]) (coercion).

**(Nevada Constitution) 4.** Nevada Constitution Article 1 Section 1 (due process). **5.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment.**6.** Nevada Constitution Article 1 Section 9 (free speech). **7.** Nevada Constitution Article 1 Section 18 (unreasonable seizure).**8.** Nevada Constitution Article 1 Section 24 (equal protection).

(US Constitution) 9. 1st Amendment right to free speech. 10. 4th Amendment right to be secure in persons. 11. 8th Amendment right to be free from cruel and unusual punishment. 12. 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. 13. 14th Amendment equal protection under the law.

(Nevada Law) 14. NRS 199.310 (malicious prosecution). 15. NRS 200.460(1) (false arrest). 16. NRS 463.0129(1)(c) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). 17. NRS 651.080(1)(a)(b)(c) (coercion). 18. NRS 651.090(a)(b)(c) (coercion).

Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1. RMC 8.10.010 (trespassing).

How Cruel and Unusual Punishment Occurred: 1. Through Criminalizing the Plaintiff's status, of being homeless, rather than actual unlawful conduct acted upon by the Plaintiff.

2. The Plaintiff was ultimately declared trespassed, not because of criminal conduct, but for responding to Kathy Howard, after having been told to "shut his mouth or leave," an unreasonable and unlawful demand in itself and a demand that challenges the Plaintiff's psychomotor agitation (urge to keep speaking) associated with the Plaintiff's manic disorder.

3. As a result of being chronically homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation and subject to arbitrary exclusion.

4. Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

5. Through the coercive use of Law Enforcement, in a malicious, arbitrary, and discriminatory manner, to permit exclusion based off no reason.

Involved Parties: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

(8) Substantive Due Process Legal Authority: (Federal) 1. 42 U.S. Code § 1983 (violation of civil rights). 2. 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010. (trespassing)

**How Substantive Due Process Violations Occurred**: **1.** Through unreasonable arbitrary policies/eligibility criteria (blankets/bedrolls), that are based off stereotypes (Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.), to permit unlawful no reason exclusion, as a means to abridge NRS 463.0129(1)(e), based on involuntary circumstances related to an individual's disabilities.

**2.** A blanket/bedroll does not "pose a direct threat to the health or safety of others," nor does it alter the operations of the establishment from conducting its normal operations.

**3.** "Shut your mouth or leave" is an arbitrary demand that hinges exclusion/inclusion based off the ideological vicissitudes of the listener and denies the Plaintiff the right to contest unlawful conduct.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 27

**4.** Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

**5.** Through coercion, used to manipulate the Plaintiff from using the services provided, through the threat of arbitrary and malicious use of law enforcement.

**6.** By criminalizing the Plaintiff due to the involuntary circumstances of being homeless with disabilities (chronically homeless), rather than actual criminal conduct.

**7.** By permitting exclusion based on the Plaintiff's limited and harmless property (blanket attached to a backpack identified as a bedroll), that criminalized activities which by modern standards are normally innocent, the Plaintiff would inevitably be continuously guilty of violations simply by entering into places of public accommodation, where the Plaintiff's general invitation could be arbitrarily revoked to permit no reason exclusion.

**8.** Through the arbitrary and malicious use of law enforcement to create a separation of equality, where the unnecessary, unreasonable, and discriminatory demands made by a place of accommodation were given more substance over the inalienable rights of the Plaintiff.

**9.** Through Officer Borba's refusal to obtain witness statements, as requested by the Plaintiff, to provide the Plaintiff the opportunity to have witnesses on his behalf.

**Involved Parties:** Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(9) Equal Protection Under the Law Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech).

**10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Equal Protection Violations Occurred: 1.** Through violation of NRS 463.0129(1)(e) (exclusion based on a lawful "common law" violation) through no reason exclusion based on the Plaintiff's homelessness related to the Plaintiff's disabilities.

**2.** Through violation of NRS 651.070 (equal enjoyment by those with disabilities) as the Plaintiff was discriminated against for being homeless which is related to the Plaintiff's disabilities.

**3.** Through use of coercion, threat of arrest and eventual arrest, to deny the Plaintiff his general invitation having no reason to exclude.

**4.** Through a violation to Title III of ADA §36.202(a), denial of participation through discrimination of the chronically homeless, a class of individuals with disabilities, for being homeless which is connected to the Plaintiff's disabilities.

**5.** That claimed eligibility criteria violated Title III of ADA §36.301(a)(b), as claimed eligibility criteria are noncompliant with Title III of ADA §36.208 Direct Threat, in that possession of a "blanket attached to a backpack" identified as a "bedroll" are harmless and normally an innocent act by modern standards, that does not pose a significant risk to the health or safety of others, nor did the Plaintiff's property fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

**6.** That claimed policies violated Title III of ADA §36.302(a), as claimed policy are noncompliant with Title III of ADA §36.208 Direct Threat, in that possession of a "blanket attached to a backpack" identified as a "bedroll" are harmless and normally an innocent act by modern standards, that does not pose a significant risk to the health or safety of others, nor did the Plaintiff's property fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

**7.** That the Plaintiff's 1st Amendment right to contest infringement of rights (free speech)/Nevada Constitution Article 1 Section 9 were violated as the Plaintiff was punished specifically for speaking up against the unnecessary intrusion and expected exclusion for no reason through the unreasonable demand for the Plaintiff to shut his mouth.

**8.** That the Plaintiff's 4th Amendment right to be free from unlawful seizure/Nevada Constitution Article 1 Section 18 were violated through the arbitrary and malicious use of law enforcement used to exclude the Plaintiff based on discriminatory no reason exclusion.

**9.** That the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment/Nevada Constitution Article 1 Section 6, was violated through criminalizing the Plaintiff over his status of being homeless and not unlawful conduct acted upon by the Plaintiff. And Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

**10.** Through violations to Plaintiff's 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process/Nevada Constitution Article 1 Section 1, as the Plaintiff had a right to inclusion and exclusion based on no reason violates the principles of fundamental fairness.

**11.** Through violations to the Plaintiff's 14th Amendment right to equal protection under the law/Nevada Constitution Article 1 Section 24 as the rights of the place of public accommodation were given more consideration while the Plaintiff's rights were neglected permitting unlawful no reason exclusion.

This is evident in Officer Borba's blatant refusal to obtain witness statements at the demand of the Plaintiff. Statements were not obtained because the interests of the Plaintiff's right to inclusion were considered irrelevant in association to the Defendants demand for exclusion.

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(10) Malicious Prosecution Legal Authority: (Federal Law) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Malicious Prosecution Occurred**: **1.** The Plaintiff was criminalized for being chronically homeless with disabilities under RMC 8.10.010. **2.** The Plaintiff was excluded for no reason, meaning the Plaintiff had not acted in a manner that would warrant exclusion.

**Involved Parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**(11) Intentional Infliction of Emotional Distress Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Intentional Infliction of Emotional Distress Occurred: 1.** The Plaintiff was put through intentional infliction of emotional distress through the malicious attack on the Plaintiff's rights that were used to exclude the Plaintiff over his status and not conduct.

**Involved parties**: Cal-Neva, City of Reno, Donald Stewart, Kathy Howard, Officer Borba, Reno Police Department.

**B.  INCIDENT 2:** SILVER LEGACY

**(1) False Arrest/False Imprisonment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2])

(coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (Due Process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **10.** Nevada Constitution Article 1 Section 24 (equal protection under the law).

**(US Constitution) 11.** 4th Amendment right to be secure in persons. **12.** 8th Amendment right to be free from cruel and unusual punishment. **13.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **14.** 14th Amendment equal protection under the law.

**(Nevada Law) 15.** NRS 199.310 (malicious prosecution). **16.** NRS 200.460(1) (false arrest). **17.** NRS 207.230 (acting without lawful authority). **18.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **19.** NRS 651.070 (equal enjoyment by those with disabilities). **20.** NRS 651.080(a)(b)(c) (coercion). **21.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**How False Arrest/False Imprisonment Occurred: 1.** The Plaintiff had been on property the day before without being confronted for violations where the Plaintiff put in his bets on the kiosk. The Plaintiff went to the Silver Legacy later in the day and was on the property for approximately 45 minutes before using the bathroom.

Upon returning to the Sports book, the Plaintiff was confronted by Michael Blanco and requested to leave. No reason was provided for the expectation of exclusion. The Plaintiff pulled paperwork from his backpack (stated by Michael Blanco at trial), from the recent motion to dismiss the Plaintiff had filed pertaining to Incident 1, and tried to express that places of public accommodation did not have the right to exclude for no reason. The Plaintiff requested to speak with management.

The Plaintiff and Michael Blanco watched a hockey game and waited for management Michael Herrick to arrive. Again, the Plaintiff tried to express that places of public accommodation could not exclude for no reason. Regardless Michael Herrick and Michael Blanco were expecting the Plaintiff to leave the property and at this point tried to coerce the Plaintiff off the property by walking him to an exit while pretending that they were going to discuss the issue further.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 33

When the Plaintiff. Michael Blanco, and Michael Herrick reached the exit at 5th and Sierra St, the Plaintiff was again demanded to leave for no reason, and the Plaintiff refused. Silver Legacy employees Michael Blanco and Michael Herrick then unreasonably and without lawful authority handcuffed the Plaintiff, while the Plaintiff was still carrying, what would later be called "excessive baggage."

**2.** At this point, Defendant Michael Herrick became confrontational, antagonistic, and demeaning to the Plaintiff. Michael Herrick berated the Defendant about stereotypes related to being homeless such as declaring "why doesn't the Plaintiff just get a job," including calling the Plaintiff "a lazy bum" and other unnecessary and disrespectful comments made to incite the Plaintiff. The connotation in his tone of voice was antagonistic and

The Plaintiff is claiming that this is why video that is required by Nevada Law to exist was never brought into evidence, as it would have shown the discriminatory, no reason exclusion, where the Defendant Michael Herrick was hostile and acted unreasonable under the circumstances.

When officers Officer Bohr, Officer Connolly, Officer De Santis, and Officer Tom arrived, the Plaintiff while under duress, was able to convince officers that the Plaintiff was not in violation of RMC 8.10.010. By addressing the provision associated with places of public accommodation that does not allow arbitrary no reason exclusion. The Defendants had acknowledged to officers that the Plaintiff had not been previously trespassed, and that the Plaintiff had not committed a specific violation of law or rules to be excluded.

Regardless the Plaintiff was arrested under a "No Reason Exclusion" under NRS 207.200 (trespassing). Yet the Plaintiff was prosecuted at trial under RMC 8.10.010 (trespassing) for being in possession of claimed policy violation of (acknowledged by City witnesses Michael Blanco and Michael Herrick at trial) "excessive baggage" having been confronted initially by Michael Blanco for being a "suspicious suspect who looked lost" (City witness statement made by Michael Blanco at trial).

The Plaintiff contests that the Prosecuting Attorney did see the legally required video and it is why Officers were not brought in as witness on behalf of the state and rather expected that the Plaintiff be required to subpoena the Officers in order to have the Plaintiff's right to confrontation respected which is contrary to law. As it was the Officers who arrested the Plaintiff, they too stand as an accuser, to which the Plaintiff had the right to confront.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(2) Coercion Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (Due Process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **10.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 11.** 4th Amendment right to be secure in persons. **12.** 8th Amendment right to be free from cruel and unusual punishment. **13.** 14th Amendment right not to be deprived of life, liberty, property and pursuit of happiness without due process. **14.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 15.** NRS 199.310 (malicious prosecution). **16.** NRS 200.460(1) (false arrest). **17. NRS** 207.230 (acting without lawful authority). **18.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **19.** NRS 651.070 (equal enjoyment by those with disabilities). **20.** NRS 651.080(1)(a)(b)(c) (coercion). **21.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**Rights/Privileges Interfered, Deprived, and Punished for Speaking Out About Intrusion**: **1.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **2.** NRS 651.070 (equal enjoyment by those with disabilities). **3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **5.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat). **6.** 4th Amendment right to be free from unlawful seizure/Nevada Constitution Article 1 Section 18. **7.** 8th Amendment right to be free from cruel and unusual punishment/Nevada Constitution Article 1 Section 6. **8.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process/Nevada

Constitution Article 1 Section 1. **9.** 14th Amendment equal protection under the law/Nevada Constitution Article 1 Section 24.

**How Coercion Occurred: 1.** As, "no reason for exclusion" during the occasion was given, it is not until the declarations at trial made by city witness Michael Blanco, that we learn the Plaintiff was declared a "suspicious suspect who looked lost" and that the Plaintiff was in possession of "excessive baggage." Why was the Plaintiff a suspect? What constitutes excessive baggage? How was this enough to justify lawful exclusion?

**2**. After being requested to leave the Plaintiff tried to defend his right to inclusion and requested that management be brought in for a second opinion. When Michael Herrick arrived, Mr. Herrick gave no care into the fact that no reason existed to exclude the Plaintiff. At this point Michael Herrick and Michael Blanco requested the Plaintiff walk with them to "discuss the issue off the casino floor." This was addressed in a way that the Plaintiff understood as discussing why exclusion was demanded in a reasonable manner.

This was not the circumstances, however. Instead Defendants Michael Blanco and Michael Herrick tried to walk the Plaintiff off property and upon arriving at the exit acted as if it were in the best interest of the Plaintiff to leave or he would be arrested. And thus, the Plaintiff gave himself up for arrest. This is shown through Michael Herrick's testimony were the Defendant tries to proclaim that they gave the Plaintiff every opportunity and did everything they could to get the Plaintiff to leave on his own for no reason.

While being detained in a security room off floor Michael Herrick took it upon himself to berate the Plaintiff with condescending rhetoric trying to humiliate the Plaintiff for his circumstances and decision to demand reason for exclusion. When officers arrived, the Plaintiff was able to convince officers that relevant provisions associated with RMC 8.10.010 to the extent that the Plaintiff was arrested under NRS 207.200. This relevance is that RMC 8.10.010 was what the Plaintiff was tried and convicted under.

As the standard is what a reasonable officer under similar circumstances would be able to infer, the Plaintiff is declaring that, under the circumstances several officers understood that RMC 8.10.010 was not lawfully applicable and thus is the reason that the officers arrested the Plaintiff under a separate statute. The Plaintiff claims this as an example to show that RMC 8.10.010 was prosecuted without regard to what the municipal code stipulates, as the provision, that if the property was open to the public at the time the warning must have been given within the previous 6 months, is a definitive requirement.

**3.** The Plaintiff was arrested simply for his refusal to leave the premises over a no reason exclusion.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 36

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(3) Denial of Participation Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **10.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 11.** 4th Amendment right to be secure in persons. **12.** 8th Amendment right to be free from cruel and unusual punishment; **13.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process; **14.** 14th Amendment equal protection under the law.

**(Nevada Law) 15.** NRS 199.310 (malicious prosecution). **16.** NRS 200.460(1) (false arrest). **17.** NRS 207.230 (acting without lawful authority). **18.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **19.** NRS 651.080(a)(b)(c) (coercion). **20.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**Connection to Disabilities**: **1.** A public accommodation shall not subject an individual on the basis of disabilities of such individual or class, directly or through other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

The chronically homeless are a class of individuals with disabilities. Often these individuals are homeless due to the individual's disabilities. The Plaintiff was at the time chronically homeless by federal definition and it was the Plaintiff's disabilities that were primary factors to the Plaintiff's homelessness.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 37

As a result of being homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, that criminalized activities which by modern standards are normally innocent, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation, and not based on unlawful conduct by the Plaintiff but rather the Plaintiff's status of being chronically homeless.

The property in question did not pose a direct threat to the safety or health of others nor did it disrupt the normal operations of the Casino. The Plaintiff's homelessness does not make him a "suspicious suspect."

**How a Denial of Participation Occurred**: **1.** The Plaintiff was denied participation because he was a "suspicious suspect who looked lost" who was in possession of "excessive baggage" as claimed by Defendant Michael Blanco at trial. This clearly is a discriminatory description of the Plaintiff as being a "suspicious suspect who looked lost" just because he was homeless. This seems to be a clear statement that homeless are unpermitted in violation of NRS 463.0129(e) as no legislation has been established to exclude persons for no reason.

What makes a patron lost? Where does a lost patron warrant exclusion? Further the Plaintiff had two normal size back packs, one in front and one in back. This is not excessive in a hotel a casino where large amount of baggage is usual. The Plaintiff contends, that a claimed policy/eligibility criterion of excessive baggage is vague and ambiguous, permitting arbitrary enforcement to exclude the homeless and others based of a general claim without a clear issue.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(4) Denial of Equal Enjoyment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **6.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **7.** Nevada Constitution Article 1 Section 24 (equal protection).

SCHOOL IS IN SESSION: FINAL COMPLAINT - 38

**(US Constitution) 8.** 4th Amendment right to be secure in persons. **10.** 8th Amendment right to be free from cruel and unusual punishment. **11.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process. **12.** 14th Amendment equal protection under the law.

**(Nevada Law) 13.** NRS 199.310 (malicious prosecution). **14.** NRS 200.460(1) (false arrest). **15.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **16.** NRS 651.070 (equal enjoyment by those with disabilities). **17.** NRS 651.080(a)(b)(c) (coercion). **18.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**Connection to Disabilities**: **1.** All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, without discrimination or segregation on the ground of a disability.

The chronically homeless are a class of individuals with disabilities. Often these individuals are homelessness due to the individual's disabilities. The Plaintiff was at the time chronically homeless and it was the Plaintiff's disabilities that were a primary factor to the Plaintiff's homelessness.

As a result of being homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, that criminalized activities which by modern standards are normally innocent, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation, and not based on unlawful conduct by the Plaintiff but rather the Plaintiff's status of being chronically homeless.

The property in question did not pose a direct threat to the safety or health of others nor did it disrupt the normal operations of the Casino. In fact, management permitted a modification to the claimed policy. But then hinged the Plaintiff's right to inclusion on silencing the Plaintiff from contesting that his constitutional rights were being violated as an unnecessary and unreasonable display of authority.

This unreasonable demand further targeted the Plaintiff's psychomotor agitation, urge to keep speaking, aspects of the Plaintiff's manic disorder. Given that the contested items had been permitted, the Defendants had no cause for authority to be exerted over the Plaintiff to make such a demand.

After being permitted the items, with the Plaintiff proving to have been within his lawful rights to right to equal enjoyment of the property, it was the Defendants obligation to stop disturbing the Plaintiff, not make unreasonable demands with the Plaintiff expected to comply to maintain the Plaintiff's right to inclusion. As this hinges an individual's right to equal enjoyment on the ideological vicissitudes of the listener and allows for arbitrary application to a patron's general invitation.

**How a Denial of Equal Enjoyment Occurred**: **1.** The Plaintiff was denied equal enjoyment because he was a "suspicious suspect who looked lost" who was in possession of "excessive baggage" as claimed by Defendant Michael Blanco at trial. This clearly is a discriminatory description of the Plaintiff as being a "suspicious suspect who looked lost" just because he was homeless. This seems to be a clear statement that homeless are unpermitted in violation of NRS 463.0129(e) as no legislation has been established to exclude persons for no reason.

What makes a patron lost? Where does a lost patron warrant exclusion? Further the Plaintiff had two normal size back packs, one in front and one in back. This is not excessive in a hotel a casino where large amount of baggage is usual. The Plaintiff contends, that a claimed policy/eligibility criterion of excessive baggage is vague and ambiguous, permitting arbitrary enforcement to exclude the homeless and others based of a general claim without a clear issue.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(5) Eligibility Criteria Based on Stereotypes Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 5.** Nevada Constitution Article 1 Section 1 (due process). **6.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **7.** Nevada Constitution Article 1 Section 24 (equal protection).

SCHOOL IS IN SESSION: FINAL COMPLAINT - 40

(US Constitution) 8. 8th Amendment right to be free from cruel and unusual punishment; 9. 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process; 10. 14th Amendment equal protection under the law.

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:"** 1. NRS 207.200 (trespassing) (arrested). 2. RMC 8.10.010 (trespassing) (prosecuted).

**Claimed Criteria Date of Incident**: 1. No reason for exclusion given.

**Claimed Criteria at Trial: 1.** "Suspicious suspect who looked lost;" 2. "Excessive Baggage."

**Stereotypes: 1.** Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.

**How Eligibility Criteria, of "Unpermitted Blanket/Bedrolls," was Used to Stereotype and Exclude the Chronically Homeless, a Class of Individuals with Disabilities**: 1. The Plaintiff being referred to as a "suspicious suspect who looked lost" is a subtle but not so subtle way of saying that homeless are not suppose to be in the establishment in the first place. But what legal authority permits places of public accommodation the right to exclude a person for simply being homeless? This can be further identified as the offense that made the Plaintiff a suspect is that the Plaintiff was in possession of excessive baggage. 2. The rhetoric that Michael Herrick subjected the Plaintiff through during the detainment in the security room was directed at inciting the Plaintiff by humiliating the Plaintiff over his circumstances.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(6) Claimed Policy Based on Stereotypes Legal Authority**: (Federal) 1. 42 U.S. Code § 1983 (violation of civil rights). 2. 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). 4. Title III of ADA §36.302(a) (policy noncompliant with Title 3 of ADA §36.208 Direct Threat).

**(Nevada Constitution) 5.** Nevada Constitution Article 1 Section 1 (due process). 6. Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). 7. Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment equal protection under the law.

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**Claimed Criteria Date of Incident**: **1.** No reason for exclusion given.

**Claimed Criteria at Trial**: **1.** "Suspicious suspect who looked lost;" **2.** "Excessive Baggage."

**Stereotypes**: **1.** Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.

**How Claimed Policy, of "Unpermitted Blanket/bedrolls, is Being Used to Stereotype and Exclude the Chronically Homeless, a Class of Individuals with Disabilities**: **1.** The Plaintiff being referred to as a "suspicious suspect who looked lost" is a subtle but not so subtle way of saying that homeless are not supposed to be in the establishment in the first place. But what legal authority permits places of public accommodation the right to exclude a person for simply being homeless? This can be further identified as the offense that made the Plaintiff a suspect is that the Plaintiff was in possession of excessive baggage. **2.** The rhetoric that Michael Herrick subjected the Plaintiff through during the detainment in the security room was directed at inciting the Plaintiff by humiliating the Plaintiff over his circumstances.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(7) Cruel and Unusual Punishment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983(violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.206(b)(c[1-2]) (coercion).

**(Nevada Constitution) 4.** Nevada Constitution Article 1 Section 1 (due process). **5.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment.**6.** Nevada Constitution Article 1 Section 9 (free speech). **7.** Nevada Constitution Article 1 Section 18 (unreasonable seizure).**8.** Nevada Constitution Article 1 Section 24 (equal protection).

(US Constitution) 9. 1st Amendment right to free speech. 10. 4th Amendment right to be secure in persons. 11. 8th Amendment right to be free from cruel and unusual punishment. 12. 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. 13. 14th Amendment equal protection under the law.

(Nevada Law) 14. NRS 199.310 (malicious prosecution). 15. NRS 200.460(1) (false arrest). 16. NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). 17. NRS 651.080(1)(a)(b)(c) (coercion). 18. NRS 651.090(a)(b)(c) (coercion).

Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1. NRS 207.200 (trespassing) (arrested). 2. RMC 8.10.010 (trespassing) (prosecuted).

How Cruel and Unusual Punishment Occurred: 1. Through Criminalizing the Plaintiff's status, of being homeless, rather than actual unlawful conduct acted upon by the Plaintiff. 2. The Plaintiff was declared trespassed, not because of criminal conduct, but for as claimed at trial being a suspicious suspect who looked lost and was expected exclusion because the Plaintiff was in possession of excessive baggage. 3. As a result of being chronically homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff possessed, 2 normal sized backpacks, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation and subject to arbitrary exclusion. 4. Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally. 5. Through the coercive use of Law Enforcement, in a malicious, arbitrary, and discriminatory manner, to permit exclusion based off no reason.

Involved Parties: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

(8) Substantive Due Process Legal Authority: (Federal) 1. 42 U.S. Code § 1983 (violation of civil rights). 2. 5 U.S.C 706(2)(a) (1988) (arbitrary).

(Title III of ADA) 3. Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities. 4. Title III of ADA §36.206(b)(c[1-2]) (coercion). 5. Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208

Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat**).**

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**How Substantive Due Process Violations Occurred: 1. : 1.** Through unreasonable arbitrary policies/eligibility criteria (being a suspect for being homeless and having excessive baggage), that are based off stereotypes (Chronically homeless are unwelcome of patronage because they are an unwelcome sight and unworthy of services because they are not a contributing member of society and instead are just trying to live off others.), to permit unlawful no reason exclusion, as a means to abridge NRS 463.0129(1)(e), based on involuntary circumstances related to an individual's disabilities.

**2.** A person does not become a suspicious suspect warranting exclusion unless they have done something actually wrong as being a suspect does not "pose a direct threat to the health or safety of others," nor does it alter the operations of the establishment from conducting its normal operations.

**3.** Excessive baggage, unless extreme which under these circumstances was not, does not "pose a direct threat to the health or safety of others," nor does it alter the operations of the establishment from conducting its normal operations.

**4.** Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

**5.** Through coercion, used to manipulate the Plaintiff from using the services provided, through the threat of arbitrary and malicious use of law enforcement to exclude.

**6.** By criminalizing the Plaintiff due to the involuntary circumstances of being homeless with disabilities (chronically homeless), rather than actual criminal conduct.

**7.** By permitting exclusion based on the Plaintiff's limited and harmless property (2 normal backpacks one in front one in back), that criminalized activities which by modern standards are normally innocent, the Plaintiff would inevitably be continuously guilty of violations simply by entering into places of public accommodation, where the Plaintiff's general invitation could be arbitrarily revoked to permit no reason exclusion.

**8.** Through the arbitrary and malicious use of law enforcement to create a separation of equality, where the unnecessary, unreasonable, and discriminatory demands made by a place of accommodation were given more substance over the inalienable rights of the Plaintiff.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(9) Equal Protection Under the Law Legal Authority**: (Federal) **1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of

SCHOOL IS IN SESSION: FINAL COMPLAINT - 45

life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**How Equal Protection Violations Occurred: 1.** Through violation of NRS 463.0129(1)(e) (exclusion based on a lawful "common law" violation) through no reason exclusion based on the Plaintiff's homelessness related to the Plaintiff's disabilities.

**2.** Through violation of NRS 651.070 (equal enjoyment by those with disabilities) as the Plaintiff was discriminated against for being homeless which is related to the Plaintiff's disabilities.

**3.** Through use of coercion, threat of arrest and eventual arrest, to deny the Plaintiff his general invitation having no reason to exclude.

**4.** Through a violation to Title III of ADA §36.202(a), denial of participation through discrimination of the chronically homeless, a class of individuals with disabilities, for being homeless which is connected to the Plaintiff's disabilities.

**5.** That claimed eligibility criteria violated Title III of ADA §36.301(a)(b), as claimed eligibility criteria are noncompliant with Title III of ADA §36.208 Direct Threat. That in order for a patron to become a suspect they must have conducted themselves in a manner which would have warranted exclusion when the Plaintiff had not. And that the two backpacks termed excessive baggage are harmless and normally an innocent act by modern standards, which did not pose a significant risk to the health or safety of others, nor did the Plaintiff's property fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

**6.** That claimed policies violated Title III of ADA §36.302(a), as claimed policy are noncompliant with Title III of ADA §36.208 Direct Threat. "That in order for a patron to become a suspect they must have conducted themselves in a manner which would have warranted exclusion when the Plaintiff had not. And that the two backpacks termed excessive baggage were harmless and normally an innocent act by modern standards, that

does not pose a significant risk to the health or safety of others, nor did the Plaintiff's property fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

**7.** That the verbal attack on the Plaintiff by Michael Herrick which condescendingly attacked the Plaintiff's status of being homeless as justification to why the Plaintiff was being treated the way he was as if it was the Plaintiff's choice.

**8.** That the Plaintiff's 4th Amendment right to be free from unlawful seizure/Nevada Constitution Article 1 Section 18 were violated through the arbitrary and malicious use of law enforcement used to exclude the Plaintiff based on discriminatory no reason exclusion.

**9.** That the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment/Nevada Constitution Article 1 Section 6, was violated through criminalizing the Plaintiff over his status of being homeless and not unlawful conduct acted upon by the Plaintiff. And Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

**10.** Through violations to Plaintiff's 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process/Nevada Constitution Article 1 Section 1, as the Plaintiff had a right to inclusion and exclusion based on no reason violates the principles of fundamental fairness.

**11.** Through violations to the Plaintiff's 14th Amendment right to equal protection under the law/Nevada Constitution Article 1 Section 24 as the rights of the place of public accommodation were given more consideration while the Plaintiff's rights were neglected permitting unlawful no reason exclusion.

This is evident in that despite that the Plaintiff had convinced officers that RMC 8.10.010 was not applicable they still arrested the Plaintiff and just used another unapplicable statute to justify arrest.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(10) Malicious Prosecution Legal Authority**: **(Federal Law) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities. **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208

Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**How Malicious Prosecution Occurred: 1.** The Plaintiff was criminalized for being chronically homeless with disabilities under RMC 8.10.010. **2.** The Plaintiff was excluded for no reason, meaning the Plaintiff had not acted in a manner that would warrant exclusion.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**(11) Intentional Infliction of Emotional Distress Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**3.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities). **4.** Title III of ADA §36.206(b)(c[1-2]) (coercion). **5.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **6.** Title III of ADA §36.302(a) (policy noncompliant with Title III of ADA §36.208 Direct Threat).

**(Nevada Constitution) 7.** Nevada Constitution Article 1 Section 1 (due process). **8.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **9.** Nevada Constitution Article 1 Section 9 (free speech). **10.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **11.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 12.** 1st Amendment Free Speech. **13.** 4th Amendment right to be secure in persons. **14.** 8th Amendment right to be free from cruel and unusual punishment. **15.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **16.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 17.** NRS 199.310 (malicious prosecution). **18.** NRS 200.460(1) (false arrest). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities). **21.** NRS 651.080(1)(a)(b)(c) (coercion). **22.** NRS 651.090(a)(b)(c) (coercion).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Intentional Infliction of Emotional Distress Occurred: 1.** The Plaintiff was put through intentional infliction of emotional distress through the malicious attack on the Plaintiff's rights that were used to exclude the Plaintiff over his status and not conduct.

**Involved Parties**: City of Reno, Michael Blanco, Michael Herrick, Officer Bohr, Officer Connolly, Officer De Santis, Officer Tom, Reno Police Department, Silver Legacy.

**C.   INCIDENT 3:** Eldorado

**(1) False Arrest/False Imprisonment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (Due Process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection under the law).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 207.230 (acting without lawful authority). **14.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

**How False Arrest/False Imprisonment Occurred: 1.** The Plaintiff entered the Eldorado unaware at the time of the connected ownership with the Silver Legacy but learned shortly after entering when Michael Blanco and the Plaintiff saw each other on the Sierra Street entrance near the Sports book which is where the Plaintiff was confronted. At the time of the Plaintiff and Michael Blanco noticed each other where Michael Blanco was already talking with Joseph Hanek. Joseph Hanek confronted the Plaintiff while Michael Blanco went to a nearby security office to pull up the information he had on the trespass of the Plaintiff at the Silver Legacy a week prior.

When Joseph Hanek asked the Plaintiff for his ID the Plaintiff provided it, yet at trial Joseph Hanek testified that Mr. Rose refused to provide the ID because "the Plaintiff had contested it violated his rights." Yet Mr. Rose had never made an issue of providing his ID in prior circumstances, but the real irony is that why would the Plaintiff try to hide his identity when Michael Blanco had already identified the Plaintiff, as the Plaintiff was well aware was involved and knew who the Plaintiff was. How does this make sense?

As Mr. Rose provided his ID, Joseph Hanek did a trespass check which came back clear, and the Plaintiff was given his ID back. But because Michael Blanco had the incident with Mr. Rose in Incident two, he declared that Mr. Rose was not free to leave. It is at this time that the Defendants began circling around the Plaintiff in numbers and the Plaintiff noticed that this was about to become physically confrontational.

And this is why the Plaintiff tried to run off the property. Because if they had just said, "hey these properties are the same and you cannot be here," the Plaintiff would have left. But instead the employees of the Eldorado took it as a grave threat by the Plaintiff simply being on property. They never asked for the Plaintiff to leave and in fact when the Plaintiff did try to leave, he was physically restrained and prevented from doing so. Why?

Yet, Joseph Hanek testified at trial that the Plaintiff "tried to run off the property without his ID." How does this make sense when just earlier the Plaintiff was claimed to have issued with just providing the ID. Now

the Plaintiff is running out the property without concern for his ID? And why does the Plaintiff trying to run off the property warrant him being physically detained when, as claimed he tried to run off property without his ID? By this assertion, would the Plaintiff have been able to actually get away?

The Plaintiff claims that the Defendants acted without lawful authority by physically restraining the Plaintiff for trying to run off the property as this was unreasonable use of force given the circumstances. For one the Plaintiff was only desired to not be on property but was restrained despite no legal standing permitting such intrusion upon the Plaintiff's rights. Second, acting reasonable would have entailed first requesting the Plaintiff leave prior to becoming physically confrontational. And finally, the Plaintiff was attacked only to be released with a citation after by the responding Reno police officer Sergeant Guider.

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**2. Unreasonable and Unauthorized Use of Force Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution)3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, and pursuit of happiness without due process. **10.** 14th Amendment equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460 (1) (false arrest) **13.** NRS 200.471 (assault). **14.** NRS 207.230 (acting without lawful authority). **15.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit "Unreasonable and Unauthorized Use of Force:" 1.** RMC 8.10.010 (trespassing).

**How an Unreasonable and Unauthorized Use of Force Violation Occurred**: 1. Without requesting or giving the Plaintiff a chance to leave, and even though the Plaintiff tried to "run off the property," Defendants and 5 other Eldorado employees, tackled the Plaintiff to the ground, and used "pain compliance techniques" (ankle

lock) to subdue and handcuff the Plaintiff, while on the casino floor, despite no authoritative right provided for the use of force taken, given the circumstances. (acknowledged by City witness Joseph Hanek at trial)

The Defendants claimed that Plaintiff tried to run off without his ID so why the need to stop the Plaintiff? The goal was for the Plaintiff not to be on the property so why the requirement to physically remover the Plaintiff? As the Plaintiff was only cited and released by the responding Sergeant for the Reno Police Department did the Defendants have a need or right to physically restrain the Plaintiff without having given the Plaintiff the opportunity to leave?

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**(3) Cruel and Unusual Punishment Legal Authority: (Federal) 1.** 42 U.S. Code § 1983(violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment. 5. Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, and pursuit of happiness without due process. **10.** 14th Amendment equal protection under the law**.**

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Cruel and Unusual Punishment Occurred: 1.** Through assaulting the Plaintiff for simply being on the property without having requested the Plaintiff leave. That the Defendants forced the Plaintiff into criminal charges for a simple mistake. It was Defendants reaction to the Plaintiff through their aggressive that was unnecessary and can be seen as the Defendants expected the Plaintiff be arrested yet was released after the incident.

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**(4) Substantive Due Process Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010. (trespassing)

**How Substantive Due Process Violations Occurred**: **1.** Through the unreasonable assault on the Plaintiff to keep the Plaintiff on the property just to subject the Plaintiff to criminal charges having not even given the Plaintiff a chance to leave on his own.

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**(5) Equal Protection Under the Law Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Equal Protection Violations Occurred: 1.** Through attacking the Plaintiff unreasonably without regard to acting civilized by giving the Plaintiff an opportunity to leave before becoming aggressive.

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**(6) Malicious Prosecution Legal Authority: (Federal Law) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Malicious Prosecution Occurred: 1.** Through providing no opportunity for the Plaintiff to have corrected a simple mistake and instead taking the opportunity as ample justification to assault the plaintiff in order to guarantee criminal prosecution and making a bigger issue of the situation then was called for.

**Involved Parties**: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

**(7)  Intentional Infliction of Emotional Distress Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

(US Constitution) 7. 4th Amendment right to be secure in persons. 8. 8th Amendment right to be free from cruel and unusual punishment. 9. 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. 10. 14th Amendment right to equal protection under the law.

(Nevada Law) 11. NRS 199.310 (malicious prosecution). 12. NRS 200.460(1) (false arrest). 13. NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1. RMC 8.10.010 (trespassing).

How Intentional Infliction of Emotional Distress Occurred: 1. Through the aggressive acts displayed meant to turn the Plaintiff into a criminal over a simple mistake of unwittingly being on a property of a different property owned by the same company as a property the Plaintiff had been trespassed at. Instead of trying to resolve the issue amicably the Defendants acted with blatant disregard to the Plaintiff's safety.

Involved Parties: The City of Reno, Eldorado, Joseph Hanek, Michael Blanco, and 5 Unknown Eldorado Employees.

D. INCIDENT 4: Trial

(1) Conspiracy Legal Authority: (Federal) 1. 42 U.S. Code § 1985 (3) (conspiracy).

(Nevada Constitution) 2. Nevada Constitution Article 1 Section 1 (due process). 3. Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). 4. Nevada Constitution Article 1 Section 24 (equal protection).

(US Constitution) 5. 8th Amendment right to be free from cruel and unusual punishment; 6. 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process; 7. 14th Amendment equal protection under the law.

(Nevada Law) 8. NRS 199.310 (malicious prosecution); 9. NRS 199.480(3)(a)(b)(c)(e)(f)(g) (conspiracy) 10. NRS 463.0129(1)(e) (exclusion based on a lawful "common law" violation)

Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1. RMC 8.10.010 (trespassing).

Rights/Privileges Deprived: 1. NRS 463.0129(1)(e) (exclusion based on a lawful "common law" violation). 2. NRS 651.070 (through discrimination of chronically homeless. A class of individuals with disabilities). 3. Title III of ADA §36.202(a) (through discrimination of chronically homeless. A class of individuals with

SCHOOL IS IN SESSION: FINAL COMPLAINT - 55

disabilities); **4.** Title III of ADA §36.301(a)(b) (eligibility criteria noncompliant with Title III of ADA §36.208 Direct Threat). **5.** Title III of ADA §36.302(a) (Policy noncompliant with Title III of ADA §36.208 Direct Threat). **6.** 1st Amendment right to contest infringement of rights (free speech)/Nevada Constitution Article 1 Section 9. **7.** 4th Amendment right to be secure in persons/Nevada Constitution Article 1 Section 18. **8.** 8th Amendment right to be free from cruel and unusual punishment/Nevada Constitution Article 1 Section 6. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process/Nevada Constitution Article 1 section 1. **10.** 14th Amendment right to equal protection under the law/Nevada Constitution Article 1 Section 24.

**How a Conspiracy to Violate Constitutional Rights Occurred**: **1.** Prior to the trial, the prosecuting attorney Angie Gianoli met with the Plaintiff to again offer the Plaintiff a plea deal. The Plaintiff refused. After which the prosecuting attorney met with all 4 of her witnesses, Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, at the same time. It is during this meeting the Plaintiff contends, that the prosecuting attorney coached her witness into a scripted description that the Plaintiff had behaved belligerent, aggressive, and loud in order to secure a conviction. And this can be seen in that despite 3 separate incidents, over 3 separate days, and the Plaintiff was described as having behaved in the exact same manner with little if any differences.

The Plaintiff contends that this can be seen in two forms. 1. In that the statute the Plaintiff was convicted under makes no reference in order for a violation have occurred, that an individual had behaved in an unruly manner in order to satisfy a violation, but rather a prior act that caused an individual to be trespassed an the individual returned is the relevant factor pertaining to RMC 8.10.010. 2. That statements made by witnesses did not present actual circumstances that can be perceived to have been belligerent, aggressive, or loud conduct as contesting one's constitutional rights are being violated alone is not a display of unlawful conduct. And that as will be covered in the perjury section the circumstances do not add up to a person who had been behaving belligerent, aggressive, and loud.

The Plaintiff claims that the prosecuting attorney recognized that RMC 8.10.010 was not applicable because no prior good reason to exclude existed because of a Motion to Dismiss the Plaintiff had filed which is where the descriptions of such behaviors came from as the Plaintiff declared at that time that this was what was needed in order for a violation which the prosecuting attorney took as all she had to prove in order to secure a conviction even if based on lies. But in that RMC 8.10.010 requires a prior incident where an individual was

trespassed had occurred, not good reason under the circumstances, was ignored. And this was permitted to happen because the Judge to no interest in the rights of the Plaintiff.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(2) Perjury/Slander/Defamation of Character Legal Authority: (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 42 U.S. Code § 1985 (3) (conspiracy).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 6.** 5th Amendment right to Procedural Due Process. **7.** 8th Amendment right to be free from cruel and unusual punishment. **8.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **9.** 14th Amendment equal protection under the law.

**(Nevada Law) 10.** NRS 199.145 (Perjury). **11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.510 (slander/defamation of character). **13.** NRS 463.0129 (1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Perjurious Statements Made**: **Donald Stewart**: **1.** That Donald Stewart "had not requested the Plaintiff to leave until after the Plaintiff had become belligerent, aggressive and loud." **2.** That the Plaintiff had behaved "belligerent, aggressive, and loud."

**Michael Blanco**: **1.** That the Plaintiff had behaved "belligerent, aggressive and loud." 2.

**Michael Herrick**: **1.** That "as soon as he arrived the Plaintiff was already acting 'belligerent, aggressive, and loud and disturbing other patrons.'" **2.** That "He had told the Plaintiff he was trespassed from all properties related to Tri-properties which included the Eldorado, Silver Legacy, and Circus Circus;"

**Joseph Hanek**: **1.** That "the Plaintiff initially refused to provide Identification and that later "the Plaintiff had not been given his ID back yet but tried to run off the property without it." **2.** That "the Plaintiff tried to run at one of the Eldorado Employees in an aggressive manner" to justify the use of force. **3.** That "the Plaintiff behaved "belligerent, aggressive, and loud."

SCHOOL IS IN SESSION: FINAL COMPLAINT - 57

**Angie Gianoli**: 1. Conspired with City witnesses by coaching them to describe the Plaintiff as having behaved "belligerent, aggressive and loud," knowing there was no proof being provided besides witness statements to substantiate claims.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(3) Malicious Prosecution Legal Authority**: **(Federal Law) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 42 U.S. Code § 1985 (3) (conspiracy). **3.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Nevada Constitution) 4.** Nevada Constitution Article 1 Section 1 (due process). **5.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 11.** NRS 199.145 (Perjury). **12.** NRS 199.310 (malicious prosecution). **13.** NRS 200.510 (slander/defamation of character). **14.** NRS 463.0129 (1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Malicious Prosecution Occurred: 1.** By knowingly and fictitiously lying about the Plaintiff's behavior in order to present the Plaintiff as having created good reason for exclusion when the Plaintiff had done nothing wrong.

**2.** In that the Kangaroo Court held in a perfunctory manner was held just to go through the motions to obtain a conviction.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(4) Self Incrimination Legal Authority**: **(Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights).

(**Nevada Constitution**) **2.** Nevada Constitution Article 1 Section 1 (due process). **3.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **4.** Nevada Constitution Article 1 Section 24 (equal protection).

(**US Constitution**) **5.** 4th Amendment right to be secure in persons. **6.** 8th Amendment right to be free from cruel and unusual punishment. **7.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **8.** 14th Amendment right to equal protection under the law.

**How Self Incrimination was Permitted**: **1.** By forcing the Plaintiff to have to defend himself in pro per in order to have a Defense the Plaintiff was given no other option but to speak in order for his reasons for refusing to leave be heard. And while the Plaintiff did not willingly choose to be represented in pro per the Plaintiff was held under the same standards where the Plaintiff in order to do something must understand the law. One of the fundamentally recognized risks of representing one's self which is highly ill-advised in any circumstance.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

(**5**) **Due Process Legal Authority**: (**Federal**) **1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

(**Nevada Constitution**) **3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

(**US Constitution**) **7.** 4th Amendment right to be secure in persons. **8.** 5th Amendment self-incrimination violations and due process violations. **9.** 6th Amendment right to an impartial tribunal, right to be confronted with witnesses against, right to compulsory process for obtaining witnesses in favor and right to assistance of counsel. **10.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

(**Nevada Law**) **11.** NRS 51.035 (hearsay) **12.** NRS 171.1965 (discovery) **13.** NRS 178.397 (assignment of counsel) **14.** NRS 199.310 (malicious prosecution). **15.** NRS 200.460(1) (false arrest). **16.** NRS 463.0129 (1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **17.** Rule 2.2 of

SCHOOL IS IN SESSION: FINAL COMPLAINT - 59

(Impartiality and Fairness) **17.** Rule 11 (Proceedings before Justice of the Peace of Magistrate Judge) **18.** Rule 16 (Pretrial Conferences; Scheduling; Management). **19.** Nevada Gaming Control Board Regulation 5 (Surveillance Systems)

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010. (trespassing)

**How Due Process Violations Occurred**:

    **a. RIGHT TO PRESENT WITNESSES AND EVIDENCE: 1.** By refusing the Plaintiff counsel, under the premise that no jail time was going to be requested, the Plaintiff was denied an opportunity to obtain witnesses in his favor as the Plaintiff was unaware of the individuals names and inexperienced on obtaining legal subpoenas. This was further achieved as individuals the Plaintiff would have called to testify, given that the Plaintiff was unaware of the individuals names would have been unable to obtain these witnesses in his favor while an attorney would have had the opportunity to locate these individuals. These individuals primarily related to the Cal-Neva incident as the Plaintiff spent little time at the Silver Legacy.

These individuals include Richard a Cal-Neva slot tech who the Plaintiff associated with and had built a friendly relationship working together to figure out sports picks. A security guard for the Cal-Neva whom during the incident questioned "why they were screwing with this guy because he doesn't cause problems to no one. The Plaintiff is only aware the man's name might be first name Stewart. A gentleman believed to be of some sort of management whom during an occasion of the Plaintiff being too loud in an argument during a live Pod-cast streamed at the Cal-Neva, where the Plaintiff was requested to quite down and was able to do so without further problems. The Plaintiff is unaware of this man's name. And of course, the bookie who took the Plaintiff's bet. who also on a prior occasion had an argument with the Plaintiff that was able to be resolved without demanding exclusion or having a trespass order issued, and whom had talked with the Plaintiff on a brief run in at the Harrah's Casino and admitted he thought that the Plaintiff was excluded for no reason.

**2.** Through Officer Borba's refusal in Incident 1 to obtain witness statements. It was later permitted hearsay to describe the other patrons as having been offended and disturbed by the Plaintiff's conduct as proof to claims yet this was a lie.

**3.** Through Michael Blanco, Michael Herrick, and Joseph Hanek removing the Plaintiff to a security room off of the casino floor and then not providing the Plaintiff as legal counsel, the legally required video forthright to prove that a criminal act had been committed by the Plaintiff and confirm that their actions were lawful.

    b.   **RIGHT TO DISCOVERY**: **1.** The Plaintiff was not provided 2 components of discovery. 1. The video that is required under the circumstances by the Nevada Gaming Control Board, that security rooms where individuals are detained must be posted and have both video and audio recordings, that when a person is detained it must be recorded, that this material be provided forthright to ensure protections in deterring, detecting, and prosecuting criminal acts, and that not following the standards set forth constitutes an unsuitable method of operation, and no documentation of the event was ever brought before the courts.

And 2 that the Plaintiff was never provided a witness sheet in order to know that the prosecuting attorney had no intention of involving the any of the attending officers, to include the arresting officers, to substantiate claims made and reasons for an arrest where arrest occurred.

    c.   **RIGHT TO CONFRONTATION**: **1.** The Plaintiff was denied his right to confront adverse witness though the City's prosecuting attorneys refusal to have the arresting officers available for questioning instead requiring that in order for the Plaintiff to question them the Plaintiff had to subpoena the officers himself and as he had not done that and had plenty of time the Plaintiff was not entitled to question the officers. If the Plaintiff had been provided the lawfully required legal counsel this issue would not have been allowed.

    d.   **RIGHT TO COUNCIL**: **1.** The reason behind the Plaintiff being refused legal counsel was because "no jail time was being requested." Yet at sentencing the Plaintiff was sentenced to 60 days suspended. The Plaintiff contends that no jail time being requested includes those which could be served at a latter time regardless of if these days are imposed or not.

The Plaintiff further contends that the factor that should have been taken into consideration was not whether or not jail time was to be imposed but rather if equal protection under the law was being applied. As the Defendants were being given free of cost city attorney to prosecute the Plaintiff, thus to ensure fairness the Plaintiff, especially given the circumstances of being both disabled and homeless, should have been provided legal counsel to ensure a fair hearing.

**2.** That by refusing the Plaintiff counsel the Plaintiff was also burdened with the task of not only providing his own legal defense but also the Plaintiff would be by default was also refused a right to appeal as the Plaintiff was tasked with knowing how to navigate this area of law as well. A task that is its own field for a reason.

**3.** That by refusing the Plaintiff counsel the Plaintiff was pushed into a position where the Plaintiff was allowed to self-incriminate. By admitting the Plaintiff naturally through his manic disorder seems belligerent, aggressive, and loud, this was taken out of context as additional evidence based on the Plaintiff's own admission that he had behaved belligerently, aggressively, and loud.

**4.** That by refusing the Plaintiff counsel the courts denied the Plaintiff the right to bring witnesses in his favor as outlined in Part 2 section D part 5 subsection (a).

**5.** That by denying the Plaintiff the right to counsel the Plaintiff was denied a fair trial in that the prosecution was able to manipulate the system to not be about integrity and the Plaintiff's misconduct but instead ensuring that the Plaintiff was found guilty regardless of means.

**6.** That by denying the Plaintiff counsel the Plaintiff was put through a Kangaroo court where the Judge held no regard to the rights of the Plaintiff nor the laws and how they are meant to be used.

e.  **IMPARTIAL TRIBUNAL: 1.** The Plaintiff was already convicted in a Kangaroo court by the judge prior to the Plaintiff's trial denying the Plaintiff's innocence till proven guilty. The hearing was just a formality. This can be seen through many basic refusals of the judge to take actual laws into consideration and the judge's acceptance of a perfunctory and weak case as sufficient evidence to satisfy the highest standards needed in law to prove criminal allegations in beyond a reasonable doubt.

To include when being asked by the Plaintiff "how do I show they are lying," the Judges

response was that is not my job that is yours," thereby granting testimony made by witnesses

to be rendered fact without evidence or care as to the factual basis where contradictions and

irregularities were just ignored.

To include ignoring standards of law clearly established such as the relevant stipulation

related to places open to the public at the time as if the issue were mute.

To include that a fair trial was clearly not given to the Plaintiff in that the Judge took no

opportunity to ensure the Plaintiff was given an opportunity to have a defense such as

expecting video evidence as required by law and questioning why the Plaintiff had not filed

the subpoenas the Plaintiff claimed he was going to file and why this was never done despite

being granted extensions to complete the task.

To include the Judges clearly statement made at sentencing to the Plaintiff that "to avoid these

issues in the future you just need to do what you are told!" Establishing that the Plaintiff does

not have a right to autonomy.

To include that the Plaintiff, an autodidact in the law and disabled homeless individual, seems

to be more educated in the law and have a better understanding of the law, over the Judge and

the prosecuting attorney, should the Plaintiff's contentions pertaining to RMC 8.10.010 are

correct, which is a disturbing fact or they just didn't care because they have nothing to fear

about their choices to deprive the Plaintiff of his constitutional rights in order to protect a

place of public accommodations expectation to no reason exclusion.

f.  **BURDEN OF PROOF: 1.** Given the criminal elements the standard from which the

prosecution had to prove their case was beyond a reasonable doubt. But the prosecution was

able to meet this burden by having 4 witnesses from who worked for a couple of the casinos

who demanded and expected no reason exclusion by simply claiming the Plaintiff had

behaved belligerent, aggressive, and loud.

And given Judge Holmes comment at sentencing instructing the Plaintiff that "to avoid this

happening again all the Plaintiff had to do was do what he was told," does not seem like the

Judge thought it was the Plaintiff's behaviors that got him excluded as the Plaintiff would not

have been told to just do what he was told but to think about his behaviors because people

cannot go around acting belligerent, aggressive, or loud for no reason and think it is okay.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(6) Cruel and Unusual Punishment Legal Authority**: **1. (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 42 U.S. Code § 1985 (3) (conspiracy).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 6.** 5th Amendment right to Procedural Due Process. **7.** 8th Amendment right to be free from cruel and unusual punishment. **8.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **9.** 14th Amendment equal protection under the law.

**(Nevada Law) 10.** NRS 199.145 (Perjury). **11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.510 (slander/defamation of character). **13.** NRS 463.0129 (1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Cruel and Unusual Punishment Occurred**: **1.** Through Criminalizing the Plaintiff's status, of being homeless and disabilities by depicting the Plaintiff as having behaved in a hostile, out of control manner, without actual proof besides 4 witnesses over 3 separate incidents saying the same broad statements, without any other proof to substantiate the statements.

**2.** The Plaintiff was prosecuted under a trespass ordinance not for being on a property the Plaintiff should not have but because the Plaintiff's manic disorder was manipulated to present the Plaintiff having acted in a manner that would support good cause for exclusion yet was neither arrested or charged with a breach of peace violation.

**3.** As a result of being chronically homeless, the Plaintiff was put under involuntary circumstances, where to keep his property safe the Plaintiff always had to keep his property in his possession at all times. Through denying access to places of public accommodation, based on the limited and harmless property the Plaintiff

possessed, the Plaintiff would be continuously guilty of violations simply by entering into places of public accommodation with his property and subject to arbitrary exclusion where at any moment the Plaintiff could be excluded even from properties where the Plaintiff had previously been invited with no issues.

**4.** Through the sheer wanton use of authority, exerted over the Plaintiff's autonomy, to create a separation of equality, thereby taking away the Plaintiff's dignity, to be treated equally.

**5.** Through the malicious use of legal proceeding, to prosecute for reasons that were arbitrary and discriminatory in nature, to permit exclusion based off no reason.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(7) Equal Protection Under the Law Legal Authority**: **1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 42 U.S. Code § 1985 (3) (conspiracy). **3.** 5 U.S.C 706(2)(a) (1988) (arbitrary).

**(Title III of ADA) 4.** Title III of ADA §36.202(a) (denial of participation through discrimination of the chronically homeless. A class of individuals with disabilities).

**(Nevada Constitution) 5.** Nevada Constitution Article 1 Section 1 (due process). **6.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **7.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **8.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 9.** 4th Amendment right to be secure in persons. **1.** 5th Amendment self-incrimination violations and due process violations. **11.** 6th Amendment right to an impartial tribunal, right to be confronted with witnesses against, right to compulsory process for obtaining witnesses in favor and right to assistance of counsel. **12.** 8th Amendment right to be free from cruel and unusual punishment. **13.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **14.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 15.** NRS 199.145 (Perjury). **16.** NRS 199.310 (malicious prosecution). **17.** NRS 200.460(1) (false arrest). **18.** NRS 200.510 (slander/defamation of character). **19.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators). **20.** NRS 651.070 (equal enjoyment by those with disabilities).

**Laws Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** NRS 207.200 (trespassing) (arrested). **2.** RMC 8.10.010 (trespassing) (prosecuted).

SCHOOL IS IN SESSION: FINAL COMPLAINT - 65

**How Equal Protection Violations Occurred: 1.** Through permitting a violation of NRS 463.0129 (1)(e) through making no reason exclusion lawful, based on the Plaintiff's homelessness related to the Plaintiff's disabilities, through means that have not been provided by legislators to allow exclusion.

**2.** Through violation to NRS 463.0129 (1)(e) as excluding an individual for no reason and then committing perjury to fictitiously create good reason to exclude, is not based on honesty nor is it free of criminal and corruptive elements.

**3.** Through violation of NRS 651.070 (equal enjoyment by those with disabilities) as the Plaintiff was discriminated against for being homeless which is related to the Plaintiff's disabilities.

**4.** Through a violation to Title III of ADA §36.202(a), denial of participation through discrimination of the Plaintiff's chronic homeless status, a class of individuals with disabilities, to justify exclusion.

**5.** Through denying the Plaintiff an opportunity to legal counsel creating an extensive breach to inequality of the law. If the Defendants were acting lawfully why did they do everything possible to circumvent the well-established standards in order to obtain a conviction?

**6.** Through the blatant and arbitrary disregard to relevant factors of the law in order to subject the Plaintiff to a conviction based on manipulating the Plaintiff's disabilities and circumstances as a means to justify intrusion into the autonomy and privacy of the Plaintiff without a compelling government interest.

**7.** Through the prosecuting attorneys coached instructions to witnesses uses to depict the Plaintiff as having provided good cause.

**8.** Through refusal to provide protections to the Plaintiff where instead of providing consideration into the Plaintiff's rights only concern to the Defendants expectations was given.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

**(8) Intentional Infliction of Emotional Distress Legal Authority**: **1. (Federal) 1.** 42 U.S. Code § 1983 (violation of civil rights). **2.** 5 U.S.C 706 (2)(a) (1988) (arbitrary).

**(Nevada Constitution) 3.** Nevada Constitution Article 1 Section 1 (due process). **4.** Nevada Constitution Article 1 Section 6 (cruel and unusual punishment). **5.** Nevada Constitution Article 1 Section 18 (unreasonable seizure). **6.** Nevada Constitution Article 1 Section 24 (equal protection).

**(US Constitution) 7.** 4th Amendment right to be secure in persons. **8.** 8th Amendment right to be free from cruel and unusual punishment. **9.** 14th Amendment right to not be deprived of life, liberty, property, or pursuit of happiness without due process. **10.** 14th Amendment right to equal protection under the law.

**(Nevada Law) 11.** NRS 199.310 (malicious prosecution). **12.** NRS 200.460(1) (false arrest). **13.** NRS 463.0129(1)(e) (exclusion from Casino's based on a lawful "common law" violation provided by Legislators).

**Law Used to Abridge Privileges and/or Immunities to Permit Arbitrary "No Reason Exclusion:" 1.** RMC 8.10.010 (trespassing).

**How Intentional Infliction of Emotional Distress Occurred: 1.** Through the perfunctory, arbitrary, malicious, and ineffectual prosecution of the Plaintiff who was criminalized, prosecuted, and unlawfully convicted with zero concern to the Plaintiff's rights. That the Plaintiff's status and disabilities were used to convict the Plaintiff of criminal charges while avoiding every clearly established standard possible just to obtain a conviction. This case was not about right or wrong this case was about providing special rights to places of public accommodation where they can act in any way desirable without inquest into their lawful reason for having wanted the Plaintiff excluded.

**Involved Parties**: The City of Reno, Prosecuting Attorney Angie, Donald Stewart. Joseph Hanek, Judge Dorothy Nash Holmes, Michel Blanco, Michael Herrick, and the Reno Municipal Courts.

## PART 3: LEGAL STANDINGS

### A. CORE VIOLATIONS

**1. NRS 651.080(a)(b)(c) Deprivation of, interference with and punishment for exercising rights and privileges; Prohibition; penalty; limitation.**

    1.   Any person is guilty of a misdemeanor who:

        (a) Withholds, denies, deprives or attempts to withhold, deny or deprive any other person of any right or privilege secured by NRS 651.070 or 651.075.

            **a. NRS 651.070 All persons entitled to equal enjoyment of places of public accommodation.**

                All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race,

color, religion, national origin, <u>disability</u>, sexual orientation, sex, gender identity

or expression.

(b) <u>Intimidates, threatens, coerces or attempts to threaten, intimidate or coerce any other person</u>

<u>for the purpose of interfering with any right or privilege secured by NRS 651.070 or 651.075</u>; or

(c) <u>Punishes or attempts to punish any other person for exercising or attempting to exercise any</u>

<u>right or privilege secured by NRS 651.070 or 651.075.</u>

2.    A prosecution for violation of a local ordinance authorized by NRS 651.100 is a bar to any prosecution

pursuant to this section. (**Will be discussed**)

**b. NRS 651.100    County and city ordinances.**

Any county or incorporated city of this state may adopt a local ordinance

prohibiting infringement of the rights or privileges secured by NRS 651.070 or

651.075, but such an ordinance must not apply to any establishment outside the

scope of NRS 651.050 and 651.060 or impose a penalty more severe than that

provided by NRS 651.075 or 651.080. A prosecution pursuant to NRS 651.075

or 651.080 is a bar to any prosecution pursuant to an ordinance authorized by

this section.

**2. NRS 651.090(a)(b)(c) <u>Deprivation of, interference with and punishment for exercising rights and privileges;</u>**

**Civil actions; damages; equitable relief; costs and attorney's fees.**

1.    Any person who:

(a) <u>Withholds, denies, deprives or attempts to withhold, deny or deprive any other person of any</u>

<u>right or privilege secured by NRS 651.070 or 651.075.</u>

(b) <u>Intimidates, threatens, coerces or attempts to threaten, intimidate or coerce any other person</u>

<u>for the purpose of interfering with any right or privilege secured by NRS 651.070 or 651.075; or</u>

(c) <u>Punishes or attempts to punish any other person for exercising or attempting to exercise any</u>

<u>right or privilege secured by NRS 651.070 or 651.075, is liable to the person whose rights</u>

<u>pursuant to NRS 651.070 or 651.075 are affected for actual damages, to be recovered by a civil</u>

<u>action in a court in and for the county in which the infringement of civil rights occurred or in</u>

<u>which the defendant resides.</u>

SCHOOL IS IN SESSION: FINAL COMPLAINT - 68

**3. NRS 463.0129(1)(e)**

(e) To ensure that gaming is conducted <u>honestly, competitively and free of criminal and corruptive elements, all gaming establishments</u> in this state <u>must remain open to the general public</u> and the <u>access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature.</u> (page 7 lines 5-11 of "Statement of Facts" dated August 17th 2017)

**NRS 463.0129(3)(a)** This section does not:

a) Abrogate or abridge any <u>common-law right</u> of a gaming establishment to <u>exclude any person</u> from gaming activities or eject any person from the premises of the establishment for <u>any reason</u>.

**4. Title III of ADA §36.202(a) Activities.**

(a) <u>Denial of participation. A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly,</u> or through contractual, licensing, or <u>other arrangements,</u> to a <u>denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation</u>.

**a. US Code  1997 US Code  Title 42 - THE PUBLIC HEALTH AND WELFARE CHAPTER 75 - PROGRAMS FOR INDIVIDUALS WITH DEVELOPMENTAL DISABILITIES  SUBCHAPTER I - GENERAL PROVISIONS  Sec. 6000 - Findings, purpose, and policy** (being used only as a reference point for "right to inclusion" and "right to make town choices" contrary to the standard applied that "Plaintiff needs to just do what he is told.")

§6000. Findings, purpose, and policy

(a) Findings

The Congress finds that—

(1) in 1993 there are more than 3,000,000 individuals with developmental disabilities in the United States;

(2) <u>disability is a natural part of the human experience that does not diminish the right of individuals with developmental disabilities to enjoy the opportunity to</u>

live independently, enjoy self-determination, make choices, contribute to society, and experience full integration and inclusion in the economic, political, social, cultural, and educational mainstream of American society;

(3) individuals with developmental disabilities continually encounter various forms of discrimination in critical areas;

(4) there is a lack of public awareness of the capabilities and competencies of individuals with developmental disabilities;

(5) individuals whose disabilities occur during their developmental period frequently have severe disabilities that are likely to continue indefinitely;

(6) individuals with developmental disabilities often require lifelong specialized services and assistance, provided in a coordinated and culturally competent manner by many agencies, professionals, advocates, community representatives, and others to eliminate barriers and to meet the needs of such individuals and their families;

(7) a substantial portion of individuals with developmental disabilities and their families do not have access to appropriate support and services from generic and specialized service systems and remain unserved or underserved;

(8) family members, friends, and members of the community can play an important role in enhancing the lives of individuals with developmental disabilities, especially when the family and community are provided with the necessary services and supports;

(9) there is a need to ensure that services, supports, and other assistance are provided in a culturally competent manner, that individuals from racial and ethnic minority backgrounds are fully included in all activities under this chapter, and that greater efforts are made to recruit individuals from minority backgrounds into the field of developmental disabilities; and

(10) the goals of the Nation properly include the goal of providing individuals with developmental disabilities with the opportunities and support to—

(A) make informed choices and decisions;

(B) live in homes and communities in which such individuals can

exercise their full rights and responsibilities as citizens;

(C) pursue meaningful and productive lives;

(D) contribute to their family, community, State, and Nation;

(E) have interdependent friendships and relationships with others; and

(F) achieve full integration and inclusion in society, in an

individualized manner, consistent with unique strengths, resources,

priorities, concerns, abilities, and capabilities of each individual.

**b. EXECUTIVE ORDER 12866 (**from Title 3 of ADA**)**

"[a]nd it is important to recognize that the ADA is intended to provide important benefits

that are distributional and equitable in character. The ADA states, ''[i]t is the purpose of

this [Act] (1) to provide a clear and comprehensive national mandate for the elimination

of discrimination against individuals with disabilities; [and] (2) to provide clear, strong,

consistent, enforceable standards addressing discrimination against individuals with

disabilities[.]'' 42 U.S.C. 12101(b). Many of the benefits of this rule stem from the

provision of such standards, which will promote inclusion, reduce stigma and potential

embarrassment, and combat isolation, segregation, and second-class citizenship of

individuals with disabilities. Some of these benefits are, in the words of Executive Order

12866, ''difficult to quantify, but nevertheless essential to consider."

**5. Title III of ADA §36.206(b)(c 1-2) Retaliation or coercion.**

(b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the

exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or

her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or

protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she

is entitled under the Act or this part;

SCHOOL IS IN SESSION: FINAL COMPLAINT - 71

(2) <u>Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;</u>

**6. Title III of ADA §36.208 (a)(b) Direct Threat**

a) <u>This part does not require a public accommodation to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others.</u>

(b) In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the <u>best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.</u>

**a. APPENDIX C TO PART 36 — GUIDANCE ON ADA REGULATION ON NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES ORIGINALLY PUBLISHED ON JULY 26, 1991**

"Section 36.208(a) implements section 302(b)(3) <u>of the Act by providing that this part does not require a public accommodation to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of the public accommodation, if that individual poses a direct threat to the health or safety of others.</u> This section is unchanged from the proposed rule."

"The inclusion of this provision is not intended to imply that persons with disabilities pose risks to others. It is intended to address concerns that may arise in this area. <u>It establishes a strict standard that must be met before denying service to an individual with a disability or excluding that individual from participation.</u>

Paragraph (b) of this section explains that a "<u>direct threat" is a significant risk to the health or safety of others that cannot be eliminated by a modification of policies,</u>

practices, or procedures, or by the provision of auxiliary aids and services. This

paragraph codifies the standard first applied by the Supreme Court in *School Board of*

*Nassau County v. Arline, 480 U.S. 273 (1987)*, in which the Court held that an individual

with a contagious disease may be an "individual with handicaps" under section 504 of the

Rehabilitation Act. In *Arline*, the Supreme Court recognized that there is a need to

balance the interests of people with disabilities against legitimate concerns for public

safety. Although persons with disabilities are generally entitled to the protection of this

part, a person who poses a significant risk to others may be excluded if reasonable to the

public accommodation's policies, practices, or procedures will not eliminate that risk. The

determination that a person poses a direct threat to the health or safety of others may not

be based on generalizations or stereotypes about the effects of a particular disability; it

must be based on an individual assessment that conforms to the requirements of

paragraph (b) of this section.

Paragraph (b) establishes the test to use in determining whether an individual poses a

direct threat to the health or safety of others. A public accommodation is required to

make an individualized assessment, based on reasonable judgment that relies on current

medical evidence or on the best available objective evidence, to determine: The nature,

duration, and severity of the risk; the probability that the potential injury will actually

occur; and whether reasonable modifications of policies, practices, or procedures will

mitigate the risk. This is the test established by the Supreme Court in *Arline*. Such an

inquiry is essential if the law is to achieve its goal of protecting disabled individuals from

discrimination based on prejudice, stereotypes, or unfounded fear, while giving

appropriate weight to legitimate concerns, such as the need to avoid exposing others to

significant health and safety risks. Making this assessment will not usually require the

services of a physician. Sources for medical knowledge include guidance from public

health authorities, such as the U.S. Public Health Service, the Centers for Disease

Control, and the National Institutes of Health, including the National Institute of Mental

Health."

**b. Papachristou v. City of Jacksonville 405 U.S. 156 (1972)**

"The ordinance was found to be facially invalid, according to Justice Douglas for the Court, because it did not give fair notice, it did not require specific intent to commit an unlawful act, it permitted and encouraged arbitrary and erratic arrests and convictions, it committed too much discretion to policemen, and it criminalized activities which by modern standards are normally innocent. (page 24 lines 9-14 of "Statement of Facts" dated August 17th, 2017)

**7. Title III of ADA §36.301(a)(b) Eligibility criteria.**

(a) **General**. A public accommodation shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.

(b) **Safety**. A public accommodation may impose legitimate safety requirements that are necessary for safe operation. Safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

**8. Title III of ADA §36.302(a) Modifications in policies, practices, or procedures.**

(a) **General**. A public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations.

**B.  ORDINANCE PLAINTIFF WAS UNLAWFULLY CONVICTED UNDER**

**1. RMC 8.10.010(a)**

(a) Every person who goes upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or to commit any unlawful act, or willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass, is guilty of a misdemeanor. **If the premises were at the time open to the public, the warning must have**

**been given within the previous six months.** The meaning of this subsection is not limited by subsections (b), (c), (d) and (e) of this section.

    **a. Slade v. Caesars Entertainment Corporation 132 Nev. Adv. No 36 Docket No. 62720 (May 12th, 2016)**

        Quoting *Harris Assocs. V. Clark Cty. Sch. Dist., 119 Nev. 638, 642, 81 P.3d 532, 534 (2003)* "A statute must be construed as to give meaning to all of [its] parts and language, and the court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation. Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes." *Albios v. Horizon Cmtys., 122 Nev. 409, 418, 132 P.3d 1022, 1028 (2006)(page 6 lines 20-27 of "Statement of Facts" dated August 17th, 2017)*

## C.   LEGAL AUTHROITY FOR CLAIM

**1. 42 U.S. Code § 1983 Civil Rights Violation**

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**2. 42 U.S. Code § 1985 (3) Conspiracy to interfere with civil rights**

    **(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection

SCHOOL IS IN SESSION: FINAL COMPLAINT - 75

of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who

is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the

election of any lawfully qualified person as an elector for President or Vice President, or as a Member of

Congress of the United States; or to injure any citizen in person or property on account of such support or

advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or

cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his

person or property, or deprived of having and exercising any right or privilege of a citizen of the United

States, the party so injured or deprived may have an action for the recovery of damages occasioned by such

injury or deprivation, against any one or more of the conspirators.

**3. Title III of the ADA 28 CFR Part 36 -- Nondiscrimination on the Basis of Disability by Public**

**Accommodations and in Commercial Facilities**

**Development of the 2004 ADA/ABA Guidelines**

"Because the Department of Justice is adopting ADA Chapter 1, ADA Chapter 2, and Chapters 3

through 10 of the 2004 ADA/ABA Guidelines as part of the 2010 ADA Standards for Accessible

Design (2010 Standards), on the effective date of the final rule, these guidelines will cease to be

mere guidance and instead will have legal effect."

**EXECUTIVE ORDER 12866** (from Title 3 of ADA)

"[a]nd it is important to recognize that the ADA is intended to provide important benefits that are

distributional and equitable in character. The ADA states, ''[i]t is the purpose of this [Act] (1) to

provide a clear and comprehensive national mandate for the elimination of discrimination against

individuals with disabilities; [and] (2) to provide clear, strong, consistent, enforceable standards

addressing discrimination against individuals with disabilities[.]'' 42 U.S.C. 12101(b). Many of

the benefits of this rule stem from the provision of such standards, which will promote inclusion,

reduce stigma and potential embarrassment, and combat isolation, segregation, and second-class

citizenship of individuals with disabilities. Some of these benefits are, in the words of Executive

Order 12866, ''difficult to quantify, but nevertheless essential to consider."

**4. 5 U.S.C 706 (2)(a)(1988) Arbitrary**

SCHOOL IS IN SESSION: FINAL COMPLAINT - 76

"A clear error of judgement; an action not based upon the relevant factors and so is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law or if it was taken without observance of procedure required by law." (page 18 lines 12-15 of "Statement of Facts" dated August 17th 2017)

## D. CONSTITUTIONAL RIGHTS VIOLATED

### 1. 1st Amendment Free Speech

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

#### a. FREE SPEECH

**Nevada Constitution**

Article 1 Sec: 9. **Liberty of speech and the press.** Every citizen may freely speak, write and publish his sentiments on all subjects being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions and civil actions for libels, the truth may be given in evidence to the Jury; and if it shall appear to the Jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the party shall be acquitted or exonerated.

**Whitney v. California, 274 U.S. 357, 375, 47 S. Ct. 641, 648, 71 L. Ed. 1095 (1927)**

Justice Brandeis wrote:

"Those who won our independence ... believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; ... that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American Government."

**Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 801 (1985)**

"The private owner can no longer claim the authority to bar people from using the property because he or she disagrees with the content of their speech."

(quoted from *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas, 257 F.3d 937 (9th Cir. 2001)*)

**Anniskette v. State 489 P.2d 1012 (1971)**

"That the officer was personally offended by the telephone call does not render the defendant's conduct a crime. That would be to make the terms of the statute and the content of the First Amendment shift with the mention and emotional status of the recipient of the verbal communication. Under an objective standard it is not permissible to make criminality hinge upon the ideological vicissitudes of the listener. A great deal more is required to place speech outside the pale of First Amendment protection. The point was made forcefully in *Terminiello v. Chicago*," *337 U.S. 1, 4 (1949) 69 S. Ct. 894, 896, 93 L. Ed. 1131, 1134* (page 49 lines 26-28 and page 50 lines 1-6 of "Statement of Facts" dated August 17th 2017)

**Clements and Clements vs. Airport Authority of Washoe County, 69 F.3d 321 (9th Cir. 1995)**

"The standard for evaluating a First Amendment retaliation claim was established in *Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).* See *Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).* First, the plaintiff must show that his protected conduct was a substantial or motivating factor in the defendant's decision. Then, the burden shifts to the defendant to demonstrate that the same decision would have been made in the absence of the protected conduct."

**2. 4th Amendment Right to be secure in persons**

"The right of the people to be secure in their <u>persons</u>, houses, papers, and effects, against <u>unreasonable</u> searches and <u>seizures</u>."

**a. UNREASONABLE SEIZURE/ASSAULT**

**Nevada Constitution**

Article 1 Sec. 18. **Unreasonable seizure and search; issuance of warrants.**

The right of the people to be secure in their persons, houses, papers and effects

against unreasonable seizures and searches shall not be violated; and no warrant

shall issue but on probable cause, supported by Oath or Affirmation, particularly

describing the place or places to be searched, and the person or persons, and

thing or things to be seized.

**NRS 178.394 No person to be compelled to be witness against himself or herself in**

**criminal action, or to be unnecessarily restrained.**

No person can be compelled, in a criminal action, to be a witness against himself

or herself, nor shall a person charged with a public offense be subjected, before

conviction, to any more restraint than is necessary for the person's detention to

answer the charge.

**United States v. City of Jackson 318 F.2d 1, 6-7(5ᵗʰ Cir. 1963)**

"[O]ne of the sophisticated methods for circumventing the law is for local police

to eschew "segregation" laws, using in their place conventional breach of peace

or trespass laws as instruments for enforcing segregation, euphemistically

termed "separation." (page 12 lines 5-10 of "Statement of Facts" dated August

17ᵗʰ, 2017)

**3. 5ᵗʰ Amendment Self Incrimination and Due Process**

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or

indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in

actual service in time of War or public danger; nor shall any person be subject for the same offence to be

twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against

himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property

be taken for public use, without just compensation."

**a. SELF INCRIMINATION**

**Nevada Constitution**

Article 1 Sec. 8. **Rights of accused in criminal prosecutions; jeopardy; due process of law; eminent domain.**

1. No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in actual service and the land and naval forces in time of war, or which this State may keep, with the consent of Congress, in time of peace, and in cases of petit larceny, under the regulation of the Legislature) except on presentment or indictment of the grand jury, or upon information duly filed by a district attorney, or Attorney General of the State, and in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel, as in civil actions. No person shall be subject to be twice put in jeopardy for the same offense; <u>nor shall he be compelled, in any criminal case, to be a witness against himself.</u>

2. <u>No person shall be deprived of life, liberty, or property, without due process of law.</u>

**NRS 178.394 No person to be compelled to be witness against himself or herself in criminal action, or to be unnecessarily restrained.**

<u>No person can be compelled, in a criminal action, to be a witness against himself or herself,</u> nor shall a person charged with a public offense be subjected, before conviction, to any more restraint than is necessary for the person's detention to answer the charge.

**State v. Poindexter 318 S.E.2d 329 (1984)**

"<u>The fifth amendment privilege… says no more than a person shall not be compelled to speak.</u> It does not place upon the trial court the duty of informing a pro se defendant of his rights and privileges. In fact, the courts in this State have held that a <u>defendant who knowingly and intelligently elects to proceed pro se, 'cannot expect the trial judge to relinquish his role as impartial arbiter in exchange for the dual capacity of judge and guardian angel of defendant.'</u> *State v. Lashley, 21 N.C.App. 83, 85, 203 S.E.2d 71, 72 (1974); State v. McDougald,*

*18 N.C.App. 407, 410, 197 S.E.2d 11, 13, cert. denied, 283 N.C. 756, 198 S.E.2d 726 (1973)*. Moreover, our courts have ruled that a defendant who <u>chooses</u> to proceed <u>pro se 'does so at his peril and acquires as a matter of right no greater privilege or latitude than would an attorney acting for him.'</u>" *State v. Cronin, 299 N.C. 229, 244-245, 262 S.E.2d 277, 287 (1980); State v. Lashley, supra, 21 N.C. App. at 85, 203 S.E.2d at 72*. See also Note, *Right to Defend Pro Se, 48 N.C.Law Rev. 678, 683-384 (1970)*.

### b. DUE PROCESS

#### Mathews v. Eldridge, 424 U.S. 319, 344 (1976)

"<u>First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail</u>."

### I. IMPARTIAL TRIBUNAL

#### REVISED NEVADA CODE OF JUDICIAL CONDUCT PART VI.

**Rule 2.2.  Impartiality and Fairness.**  <u>A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.</u>

#### Clements and Clements vs. Airport Authority of Washoe County, 69 F.3d 321 (9th Cir. 1995)

"<u>A biased proceeding is not a procedurally adequate one. At a minimum, Due Process requires a hearing before an impartial tribunal.</u>" *Ward v. Village of Monroeville, 409 U.S. 57, 59-60, 93 S. Ct. 80, 83, 34 L. Ed. 2d 267 (1972)*.

### II. RIGHT TO PRESENT EVIDENCE AND CALL WITNESSES

**Rule 16.   Pretrial Conferences; Scheduling; Management**

(c) Attendance and Subjects to Be Discussed at Pretrial Conferences.

**(2) Matters for Consideration.** At any pretrial conference, the court

may consider and take appropriate action on the following matters:

(F) identifying witnesses and documents, scheduling the filing

and exchange of any pretrial briefs, and setting dates for

further conferences and for trial;

### III. RIGHT TO KNOW OPPOSING EVIDENCE

**NRS 171.1965 Discovery by defendant before preliminary examination;**

**material subject to discovery; effect of failure to permit discovery.**

1. At the time a person is brought before a magistrate pursuant to NRS

171.178, or as soon as practicable thereafter, but not less than 5 judicial

days before a preliminary examination, the prosecuting attorney shall

provide a defendant charged with a felony or a gross misdemeanor with

copies of any:

(a) Written or recorded statements or confessions made by the

defendant, or any written or recorded statements made by a

witness or witnesses, or any reports of statements or

confessions, or copies thereof, within the possession or

custody of the prosecuting attorney;

2. The defendant is not entitled, pursuant to the provisions of this

section, to the discovery or inspection of:

(a) An internal report, document or memorandum that is

prepared by or on behalf of the prosecuting attorney in

connection with the investigation or prosecution of the case.

(b) A statement, report, book, paper, document, tangible object

or any other type of item or information that is privileged or

protected from disclosure or inspection pursuant to the

SCHOOL IS IN SESSION: FINAL COMPLAINT - 82

Constitution or laws of this State or the Constitution of the
United States.

3. The provisions of this section are not intended to affect any
obligation placed upon the prosecuting attorney by the Constitution of
this State or the Constitution of the United States to disclose
exculpatory evidence to the defendant.

**Nevada Gaming Control Board – 5.160 (2) Surveillance systems**

2. "The Chair shall adopt standards for the installation, maintenance
and operation of casino surveillance systems at all licensed
establishments. The purposes of a casino surveillance system are to
assist the licensee and the state in safeguarding the licensee's assets, in
deterring, detecting and prosecuting criminal acts, and in maintaining
public confidence and trust that licensed gaming is conducted honestly
and free of criminal elements and activity."

**Nevada Gaming Control Board – 5.160(6) Surveillance systems**

"Except as otherwise provided in subsections 8 and 9, each licensee
shall install, maintain and operate a casino surveillance system in
accordance with the casino surveillance standards adopted by the Chair.
The failure of a licensee to comply with this section and the casino
surveillance standards adopted by the Chair or any variation to the
casino surveillance standards approved pursuant to subsection 8 is an
unsuitable method of operation."

**Nevada Gaming Control Board - Regulation 5 Standard 8 REQUIRED
SURVEILLANCE COVERAGE: SECURITY OFFICES**

"The casino surveillance system of category 'A,' 'B,' and 'C' licensees
must possess the capability to monitor and record, in both audio and
video, the area of any security office or other room in which persons
may be detained by casino security personnel. A notice must be posted

in the security office or other room advising all persons that the area is
under video and audio surveillance. When a person is detained by
casino security personnel in the casino security office, the detention and
any questioning, must be recorded. A person is considered to be
detained when the person has been detained by casino security
personnel and confined in the casino security office in such a manner as
to deprive him of the ability to leave voluntarily."

## IV. RIGHT TO QUESTION ADVERSE WITNESSES

**Barber v. Page, 390 U.S. 719 at 724-725, 88 S. Ct. 1318 at 1322, 20 L. Ed. 2d
255 at 260 (1968)**

"the United States Supreme Court stated that a witness is not
`unavailable' [to testify in person] unless the prosecutorial authorities
have made a good-faith effort to obtain his presence at trial."

**NRS 51.035 "Hearsay" defined. "Hearsay" means a statement offered in
evidence to prove the truth of the matter asserted unless:**

1. The statement is one made by a witness while testifying at the trial
or hearing;

2. The declarant testifies at the trial or hearing and is subject to cross-
examination concerning the statement, and the statement is:

    (a) Inconsistent with the declarant's testimony;

    (b) Consistent with the declarant's testimony and offered to
rebut an express or implied charge against the declarant of
recent fabrication or improper influence or motive;

    (c) One of identification of a person made soon after
perceiving the person; or

    (d) A transcript of testimony given under oath at a trial or
hearing or before a grand jury; or

3. The statement is offered against a party and is:

(a) The party's own statement, in either the party's individual or a representative capacity;

(b) A statement of which the party has manifested adoption or belief in its truth;

(c) A statement by a person authorized by the party to make a statement concerning the subject;

(d) A statement by the party's agent or servant concerning a matter within the scope of the party's agency or employment, made before the termination of the relationship; or

(e) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

## V. OPPORTUNITY TO BE REPRESENTED BY COUNSEL

**Nevada Constitution**

Article 1 Sec. 8. **Rights of accused in criminal prosecutions; jeopardy; due process of law; eminent domain.**

1. No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in actual service and the land and naval forces in time of war, or which this State may keep, with the consent of Congress, in time of peace, and in cases of petit larceny, under the regulation of the Legislature) except on presentment or indictment of the grand jury, or upon information duly filed by a district attorney, or Attorney General of the State, and in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and <u>with counsel, as in civil actions</u>. No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled, in any criminal case, to be a witness against himself.

2. <u>No person shall be deprived of life, liberty, or property, without due</u>

<u>process of law</u>.

**Gideon v. Wainwright, 372 U.S. 335 (1963)**

"<u>The right of an indigent defendant in a criminal trial to have the</u>

<u>assistance of counsel is a fundamental right essential to a fair trial, and</u>

<u>petitioner's trial and conviction without the assistance of counsel</u>

<u>violated the Fourteenth Amendment</u>."

**RULE 11 PROCEEDINGS BEFORE JUSTICE OF THE PEACE OR**

**MAGISTRATE JUDGE**

(b) Procedure for appointment of attorney for indigent defendant.

1. <u>Any defendant charged with a public offense who is an indigent</u>

<u>may, by oral statement to the district judge, justice of the peace,</u>

<u>municipal judge or master, request the appointment of an attorney to</u>

<u>represent the defendant</u>.

2. The request must be accompanied by the defendant's affidavit,

which must state:

    i. That the defendant is without means of employing an

    attorney; and

    ii. Facts with some particularity, definiteness and certainty

    concerning the defendant's financial disability.

3. The district judge, justice of the peace, municipal judge or master

shall forthwith consider the application and shall make such further

inquiry as he or she considers necessary. If the district judge, justice of

the peace, municipal judge or master:

    i. Finds that the defendant is without means of employing an

    attorney; and

    ii. Otherwise determines that representation is required, the

    judge, justice or master shall designate the public defender of

the county or the State Public Defender, as appropriate, to

represent the defendant. If the appropriate public defender is

unable to represent the defendant, or other good cause appears,

another attorney must be appointed.

**NRS 178.397 Assignment of counsel.**

Every defendant accused of a misdemeanor for which jail time may be

imposed, a gross misdemeanor or a felony and who is financially

unable to obtain counsel is entitled to have counsel assigned to

represent the defendant at every stage of the proceedings from the

defendant's initial appearance before a magistrate or the court through

appeal, unless the defendant waives such appointment.

**4. 6th Amendment Impartial Tribunal, Confronted by Witnesses, Right to Counsel**

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial

jury of the State and district wherein the crime shall have been committed, which district shall have been

previously ascertained by law, and to be informed of the nature and cause of the accusation; to be

confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor,

and to have the Assistance of Counsel for his defense"

**a. IMPARTIAL TRIBUNAL**

**REVISED NEVADA CODE OF JUDICIAL CONDUCT PART VI.**

**Rule 2.2. Impartiality and Fairness.** A judge shall uphold and apply the law,

and shall perform all duties of judicial office fairly and impartially.

**Clements and Clements vs. Airport Authority of Washoe County, 69 F.3d 321 (9th**

**Cir. 1995)**

"A biased proceeding is not a procedurally adequate one. At a minimum, Due

Process requires a hearing before an impartial tribunal." *Ward v. Village of*

*Monroeville, 409 U.S. 57, 59-60, 93 S. Ct. 80, 83, 34 L. Ed. 2d 267 (1972).*

**b. RIGHT TO BE CONFRONTED BY WITNESSES**

**Barber v. Page, 390 U.S. 719 at 724-725, 88 S. Ct. 1318 at 1322, 20 L. Ed. 2d 255 at 260 (1968)**

<u>"the United States Supreme Court stated that a witness is not `unavailable' [to testify in person] unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial</u>."

**NRS 51.035 "Hearsay" defined. "Hearsay" means a statement offered in evidence to prove the truth of the matter asserted unless:**

1. The statement is one made by a witness while testifying at the trial or hearing;

2. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

   (a) Inconsistent with the declarant's testimony;

   (b) Consistent with the declarant's testimony and offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive;

   (c) One of identification of a person made soon after perceiving the person; or

   (d) A transcript of testimony given under oath at a trial or hearing or before a grand jury; or

3. The statement is offered against a party and is:

   (a) The party's own statement, in either the party's individual or a representative capacity;

   (b) A statement of which the party has manifested adoption or belief in its truth;

   (c) A statement by a person authorized by the party to make a statement concerning the subject;

SCHOOL IS IN SESSION: FINAL COMPLAINT - 88

(d)  A statement by the party's agent or servant concerning a matter within the scope of the party's agency or employment, made before the termination of the relationship; or

(e)  A statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

### c. RIGHT TO COMPULSORY PROCESS FOR OBTAINING WITNESSES

**Rule 16.  Pretrial Conferences; Scheduling; Management**

(c)  Attendance and Subjects to Be Discussed at Pretrial Conferences.

**(2)  Matters for Consideration.** <u>At any pretrial conference, the court may consider and take appropriate action on the following matters</u>:

(F)  <u>identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and setting dates for further conferences and for trial;</u>

### d. ASSISTANCE OF COUNCIL FOR DEFENCE

**Nevada Constitution**

Article 1 Sec. 8. **Rights of accused in criminal prosecutions; jeopardy; due process of law; eminent domain.**

1. No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in actual service and the land and naval forces in time of war, or which this State may keep, with the consent of Congress, in time of peace, and in cases of petit larceny, under the regulation of the Legislature) except on presentment or indictment of the grand jury, or upon information duly filed by a district attorney, or Attorney General of the State, and in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and <u>with counsel, as in civil actions</u>. No person shall be subject to be twice put in jeopardy for the same offense;

nor shall he be compelled, in any criminal case, to be a witness against

himself.

2. No person shall be deprived of life, liberty, or property, without due

process of law.

**Gideon v. Wainwright, 372 U.S. 335 (1963)**

"The right of an indigent defendant in a criminal trial to have the

assistance of counsel is a fundamental right essential to a fair trial, and

petitioner's trial and conviction without the assistance of counsel

violated the Fourteenth Amendment."

**RULE 11 PROCEEDINGS BEFORE JUSTICE OF THE PEACE OR**

**MAGISTRATE JUDGE**

(b) Procedure for appointment of attorney for indigent defendant.

1. Any defendant charged with a public offense who is an indigent

may, by oral statement to the district judge, justice of the peace,

municipal judge or master, request the appointment of an attorney to

represent the defendant.

2. The request must be accompanied by the defendant's affidavit,

which must state:

      i. That the defendant is without means of employing an

      attorney; and

      ii. Facts with some particularity, definiteness and certainty

      concerning the defendant's financial disability.

3. The district judge, justice of the peace, municipal judge or master

shall forthwith consider the application and shall make such further

inquiry as he or she considers necessary. If the district judge, justice of

the peace, municipal judge or master:

      i. Finds that the defendant is without means of employing an

      attorney; and

ii. Otherwise determines that representation is required, the

judge, justice or master shall designate the public defender of

the county or the State Public Defender, as appropriate, to

represent the defendant. If the appropriate public defender is

unable to represent the defendant, or other good cause appears,

another attorney must be appointed.

NRS 178.397    Assignment of counsel.

Every defendant accused of a misdemeanor for which jail time may be

imposed, a gross misdemeanor or a felony and who is financially

unable to obtain counsel is entitled to have counsel assigned to

represent the defendant at every stage of the proceedings from the

defendant's initial appearance before a magistrate or the court through

appeal, unless the defendant waives such appointment.

### 5. 8th Amendment Cruel and Unusual Punishment

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments

inflicted."

#### a. CRUEL AND UNUSUAL PUNISHMENT

**Nevada Constitution**

Article 1 Sec: 6.  **Excessive bail and fines; cruel or unusual punishments; detention

of witnesses.**    Excessive bail shall not be required, nor excessive fines imposed, nor

shall cruel or unusual punishments be inflicted, nor shall witnesses be unreasonably

detained.

At first, the Court was inclined to an historical style of interpretation,

determining whether a punishment was "cruel and unusual" by looking to see if

it or a sufficiently similar variant had been considered "cruel and unusual" in

1789. In Weems v. United States, however, the Court concluded that the framers

had not merely intended to bar the reinstitution of procedures and techniques

condemned in 1789, but had intended to prevent the authorization of "a coercive

cruelty being exercised through other forms of punishment." The Amendment therefore was of an "expansive and vital character" and, in the words of a later Court, "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." The proper approach to an interpretation of this provision has been one of the major points of difference among the Justices in the capital punishment cases.

**Hope v. Pelzer, 536 U.S. 730 (2002)**

"basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man." *Trop v. Dulles, 356 U. S. 86, 100 (1958).*

**Pottinger v. City of Miami, 810 F . Supp 1551 (S.D. Fla. 1992)**

"the City's practice of arresting homeless individuals for harmless, involuntary conduct which they must perform in public is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution." (page 33 lines 16-18 of Statement of Facts" dated August 17th 2017)

**Robinson v. California 370 U.S. 660 (1962)**

"continuously guilty of the offense" (page 33 lines 6-7 of "Statement of Facts" dated August 17th, 2017) (fix make complete)

"Pursuant to that clause, the Supreme Court has held that laws that criminalize an individual's status, rather than specific conduct, are unconstitutional."

**Powell v. Texas 392 U.S. 514 (1968)**

"if… the prohibited conduct was involuntary due to one's condition, criminalization of that conduct would be impermissible under the Eighth Amendment." (page 33 lines 10-11 of "Statement of Facts" dated August 17th, 2017)

**Billingsley v. Stockman's Hotel 901 P.2d 141 (1995)**

"In *Moody v. Manny's Auto Repair, 110 Nev. 320, 333, 871 P.2d 935, 943 (1994)*, this court expressly disapproved of status as a dispositive factor in determining whether an actor has been negligent. In determining whether a land

owner or occupier has acted reasonably, a court may consider circumstantial

factors, including the fact that the plaintiff has been asked to leave and

unjustifiably refuses. However, the overriding factor is whether the land owner

or occupier has acted reasonably toward the plaintiff under the circumstances."

(page 17 lines 5-11 of "Statement of Facts" dated August 17th, 2017)

**6. 14th Amendment Due Process and Equal Protection of the Laws**

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the

United States; nor shall any State deprive any person of life, liberty, or property, without due process of

law; nor deny to any person within its jurisdiction the equal protection of the laws."

### a. ENFORCED LAWS TO ABRIDGE PRIVILEGES AND IMMUNITIES

1. **RMC 8.10.010(a)**(trespassing)

(a) Every person who goes upon the land or into any building of another with

intent to vex or annoy the owner or occupant thereof, or to commit any

unlawful act, or willfully goes or remains upon any land or in any building

after having been warned by the owner or occupant thereof not to trespass,

is guilty of a misdemeanor. **If the premises were at the time open to the**

**public, the warning must have been given within the previous six**

**months.** The meaning of this subsection is not limited by subsections (b),

(c), (d) and (e) of this section.

(Code 1966, § 11.12.002; Ord. No. 4408, § 1, 7-26-94)

2. **NRS 207.200 (**trespassing not amounting to burglary**)**

1. Unless a greater penalty is provided pursuant to NRS 200.603, (peering,

peeping, spying) any person who, under circumstances not amounting to a

burglary:

(a) Goes upon the land or into any building of another with intent to

vex or annoy the owner or occupant thereof, or to commit any unlawful

act; or

SCHOOL IS IN SESSION: FINAL COMPLAINT - 93

(b)  Willfully goes or remains upon any land or in any building after

having been warned by the owner or occupant thereof not to trespass,

Ê is guilty of a misdemeanor. The meaning of this subsection is not limited by subsections 2 and 4.

2.  A sufficient warning against trespassing, within the meaning of this section, is

given by any of the following methods:

(a)  Painting with fluorescent orange paint:

(1)  Not less than 50 square inches of a structure or natural

object or the top 12 inches of a post, whether made of wood,

metal or other material, at:

(I)  Intervals of such a distance as is necessary to

ensure that at least one such structure, natural object

or post would be within the direct line of sight of a

person standing next to another such structure,

natural object or post, but at intervals of not more

than 1,000 feet; and

(II)  Each corner of the land, upon or near the

boundary; and

(2)  Each side of all gates, cattle guards and openings that are

designed to allow human ingress to the area;

(b)  Fencing the area;

(c)  Posting "no trespassing" signs or other notice of

like meaning at:

(1)  Intervals of such a distance as is

necessary to ensure that at least one such

sign would be within the direct line of sight

of a person standing next to another such

sign, but at intervals of not more than 500

feet; and

(2) Each corner of the land, upon or near

the boundary;

(d) Using the area as cultivated

land; or

(e) By the owner or occupant of

the land or building making an oral

or written demand to any guest to

vacate the land or building.

3. It is prima facie evidence of trespass for any person to be found on

private or public property which is posted or fenced as provided in

subsection 2 without lawful business with the owner or occupant of the

property.

4. An entryman on land under the laws of the United States is an owner

within the meaning of this section.

5. As used in this section:

(a) "Cultivated land" means land that has been cleared of its

natural vegetation and is presently planted with a crop.

(b) "Fence" means a barrier sufficient to indicate an intent to

restrict the area to human ingress, including, but not limited to,

a wall, hedge or chain link or wire mesh fence. The term does

not include a barrier made of barbed wire.

(c) "Guest" means any person entertained or to whom

hospitality is extended, including, but not limited to, any

person who stays overnight. The term does not include a

tenant as defined in NRS 118A.170 (tenant defined).

**Scott v. Justice Court of Tahoe Township  435 P.2d 747 (1968)**

"A jury trial was held on February 23, 1967. The record indicates evidence was offered

showing that petitioner had been permanently barred from the premises of Harvey's

SCHOOL IS IN SESSION: FINAL COMPLAINT - 95

<u>Wagon Wheel because of prior acts of misconduct</u>. The record does not indicate the nature of the prior misconduct. On the occasion of this arrest he was informed that he was not welcome and was asked to leave. The jury acquitted him of the charge of disturbing the peace but found him guilty of failing to leave the premises when requested to do so."

"<u>We are dealing in this case with premises to which the public was invited, thus a revocation of the general invitation would seem necessary before one could be considered a trespasser. Cases have held that such an invitation may be revoked for good cause</u> and the violator prosecuted." (page 2 lines 8-12 of "Statement of Facts" dated August 17th, 2017)

"<u>the apparent aim of the entire section</u> (NRS 207.200) <u>is to protect landowners </u>(such as agricultural and mining property), <u>who are not in the business of inviting guests to their property in anticipation of financial gain, from trespassers</u>." (page 8 lines 27-28 and page 9 lines 1-2 of "Statement of Facts" dated August 17th, 2017)... <u>In my opinion this subsection reveals the legislative intention, and precludes application of any part of 207.200 to an invited hotel guest whose invitation to be present is subsequently withdrawn</u>. (**Justice C.J. Thompson dissenting**)

The fault of the majority opinion lies in its refusal to acknowledge the interplay of the three subsections. Indeed, only a part of the first subsection is quoted in that opinion. The balance of the section is ignored. <u>The intermediate appellate court decisions cited by the majority</u> [<u>People v. Brown</u>, 47 Cal. Rptr. 662 (Cal. App. 1965), and <u>State v. Carriker</u>, 214 N.E.2d 809 (1964)] do not concern criminal trespass statutes containing provisions similar to subsections 2 and 3 of NRS 207.200, and are inapposite. It is not useful to cite authority for the established principle that criminal statutes are to receive a strict construction. I respectfully suggest that the application of NRS 207.200 to the circumstances of this case violates that principle. I would grant prohibition.

In **2009, 141**, the Legislature added to **NRS 207.200**:

"'Guest' means any person entertained or to whom hospitality is extended, including, but not limited to, any person who stays overnight.

The term does not include a tenant as defined in NRS 118A.170 (tenant defined).

The basis for this addition was noted in the **Legislative Council's Digest**.

Under existing law, a person commits the crime of trespassing if the person willfully goes or remains upon any land or in any building after having been warned not to trespass by the owner or occupant of the land or building. (NRS 207.200) The Nevada Supreme Court has held that when an owner of premises asks a guest who was originally invited to the premises to leave, the owner has given a sufficient warning not to trespass, and the disinvited guest commits trespassing if the guest then refuses to leave. (Scott v. Just. Ct., 84 Nev. 9 (1968))

This bill codifies the holding in Scott and provides that an owner or occupant of any land or premises shall be deemed to have given a sufficient warning to a guest not to trespass if the owner or occupant makes an oral or written demand to the guest to vacate the land or building.

**(Plaintiff is challenging NRS 207.200 for being vague and ambiguous allowing arbitrary application to the law permitting discriminatory use, as the statute is implying places of public accommodation can exclude for no reason contrary to Nevada law and the common law ruling in *Scott*.)**

**b. DUE PROCESS**

"Due process under the Fourteenth Amendment can be broken down into two categories: procedural due process and substantive due process. Procedural due process, based on principles of "fundamental fairness," addresses which legal procedures are required to be followed in state proceedings. Relevant issues, as discussed in detail below, include notice, opportunity for hearing, confrontation and cross-examination, discovery, basis of

decision, and availability of counsel. Substantive due process, although also based on principles of "fundamental fairness," is used to evaluate whether a law can be applied by states at all, regardless of the procedure followed."

"[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus, 435 U.S. 247, 259 (1978).* "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." *Mathews v. Eldridge, 424 U.S. 319, 344 (1976).*

"Thus, the required elements of due process are those that 'minimize substantively unfair or mistaken deprivations' by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests. The core of these requirements is notice and a hearing before an impartial tribunal. Due process may also require an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record, and that a party be allowed to be represented by counsel."

**A. PROCEDURAL DUE PROCESS**

**I. CONFRONTATION AND CROSS EXAMINATION**

**Barber v. Page, 390 U.S. 719 at 724-725, 88 S. Ct. 1318 at 1322, 20 L. Ed. 2d 255 at 260 (1968)**

"the United States Supreme Court stated that a witness is not 'unavailable' [to testify in person] unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."

**II. DISCOVERY**

**NRS 171.1965 Discovery by defendant before preliminary examination; material subject to discovery; effect of failure to permit discovery.**

1. At the time a person is brought before a magistrate pursuant to NRS 171.178, or as soon as practicable thereafter, but not

less than 5 judicial days before a preliminary examination, the

prosecuting attorney shall provide a defendant charged with a

felony or a gross misdemeanor with copies of any:

 (a) Written or recorded statements or confessions

 made by the defendant, or any written or recorded

 statements made by a witness or witnesses, or any

 reports of statements or confessions, or copies

 thereof, within the possession or custody of the

 prosecuting attorney;

2. The defendant is not entitled, pursuant to the provisions of

this section, to the discovery or inspection of:

 (a) An internal report, document or memorandum

 that is prepared by or on behalf of the prosecuting

 attorney in connection with the investigation or

 prosecution of the case.

 (b) A statement, report, book, paper, document,

 tangible object or any other type of item or

 information that is privileged or protected from

 disclosure or inspection pursuant to the Constitution

 or laws of this State or the Constitution of the United

 States.

3. The provisions of this section are not intended to affect any

obligation placed upon the prosecuting attorney by the

Constitution of this State or the Constitution of the United

States to disclose exculpatory evidence to the defendant.

**Nevada Gaming Control Board – 5.160 (2) Surveillance systems**

2. "The Chair shall adopt standards for the installation,

maintenance and operation of casino surveillance systems at

all licensed establishments. The purposes of a casino surveillance system are to assist the licensee and the state in safeguarding the licensee's assets, in deterring, detecting and prosecuting criminal acts, and in maintaining public confidence and trust that licensed gaming is conducted honestly and free of criminal elements and activity."

**Nevada Gaming Control Board – 5.160(6) Surveillance systems**

"Except as otherwise provided in subsections 8 and 9, each licensee shall install, maintain and operate a casino surveillance system in accordance with the casino surveillance standards adopted by the Chair. The failure of a licensee to comply with this section and the casino surveillance standards adopted by the Chair or any variation to the casino surveillance standards approved pursuant to subsection 8 is an unsuitable method of operation."

**Nevada Gaming Control Board - Regulation 5 Standard 8**

**REQUIRED SURVEILLANCE COVERAGE: SECURITY OFFICES**

"The casino surveillance system of category 'A,' 'B,' and 'C' licensees must possess the capability to monitor and record, in both audio and video, the area of any security office or other room in which persons may be detained by casino security personnel. A notice must be posted in the security office or other room advising all persons that the area is under video and audio surveillance. When a person is detained by casino security personnel in the casino security office, the detention and any questioning, must be recorded. A person is considered to be detained when the person has been detained by casino

security personnel and confined in the casino security office in

such a manner as to deprive him of the ability to leave

voluntarily."

### III. AVAILABILITY OF COUNSEL

**Nevada Constitution**

Article 1 Sec. 8  **Rights of accused in criminal prosecutions;**

**jeopardy; due process of law; eminent domain.**

1. No person shall be tried for a capital or other infamous

crime (except in cases of impeachment, and in cases of the

militia when in actual service and the land and naval forces in

time of war, or which this State may keep, with the consent of

Congress, in time of peace, and in cases of petit larceny, under

the regulation of the Legislature) except on presentment or

indictment of the grand jury, or upon information duly filed by

a district attorney, or Attorney General of the State, and in any

trial, in any court whatever, the party accused shall be allowed

to appear and defend in person, and with counsel, as in civil

actions. No person shall be subject to be twice put in jeopardy

for the same offense; nor shall he be compelled, in any

criminal case, to be a witness against himself.

2. No person shall be deprived of life, liberty, or property,

without due process of law.

**Gideon v. Wainwright, 372 U.S. 335 (1963)**

"The right of an indigent defendant in a criminal trial to have

the assistance of counsel is a fundamental right essential to a

fair trial, and petitioner's trial and conviction without the

assistance of counsel violated the Fourteenth Amendment."

**RULE 11 PROCEEDINGS BEFORE JUSTICE OF THE PEACE OR MAGISTRATE JUDGE**

(b) Procedure for appointment of attorney for indigent defendant.

1. Any defendant charged with a public offense who is an indigent may, by oral statement to the district judge, justice of the peace, municipal judge or master, request the appointment of an attorney to represent the defendant.

2. The request must be accompanied by the defendant's affidavit, which must state:

    i. That the defendant is without means of employing an attorney; and

    ii. Facts with some particularity, definiteness and certainty concerning the defendant's financial disability.

3. The district judge, justice of the peace, municipal judge or master shall forthwith consider the application and shall make such further inquiry as he or she considers necessary. If the district judge, justice of the peace, municipal judge or master:

    i. Finds that the defendant is without means of employing an attorney; and

    ii. Otherwise determines that representation is required, the judge, justice or master shall designate the public defender of the county or the State Public Defender, as appropriate, to represent the defendant. If the appropriate public defender is unable to represent the defendant, or other good cause appears, another attorney must be appointed.

**NRS 178.397 Assignment of counsel.**

Every defendant accused of a misdemeanor for which jail time may be imposed, a gross misdemeanor or a felony and who is financially unable to obtain counsel is entitled to have counsel assigned to represent the defendant at every stage of the proceedings from the defendant's initial appearance before a magistrate or the court through appeal, unless the defendant waives such appointment.

## IV. PERSUMPTION OF INNOCENCE

**NRS 175.191 Presumption of innocence: Acquittal in case of reasonable doubt.**

A defendant in a criminal action is presumed to be innocent until the contrary is proved; and in case of a reasonable doubt whether the defendant's guilt is satisfactorily shown, the defendant is entitled to be acquitted.

## V. BURDEN OF PROOF

**NRS 175.211 Definition of reasonable doubt; no other definition to be given to juries.**

1. A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

2. No other definition of reasonable doubt may be given by the court to juries in criminal actions in this State.

## B. SUBSTANTIVE DUE PROCESS

### I. RIGHT TO HAVE AUTONOMY: AUTHORITY OVER ONESELF

"Locke also argued that individuals should be free to make choices about how to conduct their own lives as long as they do not interfere with the liberty of others." (John Locke is the believed origination for the ideas placed in the Declaration of Independence of life, liberty, (originally property), and pursuit of happiness by Thomas Jefferson.)

"Liberty means to exercise human rights in any manner a person chooses so long as it does not interfere with the exercise of the rights of others"— Ron Paul,

"The people cannot delegate to government the power to do anything which would be unlawful for them to do themselves."— John Locke, "A Treatise Concerning Civil Government"

"The only purpose for which power can be rightfully exercised over any member of a civilized community, against his will, is to prevent harm to others. His own good, either physical or moral, is not a sufficient warrant."— John Stuart Mill, "On Liberty", 1859

### II. LIBERTY IN SECURITY OF PERSONS

**Ingraham v. Wright 430 U.S. 651 (1977).**

The liberty preserved from deprivation without due process included the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.' . . . Among the historic liberties so protected was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security."

### III. RIGHT TO OWN PROPERTY

**Nevada Constitution**

> Article 1 Section. 1. **Inalienable rights.** <u>All men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness</u>[.]

### c. EQUAL PROTECTION UNDER THE LAW

**Nevada Constitution**

> Article 1 Sec. 24. **Equality of rights.** [Effective November 22, 2022, if the provisions of Senate Joint Resolution No. 8 (2019) are agreed to and passed by the 2021 Legislature and approved and ratified by the voters at the 2022 General Election.]   <u>Equality of rights under the law shall not be denied or abridged by this State or any of its political subdivisions on account of</u> race, color, creed, sex, sexual orientation, gender identity or expression, age, <u>disability</u>, ancestry or national origin.

**Shelley v. Kraemer 334 U.S. 1 (1948)** opinion by Mr. Chief Justice Vinson

> "the restrictive agreements standing alone cannot be regarded as violative of any rights guaranteed to petitioners by the Fourteenth Amendment," <u>the courts' enforcement of the restrictions "denied petitioners the equal protection of the laws."</u> Shelley then stands for the proposition that while purely individual discrimination does not constitute state action, <u>state court enforcement of that discrimination is violative of the equal protection clause.</u>" (page ? lines ? of "Statement of Facts" dated August 17th, 2017)

### E.   OTHER SUPPORTIVE PRECEDENTS RELEVANT TO PUBLIC ACCOMMODATION LAW

**1.** *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas, 257 F.3d 937 (9th Cir. 2001)*

"Property that is <u>dedicated to public use is no longer truly private.</u> Although the owner of the property retains title, <u>by dedicating the property to public use, the owner has given over to the State or to the public</u>

generally "one of the most essential sticks in the bundle of rights that are commonly characterized as property," the right to exclude others. *Dolan v. City of Tigard, 512 U.S. 374, 393 (1994)* (quoting *Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979)); see 39 Am. Jur. 2d, Highways, § 183 (1999)* (public dedication creates an easement in the public "with fee title to the property remaining in abutting property owners"). The private owner can no longer claim the authority to bar people from using the property because he or she disagrees with the content of their speech. See *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc., 473 U.S. 788, 801 (1985)* (assuming that public forums may include "private property dedicated to public use"); see also *Marsh, 326 U.S. at 506* ("The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.") (page 5 lines 5 – 27 of "Statement of Facts" dated August 17th, 2017)

**2. *State v. Schmid, 84 N.J. 535, 562 (1980)***

"The more private property is devoted to public use, the more it must accommodate the rights which inhere in individual members of the general public who use that property." (page 3 lines 11-13 of "Statement of Facts" dated August 17th, 2017)

**3. *Uston v. Resorts International Hotel, Inc. 89 N.J. 163 (1982) 445 A.2d 370***

"Schmid recognizes implicitly that when property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably. On the contrary, they have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises. That duty applies not only to common carriers, *Messenger v. Pennsylvania Railroad Co., 37 N.J.L. 531 (E. & A. 1874)*, innkeepers, see *Garifine*, supra, owners of gasoline service stations, *Streeter v. Brogan, 113 N.J. Super. 486 (Ch.Div. 1971)*, or to private hospitals, *Doe v. Bridgeton Hospital Ass'n, Inc., 71 N.J. 478 (1976), cert. den., 433 U.S. 914, 97 S. Ct. 2987, 53 L. Ed. 2d 1100 (1977)*, but to all property owners who open their premises to the public. Property owners have no legitimate interest in unreasonably excluding particular members of the public when they open their premises for public use. (page 4 lines 2-25 of "Statement of Facts" dated August 17th, 2017)

**4. *Bell v. Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964)***

(As Justice Goldberg noted in his concurrence)

SCHOOL IS IN SESSION: FINAL COMPLAINT - 106

"Underlying the congressional discussions and at the heart of the Fourteenth Amendment's guarantee of equal protection, was the assumption that the State by statute or by 'the good old common law' was obligated to guarantee all citizens access to places of public accommodation. (page 12 lines 24-28 and page 13 lines 1-3 of "Statement of Facts" dated August 17th, 2017)

**5. *Slade v. Caesars Entertainment Corporation* 132 Nev. Adv. No 36 Docket No. 62720 (May 12th, 2016)**

(In Dissent by Judge Hardesty)

"The majority's opinion today, if not narrowly read, could be interpreted to say that a casino can exclude any person for any reason or no reason at all, which is contrary to Nevada law." (page 8 lines 6-8 of "Statement of Facts" dated August 17th, 2017)

"This case is not the first time that this court or the United States Supreme Court has held that a right to exclude for any reason is not without its limits. In the arena of jury selection, for example, although an attorney may exercise any number of peremptory challenges to excuse a juror without cause, it is a long-standing principle that an attorney may not do so on the basis of race or gender. *Baston v. Kentucky, 476 U.S. 79, 89(1986); J.E.B. v. Alabama, 511 U.S. 127, 130-31 (1994).* More recently, the United States Court of Appeals for the Ninth Circuit extended this principle to exclusions on the basis of sexual orientation. *SmithKline Beecham Corp. v. Abbott Labs., 740 F.3d 471, 486 (9th Cir. 2014).* In the aftermath of these cases, if a party alleges a violation, then that party is not required to prove it; rather, the burden shifts to the other party to proffer a nondiscriminatory reason for the dismissal." (page 8 lines 9-19 "Statement of Facts" dated August 17th, 2017)

**6. *Orloff v. Los Angeles Turf Club (1951) 36 Cal. 2d 734 [227 P.2d 449]***

"Under our institutions the freedom to pursue the declared right [to public accommodations] on an equal basis is just as precious as many other freedoms and rights. The exercise of the power of its denial, being a restraint on a personal right, is circumscribed by the same constitutional safeguards of equal protection and due process as are restraints under penal laws." (*36 Cal.2d at p. 739.*) Hence, the court concluded that a racecourse constituted "a place of public entertainment," which is "so far affected with a public interest that the state might, in the interest of good order and fair dealing, require the proprietor to recognize its own tickets of admission." (*36 Cal.2d at p. 739.*) (cited from *In re COX [Crim. No. 13648. In Bank. Oct 1, 1970.] [3 Cal. 3d 209]*)

"In holding that the <u>Civil Rights Act forbids a business establishment generally open to the public from</u>

<u>arbitrarily excluding a prospective customer, we do not imply that the establishment may never insist that a</u>

<u>patron leave the premises. fn. Clearly, an entrepreneur need not tolerate customers who damage property,</u>

<u>injure others, or otherwise disrupt his business. A business establishment may, of course, promulgate</u>

<u>reasonable deportment regulations that are rationally related to the services performed and the facilities</u>

<u>provided.</u>"(cited from *In re COX [Crim. No. 13648. In Bank. Oct 1, 1970.] [3 Cal. 3d 209]*)

**7. *Stoumen v. Reilly* (1951) 37 Cal. 2d 713 [234 P.2d 969]**

"<u>Members of the public of lawful age have a right to patronize a public restaurant and bar so long as they are</u>

<u>acting properly and are not committing illegal and immoral acts; the proprietor has no right to exclude or eject a</u>

<u>person 'except for good cause,' and if he does</u> [3 Cal. 3d 214] <u>so without good cause he is liable in damages.</u>

(See Civ. Code, §§ 51, 52.)" fn. 6 (37 Cal.2d at p. 716; see Tarbox v. Board of Supervisors (1958) 163 Cal.

App. 2d 373, 378 [329 P.2d 553].) Thus, in Stoumen and Orloff this court clearly established that the Civil

Rights Act prohibited all arbitrary discrimination in public accommodations." (cited from *In re COX [Crim.*

*No. 13648. In Bank. Oct 1, 1970.] [3 Cal. 3d 209]*)

**F.    <u>VIOLATIONS TO NEVADA LAW</u>**

**1. NRS  199.145 (1)(2)(Ê) Statement made in declaration under penalty of perjury. A person who, in a**

**declaration made under penalty of perjury:**

1. <u>Makes a willful and false statement in a matter material to the issue or point in question</u>; or

2. <u>Willfully makes an unqualified statement of that which the person does not know to be true</u>,

Ê <u>who suborns another to make in such a declaration a statement of the kind described in subsection 1 or 2, is guilty</u>

<u>of perjury or subornation of perjury, as the case may be, which is a category D felony and shall be punished as</u>

<u>provided in NRS 193.130.</u>

**NRS 193.130(1)(2d) Categories and punishment of felonies.** [Effective through June 30, 2020.]

1. Except when a person is convicted of a category A felony, and except as otherwise

provided by specific statute, a person convicted of a felony shall be sentenced to a

minimum term and a maximum term of imprisonment which must be within the limits

prescribed by the applicable statute, unless the statute in force at the time of commission

of the felony prescribed a different penalty. The minimum term of imprisonment that may be imposed must not exceed 40 percent of the maximum term imposed.

    2.   Except as otherwise provided by specific statute, for each felony committed on or after July 1, 1995:

        (d)  A category D felony is a felony for which a court shall sentence a convicted person to imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 4 years. In addition to any other penalty, the court may impose a fine of not more than $5,000, unless a greater fine is authorized or required by statute.

**2. NRS 199.310(2) Malicious Prosecution**

"A person who maliciously and without probable cause therefor, causes or attempts to cause another person to be arrested or proceeded against for any crime of which that person is innocent:

    1.   If the crime is a felony, is guilty of a category D felony and shall be punished as provided in NRS 193.130; and

    2.   If the crime is a gross misdemeanor or misdemeanor, is guilty of a misdemeanor."

**3. NRS 199.480(3)(a)(b)(c)(e)(f)(g) Conspiracy**

    3.   Whenever two or more persons conspire:

        (a)  To commit any crime other than those set forth in subsections 1 and 2, and no punishment is otherwise prescribed by law;

        (b)  Falsely and maliciously to procure another to be arrested or proceeded against for a crime;

        (c)  Falsely to institute or maintain any action or proceeding;

        (d)  To cheat or defraud another out of any property by unlawful or fraudulent means;

        (e)  To prevent another from exercising any lawful trade or calling, or from doing any other lawful act, by force, threats or intimidation, or by interfering or threatening to interfere with any tools, implements or property belonging to or used by another, or with the use or employment thereof;

        (f)  To commit any act injurious to the public health, public morals, trade or commerce, or for the perversion or corruption of public justice or the due administration of the law; or

(g)  To accomplish any criminal or unlawful purpose, or to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means,

Ê each person is guilty of a gross misdemeanor.

**4. NRS  200.460(1)  False Imprisonment Definition;**

1. False imprisonment is an unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority.

2. A person convicted of false imprisonment shall pay all damages sustained by the person so imprisoned, and, except as otherwise provided in this section, is guilty of a gross misdemeanor.

**a. Garton v. City of Reno 720 P.2d 1227 (1986)**

To establish false imprisonment of which false arrest is an integral part, it is ... necessary to prove that the [plaintiff was] restrained of his liberty under the probable imminence of force without any legal cause or justification.' *Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494 (1970)." Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668 (1981)*

**b. Alvarado v. City of Dodge City, 238 Kan. 48, 708 P.2d 174 (1985),**

"the court held that a merchant's liability for false arrest should depend on the minimum legal standards established by statute rather than on the merchant's own standards." Id. 708 P.2d at 185.

**5. NRS 200.471 Assault**

"Assault" means:

(1) Unlawfully attempting to use physical force against another person; or

(2) Intentionally placing another person in reasonable apprehension of immediate bodily harm.

**6. NRS  200.510  Definition; penalties; truth may be given in evidence; jury to determine law and fact.** (it is the Plaintiff's understanding that this statute also pertains to defamation/slander)

1. A libel is a malicious defamation, expressed by printing, writing, signs, pictures or the like, tending to blacken the memory of the dead, or to impeach the honesty, integrity, virtue, or reputation, or to publish the natural defects of a living person or persons, or community of persons, or association of persons, and thereby to expose them to public hatred, contempt or ridicule.

2. Every person, whether the writer or publisher, convicted of the offense is guilty of a gross misdemeanor.

3. In all prosecutions for libel the truth may be given in evidence to the jury, and, if it shall appear to the jury that the matter charged as libelous is true and was published for good motive and for justifiable ends, the party shall be acquitted, and the jury shall have the right to determine the law and the fact

### a. K-Mart Corporation v. Washington 866 P.2d 274 (1993)

"A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt." *Las Vegas Sun v. Franklin, 74 Nev. 282, 287, 329 P.2d 867, 869 (1958);* Certain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. The four types of slander historically designated as defamatory per se are false statements made involving: (1) the imputation of a crime; (2) the imputation of having a loathsome disease; (3) imputing the person's lack of fitness for trade, business, or profession; and (4) imputing serious sexual misconduct. See *Carey v. Piphus, 435 U.S. 247, 262 n. 18, 98 S. Ct. 1042, 1052 n. 18, 55 L. Ed. 2d 252 (1978); Branda v. Sanford, 97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981)*. No proof of any actual harm to reputation or any other damage is required for the recovery of damages for these four kinds of slander. *W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 112, at 788 (5th ed. 1984).* "Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount." Id.

Certain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. The four types of slander historically designated as defamatory per se are false statements made involving: (1) the imputation of a crime; (2) the imputation of having a loathsome disease; (3) imputing the person's lack of fitness for trade, business, or profession; and (4) imputing serious sexual misconduct. *See Carey v. Piphus, 435 U.S. 247, 262 n. 18, 98 S. Ct. 1042, 1052 n. 18, 55 L. Ed. 2d 252 (1978); Branda v. Sanford,*

*97 Nev. 643, 646, 637 P.2d 1223, 1225 (1981).* No proof of any actual harm to reputation or any other damage is required for the recovery of damages for these four kinds of slander. *W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 112, at 788 (5th ed. 1984).* "Otherwise stated, proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount."

7. **NRS 207.230 Acting without lawful authority.**

"Every person who shall, in any case not otherwise specially provided for, do any act for the doing of which a license or other authority is required by law, without having such license or other authority as required by law, shall be guilty of a misdemeanor."

G. **PRECEDENT ON ACTING UNREASONABLY UNDER THE CIRCUMSTANCES**

1. **Altman v. Knox Lumber Co., 381 N.W.2d 858 (Minn.Ct.App.1986)**

"store owner not entitled to statutory immunity where store employee acted unreasonably in detaining suspected shoplifter."

2. **Gortarez v. Smitty's Super Valu, Inc., 140 Ariz. 97, 680 P.2d 807 (1984)**

"jury question as to whether detention was reasonable where plaintiffs were physically subdued yet held without questioning"

3. **J.C. Penney v. Cox, 246 Miss. 1, 148 So. 2d 679 (1963)**

"even assuming detention was carried out with probable cause, qualified privilege did not apply as detention was unreasonable where store manager grabbed customer and demanded payment for item in front of many customers and salespeople"

4. **Lukas v. J.C. Penney Co., 233 Or. 345, 378 P.2d 717 (1963)**

"detention must be carried out in a reasonable manner for statute to apply."

H. **STATE ACTOR**

1. **Green v. Howser 942 F.3d 772 (7th Cir. 2019)**

Quoting Adickes v. S.H. Kress & Co. , 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) "holding that a private person who conspires with government actors to deprive a plaintiff of her constitutional rights acts "under color of law" for purposes of § 1983; Spiegel v. McClintic , 916 F.3d 611, 616 (7th Cir. 2019)

("[A] private citizen can act under color of law if there is 'evidence of a concerted effort between a state

actor and that individual.'"

**2. Title III of ADA 36.201(a) Appendix C to Part 36 Subsection B**

Section 302(a) of the ADA states that the prohibition against discrimination applies to "any person who owns,

leases (or leases to), or operates a place of public accommodation," and this language is reflected in Sec.

36.201(a). The coverage is quite extensive and would include sublessees, management companies, and any

other entity that own, leases, leases to, or operates a place of public accommodation, even if the operation is

only for a short time.

**3. Wabash Pub. Co. v. Arlington Int'l Racecourse, Inc., 1992 U.S. Dist. LEXIS 7073 (N.D. Ill. May 26, 1992)**

"Under the direct nexus test, the inquiry must be whether there is a sufficiently close nexus between the state

and the challenged action the regulated entity so that the action of the latter may be fairly treated as that of

the state itself. Nexus test is also known as symbiotic-relationship test."

**4. Romanski v. Detroit Entertainment, LLC, 265 F. Supp. 2d 835 (E.D. Mich. 2003)**

"As this statute (1983) has been interpreted, Plaintiff must demonstrate that Defendants deprived her of a

right secured by either the Constitution or a statute while Defendants were "acting 'under color of state law.'"

Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir.2003) (en banc) (quoting Wolotsky v. Huhn 960 F.2d

1331, 1335 (6th Cir. 1992)). Under § 1983, a private party's actions may constitute state action; those actions,

however, must be "'fairly attributable to the state.'" See id. (quoting Lugar v. Edmondson Oil Co., 457 U.S.

922, 947, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). State action may be found if a private person exercised

powers that are traditionally reserved to the State. See Jackson v. Metro. Edison Co., 419 U.S. 345, 353, 95

S. Ct. 449, 42 L. Ed. 2d 477 (1974); see also Chapman, 319 F.3d at 833. This is known as the public function

test. See Chapman, 319 F.3d at 833. The public function test is narrowly interpreted. See id. Examples of

functions that are typically reserved to the State include exercising eminent domain and holding public

elections."

"Other powers, however, such as the power to arrest others for violations of State statues or local

ordinances, are powers that are vested in the State alone, and cannot be exercised by a private individual

unless that individual is vested with such authority by the State. See Payton 184 F.3d at 630; see also

Thompson v. McCoy, 425 F. Supp. 407, 409-10 (D.S.C.1976). Thus, a private individual who is vested

with the powers of a police officer which are powers that are only vested in the State, and those private individuals to whom the State has given such powers is a state actor acting under color of state law for purposes of § 1983."

**5. Shelley v. Kraemer 334 U.S. 1 (1948)** opinion by Mr. Chief Justice Vinson

"the restrictive agreements standing alone cannot be regarded as violative of any rights guaranteed to petitioners by the Fourteenth Amendment," the courts' enforcement of the restrictions "denied petitioners the equal protection of the laws." Shelley then stands for the proposition that while purely individual discrimination does not constitute state action, state court enforcement of that discrimination is violative of the equal protection clause."

**6. State Action U.S. Constitution Annotated**

https://www.law.cornell.edu/constitution-conan/amendment-14/section-1/equal-protection-of-the-laws

"The fact that the 'state action' category is not limited to situations in which state law affirmatively authorizes discriminatory action was made clearer in *Yick Wo v. Hopkins,* in which the Court found unconstitutional state action in the discriminatory administration of an ordinance that was fair and non-discriminatory on its face. Not even the fact that the action of the state agents are illegal under state law makes the action unattributable to the state for purposes of the 14th Amendment. 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.' When the denial of equal protection is not commanded by law or by administrative regulation but is nonetheless accomplished through police enforcement of 'custom' or through hortatory admonitions by public officials to private parties to act in a discriminatory manner, the action is state action. In addition, when a state clothes a private party with official authority, that private party may not engage in conduct forbidden the state.

**Yick Wo v. Hopkins (1886)**

"As the first case where the United States Supreme Court ruled that a law that is race-neutral on its face, but is administered in a prejudicial manner, is an infringement of the Equal Protection Clause in the Fourteenth Amendment to the U.S. Constitution.

"The vital requirement is State responsibility," Justice Frankfurter once wrote, "that somewhere, somehow, to some extent, there be an infusion of conduct by officials, panoplied with State power, into any scheme" to deny protected rights.

## I.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**1. Olivero v. Lowe 995 P.2d 1023 (2000)**

"To establish a cause of action for intentional infliction of emotional distress, Barmettler must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *1026 Star v. Rabello, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981)

## J.   REVISED NEVADA CODE OF JUDICIAL CONDUCT PART VI.

**1. CANON 1**

A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety.

**Rule 1.1. Compliance With the Law**. A judge shall comply with the law, including the Code of Judicial Conduct.

**Rule 1.2. Promoting Confidence in the Judiciary.** A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety.

**COMMENT**

[1] Public confidence in the judiciary is eroded by improper conduct and conduct that creates the appearance of impropriety. This principle applies to both the professional and personal conduct of a judge.

[3] Conduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge undermines public confidence in the judiciary. Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 115

[4]  Judges should participate in activities that promote ethical conduct among judges and lawyers, support professionalism within the judiciary and the legal profession, and promote access to justice for all.

[5]  Actual improprieties include violations of law, court rules, or provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge. Ordinarily, judicial discipline will not be premised upon appearance of impropriety alone, but must also involve the violation of another portion of the Code as well.

**2. CANON 2**

**Rule 2.2.  Impartiality and Fairness.**  A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.

**COMMENT**

[1]  To ensure impartiality and fairness to all parties, a judge must be objective and open-minded.

[2]  Although each judge comes to the bench with a unique background and personal philosophy, a judge must interpret and apply the law without regard to whether the judge approves or disapproves of the law in question.

[3]  When applying and interpreting the law, a judge sometimes may make good-faith errors of fact or law. Errors of this kind do not violate this Rule.

[4]  It is not a violation of this Rule for a judge to make reasonable accommodations to ensure self-represented litigants the opportunity to have their matters fairly heard.

**Rule  2.3. Bias, Prejudice, and Harassment.**

(a)  A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(b) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, <u>disability</u>, age, sexual orientation, marital status, <u>socioeconomic status</u>, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so.

(c)  <u>A judge shall require lawyers in proceedings before the court to refrain from manifesting bias</u> <u>or prejudice, or engaging in harassment, based upon attributes including, but not limited to,</u> race, sex, gender, religion, national origin, ethnicity, <u>disability</u>, age, sexual orientation, marital status, <u>socioeconomic status</u>, or political affiliation, against parties, witnesses, lawyers, or others.

(d) The restrictions of paragraphs (B) and (C) do not preclude judges or lawyers from making legitimate reference to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

**COMMENT**

[1] <u>A judge who manifests bias or prejudice in a proceeding impairs the fairness</u> <u>of the proceeding and brings the judiciary into disrepute.</u>

[2] <u>Examples of manifestations of bias or prejudice include but are not limited to</u> epithets; slurs; demeaning nicknames; <u>negative stereotyping</u>; attempted humor based upon stereotypes; threatening, intimidating, or hostile acts; suggestions of connections between race, ethnicity, or nationality and crime; and <u>irrelevant</u> <u>references to personal characteristics</u>. Even facial expressions and body language can convey to parties and lawyers in the proceeding, jurors, the media, and others an appearance of bias or prejudice. A judge must avoid conduct that may reasonably be perceived as prejudiced or biased.

[3] <u>Harassment, as referred to in paragraphs (B) and (C), is verbal or physical</u> <u>conduct that denigrates or shows hostility or aversion toward a person on bases</u> <u>such as </u>race, sex, gender, religion, national origin, ethnicity, <u>disability</u>, age, sexual orientation, marital status, <u>socioeconomic status</u>, or political affiliation.

**Rule 2.4.  External Influences on Judicial Conduct.**

(c) A judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the judge.

**COMMENT**

[1] An independent judiciary requires that judges decide cases according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public, the media, government officials, or the judge's friends or family. Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences.

**Rule 2.5. Competence, Diligence, and Cooperation.**

(a) A judge shall perform judicial and administrative duties competently and diligently.

**COMMENT**

[1] Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office.

[4] In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay. A judge should monitor and supervise cases in ways that reduce or eliminate dilatory practices, avoidable delays, and unnecessary costs.

**Rule 2.6. Ensuring the Right to Be Heard.**

(a) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.

**COMMENT**

[1] The right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected only if procedures protecting the right to be heard are observed.

**K.  PUNITIVE DAMAGES**

SCHOOL IS IN SESSION: FINAL COMPLAINT - 118

**1. NRS 42.005 Exemplary and punitive damages: In general; limitations on amount of award; determination in subsequent proceeding.**

1. Except as otherwise provided in NRS 42.007, in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the compensatory damages, may recover damages for the sake of example and by way of punishing the defendant. Except as otherwise provided in this section or by specific statute, an award of exemplary or punitive damages made pursuant to this section may not exceed:

2. The limitations on the amount of an award of exemplary or punitive damages prescribed in subsection 1 do not apply to an action brought against:

(e) A person for defamation.

**L.  OTHER RELEVANT CASE LAW**

**1. Musser v. Utah, 333 U.S. 95, 97 (1948)**

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warnings. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. *Graynard v. City of Rockford, 408 U.S. 104, 108-09 (1972); Village of Hoffman Estates v. The Flipside, 455 U.S. 489, 498 (1982)*

**2. Horton v. City of Santa Maria, 915 F3.d 592, 602-03 (9th Cir 2019)**

"[M]unicipalities may be liable under 1983 for constitutional injuries to (1) an official party; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker"

**PART 4: PLAINTIFFS ARGUMENTS**

**1.  MAIN POINTS BEING ARGUED**

**A.  THE PLAINTIFF DID NOT VIOLATE RMC 8.10.010**

SCHOOL IS IN SESSION: FINAL COMPLAINT - 119

## I.    HOW TO INTERPRET RMC 8.10.010

For the Plaintiff to be eligible for relief the first step is to show that a violation to RMC 8.10.010 has not occurred. If we follow the Nevada standard expressed in *Slade*, which quoted *Harris Assocs. V. Clark Cty. Sch. Dist.*, pertaining to how the courts will interpret a statute, in that:

> "A statute must be construed as to give meaning to all of [its] parts and language, and the court will read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation. Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes."

**RMC 8.10.010**

> (a)      Every person who goes upon the land or into any building of another with intent to vex or annoy the owner or occupant thereof, or to commit any unlawful act, or willfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass, is guilty of a misdemeanor. If the premises were at the time open to the public, the warning must have been given within the previous six months. The meaning of this subsection is not limited by subsections (b), (c), (d) and (e) of this section.

The Plaintiff is claiming that the very clear stipulation pertaining to places of public accommodation as per RMC 8.10.010 (a), that if the premises were at the time open to the public, the warning must have been given within the previous six months, was ignored to create the same rights afforded a private residence to which the statute also applies, whereas places of public accommodation lose their right to exclude "on demand," because they have invited the general public through a general invitation in the pursuit of financial gain, which is revocable only for good cause.

Whereas, in order for a violation to RMC 8.10.010 to have occurred, in a place of public accommodation by the standards set in RMC 8.10.010, an individual must have been prior declared trespassed for some other violation, otherwise a place of public accommodation is not permitted to exclude unless good reason to exclude exists through a violation to law established by legislators. Meaning that unless a patron has done something unreasonable to permit exclusion or on a prior occasion has done something which warranted exclusion and as a result of that incident was trespassed and has returned during the active timeframes of the trespass order, that only

then does a place of public accommodation have reason to demand exclusion and use state actors in law enforcement to remove a patron through seizure and the courts hold individuals accountable for criminal conduct. Why does this stipulation exist? This factor takes into account that unlike other private properties, like a person's home, which the statute also applies to ("**any land or in any building**"), businesses open to the public do not have all the same rights, which is hinged upon the right to no reason exclusion. Ample common law precedents have been provided supporting this notion. *Venetian Casino Resort L.L.C. v. Local Joint Executive Board of Las Vegas, 257 F.3d 937 (9th Cir. 2001); Dolan v. City of Tigard, 512 U.S. 374, 393 (1994) (quoting Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979)); Uston v. Resorts International Hotel, Inc. 89 N.J. 163 (1982) 445 A.2d 370; Scott v. Justice's Court of Tahoe Township 435 P.2d 747 (1968); Bell v. Maryland, 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964); Stoumen v. Reilly (1951) 37 Cal. 2d 713 [234 P.2d 969]; Orloff v. Los Angeles Turf Club (1951) 36 Cal. 2d 734 [227 P.2d 449];*

To clarify, the elements needed to prove a violation of RMC 8.10.010, from an officers or judge/jury perspective, should be as follows:

        1)   Is a person, on a piece of property that the owner or a representative of, has requested to leave? Or is the individual trying to vex or annoy the owner or occupant thereof or trying to commit any unlawful act. If yes, proceed to next question.

        2)   Is the property open to the general public?

(a) If no, an arrest is warranted for refusal to leave private property or the associated legal violation for the crime committed, to include disturbing the peace (vex, annoy, or commit an unlawful act).

(b) If yes move on to question 3.

        3)   If the property is open to the general public, has a prior warning not to trespass, been given to the individual in the last 6 months due to a prior incident of misconduct on the property?

(a) If yes, why? When? And how long ago? If it has been longer than 6 months since the last incident is there a court order ruling, extending time to the duration of an individual's requirement to not be on the property? If not, an arrest is not warranted, otherwise an arrest is permitted under RMC 8.10.010.

(b) If no, it is then the officers/judge/jury's directive to ascertain what common law right the place of public accommodation has for wanting exclusion in other words the vex, annoy, or commit a crime aspect. Should a

SCHOOL IS IN SESSION: FINAL COMPLAINT - 121

common law violation have occurred, the individual could be arrested/prosecuted under that statute. If no common law violation reason exists, then exclusion is not warranted under any circumstances. The place of public accommodation would then be informed that the issue is a civil matter and that government influence is not lawfully permitted as they have no authority to intervene to exclude by seizure without good reason to exclude.

        4)   Should the issues be recognized as a civil issue, businesses open to the public, would still be allowed to file a civil request but would need to go through the proper court procedures and pay the fees associated with such proceedings and would not be provided state sponsored council. Further there would still need to be showing of why they are entitled to the right to exclude to a civil court in order to obtain relief. This would require, a place of public accommodation, to notify the individual and provide a good legitimate reason over no reason in order to be granted a lawful stay away order. Which could be permanent.

Does this standard abrogate or abridge any common-law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason? No. It only prevents no reason exclusion as it provides that "any reason" is through already established laws provided by legislators. I.e. disturbing the peace, destruction of property, being over intoxicated, refusal to follow posted rules, etc., etc.

For example, the Nevada Gaming Control Board (NGCB) cannot add individuals to the "black book," the book of those excluded from being in Casinos by the NGCB, without a valid reason either. **NRS 463.151 (2013)** is the reasons why the NGCB can exclude **NRS 463.152** pertains to that they have to provide notice and **NRS 463.152** That a person has a right to contest the exclusion.

So if the NGCB cannot even exclude without reason, prior notice, and the right to appeal any decision, what would grant a casino the belief that they have the authority to arbitrarily exclude for no reason, when they are regulated by the NGCB? As no common law has been provided by legislators granting places of public accommodation the authority to exclude "because they said so" is why the Plaintiff claims violations occurred as despite no common law authority to exclude for no reason this has not stopped places of public accommodation, in particular to this case a couple casinos, from excluding people for no reason in the State of Nevada which is contrary to the law.

## II.    INCIDENTS 1 AND 2

**1st INCIDENT:** Whether or not the Plaintiff had a prior violation causing the Plaintiff to be trespassed, was not even considered upon arrest by Officer Barba, rather a trespass was enforced at the demand of Kathy Howard and enforced through a single statement provided by Donald Stewart, who are employees of the Cal-Neva, as "they said leave, so that means leave," as the Officer stated. At trial it was clearly covered by the only city witness for the incident Donald Stewart that the Plaintiff **HAD NO PRIOR VIOLATIONS RESULTING IN BEING TRESPASSED.**

**2nd INCIDENT:** The Plaintiff convinced Officers Bohr, Connolly, De Santis, and Tom, while being detained in a security room by casino employees Michael Blanco and Michael Herrick, that RMC 8.10.010 was not applicable because it had been acknowledged that the Plaintiff **HAD NEVER BEEN TRESPASSED FOR A COMMON LAW VIOLATION PRIOR TO THE EVENTS.** Despite this understanding, that the generally used statute of RMC 8.10.010 was not applicable, Officers Bohr, Connolly, De Santis, and Tom at the request of Silver Legacy employees, Michael Blanco and Michael Herrick, had the Plaintiff arrested under NRS 207.200 Unlawful trespass upon land; warning against trespassing under the custom that casinos have an unaffected ability to exclude.

The Plaintiff, at trial, was prosecuted and convicted under RMC 8.10.010 nonetheless. Again at trial it was clearly stated by the City's only 2 witnesses for the incident, Michael Blanco and Michael Herrick, that the Plaintiff **HAD NEVER BEEN TRESPASSED FROM THE PROPERTY PRIOR TO THE INCIDENT**. The clear recognition by officers that RMC 8.10.010 had not been violated, as they instead charged the Plaintiff under NRS 207.200, shows not only what an officer under similar circumstances should have known, that no reason to arrest existed as no violation had occurred, but should have also been clear to the prosecution that they had no merits for prosecuting the Plaintiff under RMC 8.10.010, as they could not meet the requirements of the municipal code.

For these reasons, that the Plaintiff had no prior incidents where the Plaintiff had been trespassed, the Plaintiff rightfully requests that the Courts vacate the Plaintiff's conviction under RMC 8.10.010 for incidents 1 and 2, as a violation to the statute under the clearly established provisions have not been satisfied. The Plaintiff notes that the latter claims made at trial of the Plaintiff behaving belligerent, aggressive, and loud would not be a relevant factor into a violation to RMC 8.10.010, as the only relevant question pertaining to violations in a place of public accommodation is if a patron has already been trespassed for a previous violation of conduct.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 123

1    Which means, in order for the claimed behaviors to have relevance, and a criminal charge prosecuted under

2    this merit, would have fallen under NRS 203.010 Breach of peace:

3         "Every person who shall maliciously and willfully <u>disturb the peace</u> or quiet of any neighborhood

4         or person or family by <u>loud or unusual noises, or by tumultuous and offensive conduct, threatening,</u>

5         <u>traducing, quarreling, challenging to fight, or fighting, shall be guilty of a misdemeanor."</u>

6    So why wasn't the Plaintiff charged with this at any point in the proceedings, arrest or trial, considering these

7    were the main reasoning the prosecution provided for claimed reasons for exclusion? Do the necessary elements

8    of a statue get to be swapped to prove the commission of a crime? Because this is exactly what the courts have

9    permitted with reckless regard.

10    The Plaintiff notes that these factors would merit only a retrial under NRS.203.010, but the Plaintiff will

11    show in Part 4 section 1(b), that the claimed behavior was perjured to create a reason for exclusion because the

12    prosecution realized that without good reason, no reason to exclude could be construed, which was recognized

13    through the first motion to dismiss filed by the Plaintiff prior to the second incident.

14         **III.    INCIDENT 3**

15    **3rd INCIDENT:** Is the only incident where a violation to RMC 8.10.010 could have been considered to have

16    been violated and prosecuted under except that the Plaintiff did not willfully remain on the property. The Plaintiff

17    entered the Eldorado unaware of the fact it is owned under the same ownership as the Silver Legacy and could

18    have easily been resolved through a simple request given the connections. Instead Eldorado employees took the

19    incident as a chance to commit an unjustified and unreasonable assault on the Plaintiff, when the Plaintiff tried to

20    avoid an unnecessary seizure by running off the property as Defendants were already circling the Plaintiff and

21    preparing to seize the Plaintiff's person. This is not willfully remaining on the property! No request was made to

22    leave, but rather Defendants took the Plaintiff being on property as sufficient justification to physically assault

23    and apprehend the Plaintiff as if he was a hostile and dangerous criminal.

24    The main issue to consider in incident 3 is whether the use of force to prevent the Plaintiff from leaving the

25    property was lawful. And it was not, as the Plaintiff had not committed a felony, and no common law right exists

26    giving casinos the authority, vested only in state actors, to apprehend, detain, and imprison patrons under a

27    warrantless arrest.

28

SCHOOL IS IN SESSION: FINAL COMPLAINT - 124

City witness Joseph Hanek even claimed in his testimony at trial that "the Plaintiff tried to run off the property without his ID." If that were the case it would not matter if the Plaintiff ran "to avoid criminal charges." Why did 7 employees of the Eldorado, counting Michael Blanco and Joseph Hanek, grab, then tackle, and then use pain compliance techniques to apprehend the Plaintiff? Since they wanted the Plaintiff to leave why forcibly prevent the Plaintiff from doing so?

Was it because the Plaintiff was trying to get off the property to avoid criminal charges as Joseph Hanek first discussed or because the Plaintiff tried to run at another employee in an aggressive manner as Joseph Hanek also latter claimed when the Plaintiff tried to catch Joseph Hanek in his lies? Which was silenced by the Judge and viewed as irrelevant, yet these are two distinctly opposite reactions.

Additionally, the Plaintiff questions if the trespass violations from Incident 2 were unlawful, does that make Incident 3 trespass lawful? The Plaintiff would like to use a hypothetical situation to look deeper into the lawfulness of the trespass.

If the Plaintiff causes a disturbance at the Taco Bell on Keystone who is owned by Yum Brands, does that make it so the Plaintiff is trespassed as well from the KFC on 5th street and all Taco Bells, KFCs, Pizza Huts, Long John Silvers, and any other Yum brand affiliated companies in the area, or even country? Basically, same question but slight difference, does the trespass pertain only to the properties owned under the same local ownership, for those that bought into the franchise for example like not all 7-Elevens are owned by the same person? How would a person differentiate if they are in a commonly owned property they have been trespassed from? Or should it only apply to the property from which an individual was actually trespassed from? Why would a blanket property trespass apply in this situation without having provided clear documentation to the Plaintiff informing him of such details? Further than a simple inference that Michael Herrick had said something, as was proclaimed at trial and taken as fact.

While the Plaintiff is claiming that 1) the Plaintiff did not willfully remain on the property as the Plaintiff was physically prevented from leaving the property by his own free will and 2) that a trespass from the Eldorado was not lawful for a variety of reasons, the main argument the Plaintiff is claiming involving incident 3 is the unreasonable use of force and acting without lawful authority.

**NRS 171.1235 Gaming licensee may detain person suspected of having committed felony in gaming establishment.**

3. Detention pursuant to this section shall be in the establishment, in a reasonable manner, for a reasonable length of time and solely for the purpose of notifying a peace officer. Such taking into custody and detention shall not render the licensee or the licensee's officers, employees or agents criminally or civilly liable for false arrest, false imprisonment, slander or unlawful detention <u>unless such taking into custody and detention are unreasonable under all the circumstances</u>.

Given that the Plaintiff was only considered trespassed, a recognized misdemeanor and that the Plaintiff was not a threat to himself or others, that no authority existed for Defendants to put their hands on the Plaintiff. Given that Defendants claimed the Plaintiff "tried to run off the property without his ID," which would render fleeing mute, yet the Plaintiff was assaulted shows that restraining the Plaintiff would not have been necessary. And given that the Plaintiff was not offered a chance to leave freely once notifying the Plaintiff of the properties connections, instead Defendants tried to force the Plaintiff into having committed an intentional criminal conduct contrary to the circumstance.

The Plaintiff for the above stated reasons respectfully requests that the conviction under RMC 8.10.010 also be vacated as the Plaintiff did not commit a violation.

## IV.    SUMMARY

The Plaintiff did not violate RMC 8.10.010 in Incidents 1 or 2, as the Plaintiff had never been previously trespassed, as required by the municipal code for places of public accommodation. Given that the Plaintiff was primarily accused at trial of violating RMC 8.10.010 for being belligerent, aggressive, and loud, charges under NRS 203.010 would have required such element to create a conviction, not RMC 8.10.010 as this element would be an irrelevant circumstance to substantiate a violation.

The Plaintiff did not violate RMC 8.10.010 in Incident 3 because the Plaintiff did not willfully remain on the property as the Plaintiff tried to run off property but Defendants used unreasonable force without lawful authority to physically restrain the Plaintiff from leaving and detained the Plaintiff in a security room off the casino floor only for the Plaintiff to be released with a citation by Sergeant Guider of the Reno Police Department.

### B.    THE PLAINTIFF DID NOT BEHAVE "BELLIGERENT, AGGRESSIVE, OR LOUD."
### I.    Incidents 1, 2, 3, and 4

The Plaintiff is claiming **1.** That prior to trial no descriptions of belligerent, aggressive or loud conduct was claimed as reason for exclusion and that the original claims did not pertain to belligerent, aggressive, or loud

conduct but rather that the Plaintiff simply refused to leave the property after being demanded to leave for no reason. **2.** That through a basic look of the events, the depictions of belligerent, aggressive and loud conduct are inconsistent and unlikely, as events would not have transpired the way they did. **3.** That "contesting ones constitutional rights are being violated" does not satisfy proof of belligerent, aggressive or loud conduct as this statement made are harmless. **4.** That clearly 4 witnesses over 3 separate incidents claiming the same broad statements were basic and repetitive due to the testimony being based on perjury. **5.** And that the Defendants using the Plaintiff's reaction to being discriminated against, targeted the Plaintiff's manic disability as a means to claim criminal conduct at trial, by using the Plaintiff's disability as a means to substantiate claims of hostile behavior.

The Plaintiff notes that as no other examples of belligerent, aggressive or loud behaviors were provided, other than the Plaintiff "contesting his constitutional rights were being violated," that if the claimed conduct can be proven to have been nonaggressive, innocent and harmless conduct protected under the 1st Amendment, that this alone should be enough evidence to show the Plaintiff did not behave belligerent, aggressive, and loud in a criminally conducive way.

## I.  INCIDENT 1:

The Plaintiff was originally confronted by Security Donald Stewart on the East entrance of the Cal- Neva. The security officer had been away on medical leave and recently returned to work. The reason Donald Stewart confronted the Plaintiff was he claimed that "bed rolls" were not permitted on property. This "bed roll" was a blanket that the Plaintiff's backpack was holding secure.

The Plaintiff notes that per city witness Donald Stewart's trial testimony at trial, he had not requested the Plaintiff had to leave until after the Plaintiff became belligerent, aggressive and loud. After being told to about the claimed policy/eligibility criteria mentioned over the blanket, the Plaintiff did not believe this to be a policy, as the Plaintiff had frequented the premises with the property on frequent occasion with no prior issues including never being made aware of this policy. This proclaimed policy, at the time and still, has not been posted as such, likely because it is not policy is the Plaintiff's contention. The Plaintiff felt that Donald Stewart was only trying to exert authority, power, and control over the Plaintiff where this was not warranted because the Plaintiff was homeless.

After being told about the claimed "policy" the Plaintiff continued to the Sports book. Yet, Donald Stewart had immediately followed Mr. Rose, and again confronted Mr. Rose waiting in line on the West side of the property

SCHOOL IS IN SESSION: FINAL COMPLAINT - 127

at the sports book about the "bed roll." If Donald Stewart was not requesting Mr. Rose to leave why did Donald Stewart continue to follow Mr. Rose? What was he logically expecting otherwise?

The Plaintiff ignored Donald Stewart's demands and proceeded to the counter to place his bet. When the Plaintiff arrived at the counter the bookie had even asked Donald Stewart if the Plaintiff could be permitted to make a bet. The Plaintiff was allowed. This was acknowledged at trial.

1) Why is Donald Stewart breathing down the Plaintiff's neck if he did not expect Mr. Rose to leave?

2) If, the Plaintiff was out of control and in possession of items that disrupted business, why was he permitted to place a wager?

3) Would an employee (of William Hill) unaffiliated with the Cal-Neva, be required or even want to take the wager of a person being unruly with recognized security around, if that patron was truly acting "Belligerent, aggressive and loud, unless they had to?"

The Plaintiff after, walked over to his normal viewing area, put his backpack down along a corner against the wall out of the way, so he could keep it safe, and sat down in a chair. Donald Stewart is STILL there yet STILL hasn't requested the Plaintiff to leave? As again by Donald Stewart's testimony it wasn't until the Plaintiff had become "Belligerent, aggressive and loud," that the request to leave came. Has the Plaintiff behaved in any way that sounds of this manner yet?

It is at this time another security guard arrives. So if the Plaintiff is not being expected to leave why the extra show of strength? Donald Stewart and this other security guard then stood over a sitting Mr. Rose with his back against the wall. Again, why and expecting what, if not other then the Plaintiff to leave? What's with the display of authority otherwise?

So without question Donald Stewart has lied as clearly the Plaintiff was being expected to leave and clearly not belligerent, aggressive or loud. It is at this time, that the Plaintiff took an authoritative stance exerting his rights, telling Donald Stewart that Mr. Stewart was violating Mr. Rose's rights by harassing him for no reason and expecting him to leave for no reason, that he was disturbing Mr. Rose's quiet enjoyment of the property, that he needed good reason to do this, that what Donald Stewart was proclaiming as policy was in fact not and discriminatory towards homeless and that Mr. Rose demanded to speak with Donald Stewart's manager.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 128

While the Plaintiff quietly waited for management the Plaintiff had a conversation with a patron, initiated by this other patron, who acknowledged and supported the Plaintiff taking a stance against the intrusion. But how can this be shown when in the end the only officer for the incident took 1 witness statement from Donald Stewart only? In a packed casino! And yet, the City and its witnesses, will be heard on multiple occasions proclaiming at trial that the Plaintiff disrupted patrons. Permitted hearsay?

When the manager Kathy Howard arrived, the Plaintiff was requested to provide his players card and ID which the Plaintiff provided without complaint. When checked for prior trespassing incidents **none existed**. Kathy Howard stated that the Plaintiff **would be permitted to stay** with the property in question for the day.

Again, so in so far, has the Plaintiff committed a criminal act justifying exclusion? Or a violation to any policy or done something that disrupts the normal operations of the premises? We know, definitively, that regardless of what Donald Stewart wanted, the Plaintiff at this current time of events, had a lawful right to the premises and his general invitation NOT revoked as determined by manager Kathy Howard. So how could the Plaintiff have done anything wrong to permit exclusion up to this point?

The Plaintiff was permitted to make a wager, after originally being told to leave because "bedrolls" were not permitted, and while being confronted by Donald Stewart. Plaintiff went to his normal viewing area, sat his backpack down and out of the way, and took an available seat, where the Plaintiff remained seated until the Plaintiff was placed under arrest by Officer Barba. The Plaintiff, after taking a seat, exerted his rights were being violated and demanded to speak with management. **The Plaintiff was able to convince management to allow the originally contested items and the Plaintiff to remain on property**. None of this would have happened if the Plaintiff had been behaving belligerent, aggressive, or loud.

The Plaintiff's general invitation was revoked immediately after, when the <u>Plaintiff was told to "shut his mouth or leave"</u> by Kathy Howard, when the Plaintiff brought up how further enforcement of claimed policy first used for exclusion would be arbitrary. The Plaintiff didn't shut his mouth as he then contested the way he had been talked to was wrong. The Plaintiff was declared trespassed and sat and waited quietly for the Officer at which point the Plaintiff was arrested without issues. Where were the claimed hostile behaviors? What was criminal about the Plaintiff's conduct?

The Plaintiff contends, that after Kathy Howard made what could be considered a modification to policy, shows sufficient proof that the claimed policy was not disrupting gaming operations. That in fact no reason for the

SCHOOL IS IN SESSION: FINAL COMPLAINT - 129

1  intrusion originally existed. And the Plaintiff contends that after permitting the property the Defendants had no

2  authority to make such an unreasonable demand as shut your mouth or leave which targeted the Plaintiff's

3  psychomotor agitation symptom connected to the Plaintiff's manic disability and hinged the Plaintiff's right to

4  inclusion on shutting down his disability. After concluding that the Plaintiff could stay the reasonable action should

5  have been to leave the Plaintiff alone not exert authority and control over the Plaintiff.

6  **II. INCIDENT 2**:

7  The Plaintiff was confronted around the sports book after returning from the bathroom. The Plaintiff had

8  been on property, for at least 45 minutes, with no issues. When the Plaintiff was requested to leave, <u>no reason was</u>

9  <u>given on that day</u>. The Plaintiff pulled out legal paperwork (to quote the Venetian case) to show that no legal authority

10  exists for no reason exclusion. The Plaintiff had to demand to speak with management to get a second opinion. At this

11  time the Plaintiff's volume was a 3 out of 5 as described by Michael Blanco at trial. Average. Unsupportive of loud.

12  The Plaintiff and Michael Blanco watched a hockey game! Unsupportive of belligerent or aggressive behavior and

13  again addressed by city's own witness at trial!

14  Michael Blanco also claimed in his testimony that he confronted the Plaintiff for being a "suspicious suspect

15  who looked lost." No further details were provided of what made the Plaintiff a suspect other than that the Plaintiff

16  possessed "excessive baggage." The Plaintiff is claiming that this is obviously crafted to not say homeless are

17  unwelcome but applying exactly that through stereotypes against the homeless. Michael Blanco claimed this is why

18  he asked the Plaintiff for identification which the Plaintiff provided and **No prior trespass came up.** Yet the Plaintiff

19  was still requested to leave for what good reason purpose?

20  Conflicting city witness testimony occurs as Michael Herrick, the manager, stated Mr. Rose was already

21  acting "belligerent, aggressive and loud," and disturbing other patrons, when he arrived. How could this be fact when

22  the Plaintiff was watching also stated by Michael Blanco to have been watching a hockey game as they waited for

23  the manager? The Plaintiff after walked with Michael and Michael as they attempted to coerce the Plaintiff to an exit.

24  They once again demand that Mr. Rose leave . Mr. Rose refused and was handcuffed, without resistance as the Plaintiff

25  gave himself up for arrest, while still wearing the latter proclaimed "excessive baggage," and was taken to a security

26  room directly near the exit that they had led Mr. Rose to.

27  While in the security Room Michael Herrick berated Mr. Rose in a condescending manner, attacking the

28  Plaintiff's homeless status, and antagonized the Plaintiff's lawful anger over the situation by trying to humiliate the

SCHOOL IS IN SESSION: FINAL COMPLAINT - 130

Plaintiff into being ashamed about his circumstances. An example of Michael Herrick's rhetoric was questioning the Plaintiff's "life choices" like why doesn't the Plaintiff get a job. Why doesn't the Plaintiff not be a bum. It is at this time that the Plaintiff's volume was testified to have been a 4 out of 5. In a location where the Plaintiff could have had caused no disturbance to other patrons and the Plaintiff had reasonable reason to be upset. The Plaintiff claims that this is why video of the incident was nit forthright provided as required by law.

Yet, when officers arrived, while under duress the Plaintiff was able to convince officers that RMC 8.10.010 was not applicable to the extent they charged him under NRS 207.200 Unlawful trespass upon land; warning against trespassing, because he was only refusing to leave the property for no reason with no other common law violation allegations. The Plaintiff contends that this is compelling evidence in what a reasonable officers under similar circumstances would consider as far as a violation to RMC 8.10.010 as the stipulation relevant to places open to the public had not been met. And that is that the municipal code would not have been applicable.

But when was the Plaintiff's conduct belligerent, aggressive, or loud? The Plaintiff was not confronted for being belligerent, aggressive or loud but because he was a suspicious suspect who looked lost with excessive baggage. There is confliction between city witnesses on when the Plaintiff behaved as such the Plaintiff both was watching a hockey game with Michael Blanco and already disturbing other patrons through the Plaintiff's belligerent, aggressive and loud behavior. But Michael Herrick admitted they gave the Plaintiff every opportunity to leave on his own accord. Including trying to walk the Plaintiff off property which the Plaintiff followed. These are not belligerent, aggressive or loud acts! So why portray the Plaintiff as having behaved as such knowing this did not coincide with the circumstances and thus makes the statements based on perjury.

So the question is what was belligerent and aggressive about the Plaintiff's behavior while handcuffed in a security room off the casino floor, required by law to have audio and video which was never provided (Nevada Gaming Control Board – Regulation 5.160(6) Surveillance systems and Nevada Gaming Control Board - Regulation 5 Standard 8 REQUIRED SURVEILLANCE COVERAGE: SECURITY OFFICES). Further is a volume level of 4 out of 5 under the circumstances unreasonable, or is detaining the Plaintiff without lawful authority, hassling the Plaintiff over his circumstances while trying to create a rise of emotion from the Plaintiff, and excluding the Plaintiff because he was homeless, more unreasonable?

### III. INCIDENT 3:

SCHOOL IS IN SESSION: FINAL COMPLAINT - 131

The Plaintiff went into the Eldorado unaware of the shared ownership with the Silver Legacy. The Plaintiff was confronted by Joseph Hanek and Michael Blanco. Joseph Hanek requested the Plaintiff for identification which the Plaintiff provided, while Michael Blanco went within the area to obtain documentation of Mr. Rose's incident at the Silver Legacy. Yet, Mr. Hanek claimed at trial that the Plaintiff refused and made issue with providing the ID, despite later claiming the Plaintiff tried to leave without the ID the Plaintiff had earlier contested giving over?

Why would the Plaintiff try to hide who he was when asked for his identification, having already been recognized by Michael Blanco, whom the Plaintiff was already aware knew who the Plaintiff was? The Plaintiff claims that a trespass check came back clear, and the Plaintiff was given his Identification back. But because of Michael Blanco, the Plaintiff, was claimed not free to leave because he knew the Plaintiff as he had prior involvement with the Plaintiff at the Silver Legacy where the Plaintiff had been arrested a week prior pertaining to Incident 2.

Several Eldorado employees began to circle around the Plaintiff as if they were going to become physically confrontational. The Plaintiff tried to run off the property. Eldorado employees physically restrained and assaulted the Plaintiff (twisting Plaintiff's ankle in pain compliance techniques), as he resisted the assault, on the casino floor for 10-15 minutes involving 7 Eldorado employees. The Plaintiff was eventually handcuffed and dragged/carried to a security room where the Plaintiff was eventually released with a citation by Sergeant Guider.

Yet once again City's witnesses testimony at trial presented like it was fact, as if they were just reiterating what testimony was given for one similar incident, not 3 separate incidents, as the Plaintiff was again declared to have behaved belligerently, aggressively, and loud! But yet again, where was anything the Plaintiff did criminally aggressive conduct?

And who's actions showed actual aggression? The Plaintiff who tried to run off the property? Or the 7 employees who without lawful authority or the Plaintiff being a legitimate threat to himself or others physically prevented the Plaintiff from leaving the property for a simple trespass, to justify tackling the Plaintiff to the ground on the casino floor, and then used pain compliance techniques to subdue the Plaintiff where Defendants detained the Plaintiff by dragging/carring the Plaintiff to a security room off the casino floor?

## IV. INCIDENT 4

Despite no claims of belligerent, aggressive or loud behavior in witnesses statements the Plaintiff was blindsided at trial by this claim to justify the charges. The Plaintiff was not only aware that he had not behaved in such a manner but the Plaintiff felt that these allegations only came about after the Plaintiff had filed a motion to dismiss

SCHOOL IS IN SESSION: FINAL COMPLAINT - 132

because no such behavior had occurred pertaining to Incident 1 as the prosecution fully understood what the Plaintiff

has been claiming all along. That without good reason to exclude places of public accommodation do not have the

right to exclude because they said so. Yet this was the circumstances.

The Plaintiff challenges that prior to the trial the prosecuting attorney's meeting with all 4 witnesses at 1 time,

is where she clearly coached witnesses to describe the Plaintiff as having behaved belligerent, aggressive and loud

knowing that good reason was needed. And it seems that reiterating the same blanket statement over and over again

makes something fact and satisfies the standard "beyond a reasonable doubt!"

But the biggest question that needs to be raised is why was a prosecuting attorney, who was not present for

any of the incidents being discussed at trial, telling witnesses what to say? Was Angie Gianoli's moral, ethical and

legal obligation to securing a conviction by any means necessary even at the cost of giving up integrity, or was Angie

Gianoli's duty to justice to hear the facts from her witnesses in each case separately, determine if the witnesses actually

had good cause, and prosecute based on facts not a fictitious rendition expressed to witnesses to say in order to defame

the character of the Plaintiff to secure a conviction based on the presumption of good cause?

## II.  SUMMARY

There were no other accounts of unlawful "belligerent, aggressive and loud" behaviors because the Plaintiff

conduct was not supportive of claims. Despite 3 separate incidents and 4 witnesses the best they could come up with

was the reiterated claim that the Plaintiff behaved belligerent, aggressive, and loud. Yet events were not consistent

with circumstances where actual belligerent, aggressive or loud conduct occurs.

In **Incident 1** the Plaintiff was able to **1.** place a bet during the confrontation. The Plaintiff eventually had to

demand to speak with Management due to Donald Stewart's expectation that the Plaintiff leave. **2.** It was

acknowledged by management that the Plaintiff could stay. Who gets permitted to stay while behaving "belligerent,

aggressive and loud?" And then the Plaintiff is immediately arbitrarily declared trespassed after the Plaintiff was told

to "shut his mouth!" Which the Plaintiff protested against the way he was being talked to. **3.** And how is quietly

waiting for officers "belligerent, aggressive and loud?" **4.** Why is the only claimed "belligerent, aggressive and loud,"

behavior for the incident, as claimed by Donald Stewart's testimony, that the Plaintiff "contested that his constitutional

rights were being violated?" Which is not aggressive conduct. Aggressive conduct is disruptive behavior that means

to endanger others. How does advising people that they are intruding on ones rights create an unlawful threat or harm

to others? Why would by doing this in a casino make it unpermitted free speech?

SCHOOL IS IN SESSION: FINAL COMPLAINT - 133

In **Incident 2, 1.** at trial the Plaintiff was described by Michael Blanco to have had an average 3 out of 5 volume level. Michael Blanco even discusses watching a hockey game that the Plaintiff was invested in that was in overtime. But Michael Herrick testified that Mr. Rose was already "belligerent, aggressive and loud, and disturbing patrons," when he walked up. **2.** Yet, the Plaintiff walked with Michael and Michael? Sounds cooperative? The Plaintiff refuses to leave for no reason, and is placed in handcuffs while behaving, "belligerent, aggressive and loud," for what specific conduct? **3.** The Plaintiff was not combative and was cuffed with all his possessions on despite no lawful authority! Who really was acting abrasive? **4.** The Plaintiff was then put in a security room of the floor where Michael Herrick abrasively tried to antagonize the Plaintiff talking down to the Plaintiff in a condescending manner. The term "We're just doing our job was even thrown out," to justify defendants' actions despite that they were not.

In **Incident 3, 1.** again the Plaintiff was described to have behaved "belligerent, aggressive and loud," yet the Plaintiff ran off the property. Again, not behavior that shows claimed behaviors.

Because the claimed "belligerent, aggressive and loud," behaviors were simply the Plaintiff refusing to comply to employees unlawful demands. By lying about the Plaintiffs behaviors, to secure a conviction not based on facts, the Defendants would be in Violation of **NRS 199.310** Malicious Prosecution and **NRS 200.510** False Statements and Defamation.

Contesting an unlawful intrusion of rights is not a crime! In fact, as already covered, the only declaration by city witnesses of claimed inappropriate behaviors was that the Plaintiff was "contesting they were violating the Plaintiff's constitutional rights!" So if the Plaintiff's criminal conduct of belligerent, aggressive, and loud behavior is hinging upon that contesting ones rights is unruly conduct it would seem clear that the Plaintiff had not in fact behaved in a manner consistent with claims.

Who actually displayed acts of aggression? In **Incident 1** the Plaintiff ignored the initial request to leave, made a bet, proceeded to his normal viewing area, and sat down where he remained seated until arrested. The Plaintiff requested management to deescalate the situation and was successful, in as far as the Plaintiff being claimed permitted to stay. But then the Plaintiff was told to "shut his mouth or leave." That sounds to be aggressive behavior!

In **Incident 2** the Plaintiff was demanded to leave for being a suspicious suspect who looked lost with excessive baggage. The Plaintiff again tried to deescalate the situation to remain on property by requesting to speak with management and watched a hockey game with Michael Blanco. Shortly after management arrived, they tried to walk the Plaintiff off the property which the Plaintiff complied until the exit unwittingly being coerced off the property

SCHOOL IS IN SESSION: FINAL COMPLAINT - 134

by trying to let the Plaintiff walk off it himself. Standard Procedure. When they reached the exit and the Plaintiff still refused to leave the Plaintiff was handcuffed. (Aggressive act 1) And then taken to a nearby security holding room of the casino floor where Michael Herrick berated the Plaintiff with rhetoric pertaining to the Plaintiff's homelessness in an attempt to antagonize the Plaintiff. (Aggressive act 2)

In **Incident 3** shortly after entering the property, the Plaintiff was confronted for having been trespassed from Silver Legacy. The incident took only a few moments before it became physical. The Plaintiff was asked ID he provided it, the Plaintiff came back clear but because Michael Blanco had prior experience with Mr. Rose, he was not permitted to leave. At this point several security and employees began circling the Plaintiff.

When the Plaintiff tried to run off the property the 7 Eldorado employees physically restrained the Plaintiff and used pain compliance techniques to restrain the Plaintiff and detained the Plaintiff in a locked security room alone. The fact is it was the Defendants who unreasonably escalated the confrontations and acted aggressively not the Plaintiff, by their own admissions.

## C. CONSTITUTIONAL VIOLATION CLAIMS NOT CONSIDERING DISABILITY
### I. RIGHTS VIOLATED NOT CONSIDERING DISABILITY

The Plaintiff is arguing that the first question is not if the Plaintiff was discriminated against related to a recognized protected interest group first but rather if the Plaintiff's constitutional rights were violated that are afforded others. The Plaintiff makes this claim because NRS 463.0129(1)(E) does not require, in order for a violation, that a person can only be discriminated against and unlawfully excluded because they are a recognized special interest group but rather To ensure that gaming is conducted honestly, competitively and free of criminal and corruptive elements, all gaming establishments in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature.

The Plaintiff contends that **1.** Legislators have not granted places of public accommodation the right to no reason arbitrary exclusion. **2.** Legislators have not granted the authority for casinos to arrest patrons under a misdemeanor allegation or to use force to make such arrest. 3. Legislators have clearly provided that criminalizing an individual over status and not conduct is cruel and unusual punishment. **4.** Legislators have provided protections against the wanton display of authority used to intrude upon an individual's liberties as no reason for exclusion results in unlawful seizure of the person. **5.** And that it is not equal protection under the law to punish a person

whose only crime was being homeless as legislation has not provided places of public accommodation this right and refusing to be excluded expecting to have done something actually wrong as provided by legislators is not a crime.

Under 5 U.S.C 706 (2)(a) (1988) Arbitrary is

"A clear error of judgement; an action not based upon the relevant factors and so is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law or if it was taken without observance of procedure required by law."

Demanding that the Plaintiff had to leave when the Plaintiff had not committed a violation to posted polices or procedures, whose conduct did not support exclusion, because "if you are told to do something do it" as Judge Dorothy Nash Holmes claimed at sentencing, was absolutely arbitrary. It did not take into relevance the obvious relevant factors pertaining to places open to the public at the time. It ignores standards set forth by the NGCB and other Nevada law like NRS 463.0129. It disregarded that the Plaintiff had to have done something as places of public accommodation do not have the right to no reason exclusion, *Venetian and Scott,* and criminalizing a person based on status and not conduct is cruel and unusual punishment, *Robinson*. But, the most important standard of all, is that people don't get to put their hands on people for no reason and take their freedoms away, *2nd Amendment*, !

In **Incident 1** the Plaintiff was originally demanded to leave over a harmless blanket attached to a backpack which was later permitted. Regardless the Plaintiff was told afterwards to shut his mouth or leave. This is arbitrary as this expectation was not based on policy but the ideological vicissitudes of the listener who could have at that point left the Plaintiff alone but instead exerted authority and inequality between the two having no reason to do so and the Plaintiff was arrested.

In **incident 2** Defendant Michael Blanco said he confronted the Plaintiff because he was "a suspicious suspect who looked lost." What was the Plaintiff suspected of? Having excessive baggage! What is excessive about two regular backpacks? If this does not say homeless are not welcome, what does? I still have yet to find any authority for a casino to exclude a person based off these reasons. Likely because none exists due to its clear discriminatory nature.

In **Incident 3** if the Plaintiff did not have possession of his ID, why did physical force need to be used to prevent the Plaintiff from leaving when that was what was wanted? Ultimately, he would need to get his ID back and handle the situation as they knew who he was, no way of getting out of that. Even if the Plaintiff tried to run off

SCHOOL IS IN SESSION: FINAL COMPLAINT - 136

the property does that grant lawful right for casinos to use force to prevent the Plaintiff from leaving? Absolutely not

as the whole desire was supposed to be getting the Plaintiff to leave not to initiate a physical confrontation.

## II.      SUMMARY

The Plaintiff contends that alleged violations of exclusion for no reason are not permitted by Legislators, that casinos do not have a right to arrest patrons on a no reason exclusion or use force to effectuate an arrest for no reason, that no reason exclusions result in unlawful seizure, that criminalizing the Plaintiff's status and not conduct is a violation to law, and that treating the Plaintiff under separate laws because he was homeless, need no justification or connection of the Plaintiff's disabilities in order for the Plaintiff's rights to have been violated. But if as the Plaintiff is alleging, that the Plaintiff's disabilities were used to justify exclusion and criminalization, this would be an enhanceable factor on top of the previously mentioned violations. And the Plaintiff should be eligible for relief under 42 U.S. Code § 1983 regardless of Plaintiff's disabilities pertaining to these violations relating to Incidents 1, 2 and 3.

## D.   CONNECTING CHRONIC HOMELESSNESS TO THE RECOGNIZED INTREST GROUP OF THOS WITH DISABILITIES.

### 1.      CONNECTING THE LAW

While the Plaintiff recognizes that homeless have not yet been classified as an enumerated specially protected class as defined under NRS 651.070, those who are disabled have though. So how can discrimination based on an individual's homelessness be connected to discrimination based over an individual's disabilities? The Plaintiff believes through Chronic homelessness, because in order to be defined as chronically homeless a person must first have a disability.

What is Chronic Homelessness? Chronic Homelessness has been defined as a single individual (or head of household) with a disabling condition who has either: Experienced homelessness for longer than a year, during which time the individual may have lived in a shelter, Safe Haven, or a place not meant for human habitation. In fact, 24 CFR § 578.3, which defines chronic homeless as per the McKinney-Vento Homeless Assistance Act:

**Chronically homeless means:**

(1) A "homeless individual with a disability," as defined in section 401(9) of the

McKinney-Vento Homeless Assistance Act (42 U.S.C. 11360(9)), who:

SCHOOL IS IN SESSION: FINAL COMPLAINT - 137

                    (i) Lives in a place not meant for human habitation, a safe haven, or in an emergency shelter; and

                    (ii) Has been homeless and living as described in paragraph (1)(i) of this definition continuously for at least 12 months or on at least 4 separate occasions in the last 3 years, as long as the combined occasions equal at least 12 months and each break in homelessness separating the occasions included at least 7 consecutive nights of not living as described in paragraph (1)(i). Stays in institutional care facilities for fewer than 90 days will not constitute as a break in homelessness, but rather such stays are included in the 12-month total, as long as the individual was living or residing in a place not meant for human habitation, a safe haven, or an emergency shelter immediately before entering the institutional care facility;

Homeless individuals are chronically homeless generally due to their disabilities. The current percentage of those who are homeless with a disability in this country is at 40%. 2 out of every 5 homeless thus has an underlying disability. As are the circumstances for the Plaintiff who suffers from Mania associated with bi-polar disorder and Post Traumatic Stress Disorder (PTSD), along with Insomnia and Attention Deficit Hyperactivity Disorder (ADHD), to name a few of the Plaintiff's disabilities and at the time of first incident had spent well over a year living in places not meant for human habitation such as a van 2 months prior to the first incident and mostly on the streets as the Plaintiff was on the dates of the incidents and prior to having a van to use .

It is the Plaintiff's disabilities which have contributed to the Plaintiff being homeless. To the extent he is and was at the time chronically homeless. The Plaintiff's disabilities can be linked to his homelessness for example as the Plaintiff cannot maintain a job when an employer thinks the Plaintiff is yelling at them, when expressing himself, caused by the manic disorder, which is why the Plaintiff is and has been on a Disability income for several years of his life. And $796, as the Plaintiff currently gets, is not enough to afford housing.

The Plaintiff would use his skills as a handicapper to supplement his income to maintain. And over several months used the Cal-Neva property with no issues. The Plaintiff's manic disorder, was used intentionally to misrepresent the Plaintiff as having behaved "belligerent, aggressive and loud," as the root of the reason for exclusion, as Mania gets its designation as a person seems like a "maniac." But just because a person has is going through a manic episode does not mean they do not have control over themselves, actions do.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 138

Definition of maniac: a person exhibiting extreme symptoms of wild behavior, especially when violent and dangerous.

Did the Plaintiff's Manic disorder automatically create a hostile, dangerous, and disruptive environment? If the Plaintiff did not know how to control himself then city witnesses would have been able to described other disruptive or inappropriate acts where the Plaintiff did more than just simply "contest that his constitutional rights were being violated," as the only example of the Plaintiff's "belligerent, aggressive and loud," behaviors. Being upset about being discriminated against is not a crime.

Thus, the question is, can homelessness be linked to the protected interest group of those with disabilities, and which the Plaintiff believes relevant to this situation is outlined in the ADA.

### §36.101  Purpose and broad coverage.

(b) Broad coverage. The primary purpose of the ADA Amendments Act is to make it <u>easier for people with disabilities to obtain protection under the ADA.</u> <u>Consistent with the ADA Amendments Act's purpose of reinstating a broad scope of</u> <u>protection under the ADA, the definition of "disability" in this part shall be construed</u> <u>broadly in favor of expansive coverage to the maximum extent permitted by the terms of</u> <u>the ADA. The primary object of attention in cases brought under the ADA should be</u> <u>whether entities covered under the ADA have complied with their obligations and</u> <u>whether discrimination has occurred, not whether the individual meets the definition of</u> <u>"disability." The question of whether an individual meets the definition of "disability"</u> <u>under this part should not demand extensive analysis.</u>

ADA Title 3 §36.101(b) discussed a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The Plaintiff argues that this covers those who are chronically homeless as they are defined through having a or several disabilities. The Plaintiff notes that this is a class of individuals with disabilities.

Further, as ADA Title 3 §36.101(b) discussed "The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of "disability." Which now leads to the question of if the incidents can be linked to discriminatory acts.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 139

Are the reasons used for intrusion in violation under the ADA Title 3 §36.301 Eligibility Criteria and §36.302 Modifications in policies, practices, or procedures, in that the reasons for intrusion were not in compliance with §36.208 Direct Threat, discriminatory?

**2.      SUMMARY**

That discrimination based on a person chronic homeless status and not conduct is discrimination under the recognized protected interest group of those with disabilities as they are a class of individuals with disabilities. That the Plaintiff's manic disability in particular was discriminated against through hinging the Plaintiff's right to inclusion on turning off the psychomotor agitation component of the Plaintiff's disability when no lawful authority for the expectation existed and through manipulating the Plaintiff's disabilities to present the Plaintiff as having behaved in a belligerent, aggressive, and loud manner as if the conduct was criminal in nature.

**E.      COERCION**

**I. INCIDENT 1**

The Plaintiff contends that the Defendants primarily coerced the Plaintiff from his right as a member of the general public to access services provided the general public without good reason as provided by legislators through threat of arrest for simple refusal to leave for no reason as the Plaintiff's status of being homeless was being targeted and not unlawful conduct. The Plaintiff notes that in **Incident 1** this can also be attributed to the Plaintiff's general invitation being hinged upon by attempting to silence the Plaintiff from speaking out that his rights were being violated. When the Plaintiff ignorantly asked how for example during questioning of Donald Stewart, to elaborate by giving examples and offhand he couldn't, the Plaintiff had to walk him through a few examples of belligerent, where blanket yeah he did that responses were given.

Again, as example the Plaintiff had asked Donald Stewart "Did the Defendant (Plaintiff) use vulgar language?" There was not descriptions of statements made by the Plaintiff but rather just a blanket yes, when in fact the Plaintiff was not using vulgar language as the Plaintiff was not trying desperately not to alienate himself from exclusion, seems to have been the Plaintiff's goal in that incident given the Plaintiff was able to convince management to let the Plaintiff stay. Seems highly unlikely if the Plaintiff was cursing and being aggressive and not why the Plaintiff was told to shut his mouth either.

**II. INCIDENT 2**

SCHOOL IS IN SESSION: FINAL COMPLAINT - 140

On top of using threat of arrest for refusal to leave the Defendants tried to manipulate the Plaintiff into walking off the property on his own merit by deceptively taking him to an exit. When the Plaintiff refused to leave under a no reason exclusion the Plaintiff was handcuffed and detained in a security room near the exit where the Defendants walked the Plaintiff to.

**III.  INCIDENT 4: 1.** Through demanding by expectation that the Plaintiff had to just do what he was told taking away the Plaintiff's autonomy.

**IV.  SUMMARY:** The Plaintiff was coerced from expressing his rights were being violated by using the Plaintiffs contentions to the intrusion as justification as to how the Plaintiff behaved belligerent aggressive and loud. The Defendants used threat of malicious and arbitrary use of law enforcement and legal proceedings to effectuate exclusion relating to the Plaintiff's homelessness and not conduct. That the autonomy of the Plaintiff was taken away by hinging the Plaintiff's right to inclusion on giving up the Plaintiff's right to make his own decisions and to behave in a reasonable manner as he had.

## 2. PLACES OF PUBLIC ACCOMMODATION NEED GOOD REASON TO EXCLUDE

### I. Basis of Argument

This is the essential part of the Plaintiff's claims. Do places of public accommodation have the right to exclude for no reason? The Plaintiff claims that there is extensive case law necessitating that in order for a place of public accommodation to demand exclusion there must be good reason. The primary referenced case with the longest standing in Nevada is the decision in *Scott*. With the *Venetian* case starting to provide the more current standard. *Slade* would be the most case to provide context.

The standard is clear under NRS 463.0129(1)(e), as it has no mandated correlation need to be made, to those recognized as a "special protected interest group," in order for protections to exist. in order for violations to have occurred, and redress for intrusion warranted, a simple arbitrary no reason exclusion would only be necessary as this has not been granted by legislators.

> "To ensure that gaming is conducted honestly, competitively and free of criminal and corruptive elements, all gaming establishments in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except as provided by the Legislature."

In *Scott*,

SCHOOL IS IN SESSION: FINAL COMPLAINT - 141

> "We are dealing in this case with premises to which the public was invited, thus a revocation of the
>
> general invitation would seem necessary before one could be considered a trespasser. Cases have
>
> held that such an invitation may be revoked for good cause and the violator prosecuted."

In this case, to which this was this opinion was of the majority, noted that

> "A jury trial was held on February 23, 1967. The record indicates evidence was offered showing
>
> that petitioner had been permanently barred from the premises of Harvey's Wagon Wheel because
>
> of prior acts of misconduct. The record does not indicate the nature of the prior misconduct.

This, the Plaintiff is claiming, is the root basis for why RMC 8.10.010 includes the stipulation for places of public accommodation, that if they are open to the public at the time the warning must have been given within the previous six months, as this is consistent with *Scott* in that Mr. Scott had already been permanently trespassed from the property for prior misconduct. The Plaintiff had never been trespassed from the properties for prior misconduct and this is a critical detail.

This would even be consistent with *Slade* in that,

> "Dr. Joel Slade received a letter from a representative of Harrah's Tunica notifying him that he had
>
> been evicted from that casino and that the eviction would be enforced at all Caesars-owned, -
>
> operated, or -managed properties."

In *Slade,* The Doctor had been prior notified of his general invitation being revoked. These reasons were never identified and thus the conclusion of if the reasons were based on good cause were not looked into. But it signifies a consistent pattern, that in order for places of public accommodation to have the right to exclude it must be based on good reason and notification of this trespass prior to is an essential element.

The Plaintiff thinks that the comments made in dissent by Justice Thompson in *Scott* could not be overlooked and that this perspective was what influenced RMC 8.10.010 in that,

> "The fault of the majority opinion lies in its refusal to acknowledge the interplay of the three
>
> subsections. Indeed, only a part of the first subsection is quoted in that opinion. The balance of the
>
> section is ignored. The intermediate appellate court decisions cited by the majority [People v. Brown,
>
> 47 Cal. Rptr. 662 (Cal. App. 1965), and State v. Carriker, 214 N.E.2d 809 (1964)] do not concern
>
> criminal trespass statutes containing provisions similar to subsections 2 and 3 of NRS 207.200, and
>
> are inapposite. It is not useful to cite authority for the established principle that criminal statutes are

1    to receive a strict construction. I respectfully suggest that the application of NRS 207.200 to the

2    circumstances of this case violates that principle. I would grant prohibition."

3        The Plaintiff agrees and finds that *Stoumen* or *Orloff,* are more reminiscent to this situation as it shows the

4    long standing principle that when no reason exclusion is used a place of public accommodation is liable for damages

5    to those they have refused service. These opinions would coincide with *Bell.*

6            "Underlying the congressional discussions and at the heart of the Fourteenth Amendment's

7            guarantee of equal protection, was the assumption that the State by statute or by 'the good old

8            common law' was obligated to guarantee all citizens access to places of public accommodation."

9        This standard would make sense that places of public accommodation do not have a right to no reason

10   exclusion as those whom they would seek remedy from, in government actors, have to follow the Constitution at all

11   times and their standard to seek charges is reasonable suspicion that a crime has been committed. This standard is

12   applied because of the historical importance behind the 4th Amendment and people being seized having done nothing

13   wrong.

14       To be trespassed on demand is the equivalent to resisting arrest in theory. Obviously, some patrons are going

15   to have issue with being demanded to leave for no reason and inevitably refuse to leave or demand a reason. Just like

16   some officers tell people to do things and refuse. The underlying question then is if it was a lawful order.

## II.    INCIDENT 1

18       the Plaintiff was demanded originally to leave over a blanket attached to a backpack called a bedroll. This

19   was later permitted yet the Plaintiff was told after to "shut his mouth or leave." This the Plaintiff claims was not a

20   lawful order. Yet, because the Plaintiff questioned how he was being talked to the Plaintiff was trespassed.

21       How was this demand reasonable? The Plaintiff declares that this is obvious no reason exclusion, as it was

22   arbitrary in its application, hinging the Plaintiff's right to access on Kathy Howard's unreasonable demand, which can

23   be shown to be an attack on the psychomotor agitation components of the Plaintiff's manic disability.

## III.   INCIDENT 2

25       the Plaintiff was a "suspicious suspect who looked lost" and was declared to have been in possession of

26   "excessive baggage." For these reasons, the Plaintiff was expected to leave and comply without question.

27       Where have these reasons become permitted justifications for exclusion? You cannot say "homeless are

28   unwelcome" another way without saying those exact words. The Plaintiff as a patron was a suspicious suspect! What

SCHOOL IS IN SESSION: FINAL COMPLAINT - 143

was suspicious of being lost and how does being lost make the Plaintiff suspected of having done something wrong

enough to warrant an identification check and then demand for exclusion?

As will be covered in Section 3 what is excessive baggage and how do you define this? The Plaintiff contends

that the Defendants had no authority to demand exclusion as good reason clearly did not exist. Further the Plaintiff

contends that the Defendants did not have lawful authority to place the Plaintiff in handcuffs as the Defendants could

have easily waited for police to resolve the issue to see if they had good reason to exclude. This reason can be seen

relating to **Incident 3** where Defendants used unreasonable force in order to detain the Plaintiff.

IV.    **SUMMARY**

That the standard in order for places of public accommodation to exclude is good reason not no reason and

that the Plaintiff was excluded under circumstances which would fall under no reason. Common law protection exist

for these reasons yet have been ignored to provide justification for the I intrusion of the Plaintiff's rights were normally

this right should not be granted.

3.    **CLAIMED POLICIES/ELIGIBILITY CRITERIA**
I.    **CLAIMS**

The Plaintiff is contending that the claimed polices **1.** Are not posted because they are not policy but just

claims used to discriminate against and exclude homeless based on stereotypes, which could be challenged in a court.

**2.** That policies/eligibility criteria were in fact based off stereotypes. And that the claimed violations were by modern

standards innocent and harmless. **3.** That the policies/eligibility criteria violated ADA §36.208 Direct Threat, as the

policies did not cause a threat to the normal operations or to the safety or health of other patrons. **4.** That claimed

policies/eligibility criteria could not withstand a facial constitutional challenge. **5.** That it is these policies which can

show a direct correlation as to why the Plaintiff was demanded exclusion and that the circumstances pertained to

criminalizing the Plaintiff's disabilities and status of being homeless and not conduct.

II.    **POSTING POLICIES**

Why are polices needing posting? For one, so new employees are not given arbitrary authority to exclude

based on their own prerogative as this would lead to discriminatory exclusions. Another example is so that patrons

can discern between what is and what is not permitted, *Musser*, so that they can avoid doing things undesired. And

then there are the reasons so that law enforcement and the courts can ensure that rules are not being used to arbitrarily

exclude as this would be contrary to law.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 144

We can look at current circumstances relating to COVID-19 to see the requirements as casinos have done this in response. Yet still the policies/eligibility criteria remain un-posted and enforced in an arbitrary fashion. The Plaintiff is not contending that places of public accommodations cannot make reasonable request in order to be permitted inclusion.

For example, the standard no shirt, no shoes, no service is not unreasonable and is posted in the majority of establishments. Restricting property could also be reasonable, as obviously allowing homeless to push around a shopping cart, or to have their possessions sprawled about the premises intruding others space or path would be obvious intrusions into the operations and could provide safety issues. And currently in order to use the establishment one must wear a mask as this is done for health concerns. With each of the examples was a detailed and substantiated reason for policy.

### III.    CLAIMED POLICIES BASED ON STEREOTYPES/STIGMA AND NOT A DIRECT THREAT

In order for policies to be lawful they must not be discriminatory, arbitrarily enforced, or based on stereotypes and stigma. And a policy based on excluding bedrolls is clearly stereotyped and centered on stigma associated with the homeless and thus discriminatory in nature. As is a policy that permits exclusion through arbitrarily declaring a patron a suspicious suspect. While assuredly a policy of excessive baggage would not withstand a challenge of it being vague and ambiguous. Why was no consideration taken into what made the baggage excessive? No description by Defendants at trial just this is what they said so that is what it is.

The reality is a blanket attached to a backpack is harmless and innocent, *Papachristou*, by normal standards as was being lost or having a few (2) bags. And the policies/eligibility criteria would not meet the standards as outlined in *Nassau*, nor ADA §36.208 Direct Threat. In fact, a modification to policy was permitted in **Incident 1**. So if a blanket was in reality not permitted as claimed as it was such a major issue why did management permit the Plaintiff to stay with the item used to justify intrusion?

> "the three factors, that are essential if the law is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant health and safety risks, are; the severity of the risk; the probability that the potential injury will

SCHOOL IS IN SESSION: FINAL COMPLAINT - 145

1  actually occur; and whether reasonable modifications of policies, practices, or procedures will

2  mitigate the risk."!

### IV.    FACIAL CONSTITUIONAL CHALLENGE

What is the risk of a "bedroll?" What are the harms of being lost? And how does one define what excessive

baggage is? Are there any other circumstances where these would be permitted without causing a threat to the safety

or health of others, which could be modified? Absolutely as what problems had the Plaintiff really caused besides

being stereotyped for exclusion based on being homeless?

If policies like this can be made then the Plaintiff and other homeless individuals would be "continuously

guilty," *Robinson,* as this permits arbitrary reason to refuse service at anytime just because an individual has to keep

his property on them to avoid losses being homeless. Which has absolutely not been granted by legislators as the

contrary has been ruled in that criminalization over status and not conduct is cruel and unusual punishment,

*Robinson.*

And under *Powell,*

"if… the prohibited conduct was involuntary due to one's condition, criminalization of that

conduct would be impermissible under the Eighth Amendment."

As it was obviously involuntary conduct to keep everything the Plaintiff owned on him as a part of being

homeless as he had no place else to keep his possessions it is clear that hinging criminality upon these reasons alone

would not satisfy good reason. And it is these circumstances that have been clearly used to justify exclusion, that the

Plaintiff was homeless, that the Plaintiff declared his rights were being violated because of this and that by

discriminating against the Plaintiff over his homelessness alone the Defendants were discriminating against the

Plaintiff's disabilities as these were an underlying factor into the Plaintiff's homelessness.

### V.    THE CAUSE OF THE EXCLUSION

The Plaintiff was not excluded for behaving belligerent, aggressive, or loud as the Plaintiff was proclaimed

at trial, instead it was due to the Plaintiff's status of being homeless. The Plaintiff was requested first to leave over a

blanket attached to a bed roll in Incident 1. There is nothing belligerent, aggressive, or loud about that. Nor, as in

Incident 2, is being for no reason besides the Plaintiff's homelessness, a suspicious suspect who looked lost or

excessive baggage. So why it that the Plaintiff acted claimed belligerent, aggressive, and loud as the declared reason

for exclusion, when clearly this had to do with the Plaintiff's possessions and homelessnesss.

SCHOOL IS IN SESSION: FINAL COMPLAINT - 146

4.    **DISCRIMINATION BASED ON DISABILITIES**

I. **BASIS OF CONNECTION**

Through using the Plaintiff's chronic homelessness as means to provide good reason to exclude, which in order to be defined as chronic homeless one must have a or several disabilities which have resulted in the individuals circumstances as discussed in Section 1 subsection D in this complaint, the Defendants have discriminated against the Plaintiff over his disabilities.

Further, by using components of the Plaintiff's disabilities, for example the psychomotor agitation aspect which cause the Plaintiff to have the urge to keep talking, was violated when the Plaintiff right to access were hinged upon him shutting his mouth with no reason to make such a demand under the circumstances and at trial when city witnesses described the Plaintiff having not claimed upon arrest and without any supportive descriptions other than that the Plaintiff had contested his constitutional rights were being violated as to how the Plaintiff had behaved belligerent, aggressive or loud. Which still would not have been consistent with proving a violation of RMC 8.10.010, but rather NRS 203.010 Breach of Peace. But the Plaintiff was not out of control or aggressive but going through a manic episode where the Plaintiff was trying to protect his right to access places of public accommodation as long as he behaved reasonable.

And this is why the Plaintiff is seeking for the enhanceable factor relating to the Plaintiff's disabilities. Because these events were not about what happened that the Plaintiff refused to leave because he felt no reason exclusion is not permitted and instead at trial Defendants defamed the Plaintiff's character by manipulating his disabilities in a means to provide good cause as the prosecution knew definitively that no reason, existed so the prosecuting attorney used witnesses to manipulate the Plaintiff's disabilities as showing good reason, despite that the only relevant factor to satisfy a conviction under RMC 8.10.010 is that the Plaintiff had already been trespassed from the property for prior good reason.

5.    **UNREASONABLE, UNNECESSARY, AND UNLAWFUL USE OF AUTHORITY**

When you boil down this complaint, the factor the Plaintiff is most upset about is the intrusion upon the Plaintiff's autonomy to make his own decisions and not just have to do what he is told without reason. Yet at sentencing Judge Dorothy Nash Holmes made it clear that all the Plaintiff has to do to avoid this again is "just do what he is told." When did Nevada and America become an authoritarian state about doing what one is told and not the liberty to make one's own choices until they prove they cannot handle themselves in a civil manner?

SCHOOL IS IN SESSION: FINAL COMPLAINT - 147

### I.    INCIDENT 1

the Plaintiff stood his ground and had been permitted by management to remain on property with the "bedroll" but after declared the next day the Plaintiff would have to take the property elsewhere. When the Plaintiff contested that this was arbitrary as it had been allowed with no issues previously, no issues on that day now, so what was different about the next day?

Instead of having a reasonable conversation, Kathy Howard demanded the Plaintiff shut his mouth or leave? The Plaintiff questioned how this is appropriate and the Plaintiff was declared trespassed. This is wanton use of authority where the authority does not exist as no laws have been granted to places of public accommodation gifting them the authority to tell a person to shut their mouth and hinge inclusion/exclusion on doing what one is told without reason.

Considering when Defendants waited in the area away from and not talking to the Plaintiff, while the Plaintiff sat quietly and waited for the Officer who responded, why couldn't they have just left the Plaintiff alone and not made an unreasonable demand exerting authority over the Plaintiff unnecessarily? This is a clear separation of equality of the law as this provides places of public accommodation more authority to exert their will over people they invited instead of equal terms where until a person has given good reason places of public accommodation have no authority over its guests.

### II.    INCIDENT 2

the Plaintiff was just told to leave. Does the Plaintiff not have a lawful right to question what good reason exists for exclusion and if none exists refuse to leave? As suspicious suspect who looked lost and excessive baggage did not come into play until trial what was the reason for wanting the Plaintiff to leave? Sounds like no reason.

And so the Plaintiff followed Defendants Michael and Michael thinking their were going to discuss the issue to resolve the matter not walk the Plaintiff to an exit and expect the Plaintiff leave or be arrested. And when they did arrest the Plaintiff he did not resist. This was because the Plaintiff felt confident having read up on circumstances due to Incident 1, that the Plaintiff could convince officers that he had not violated RMC 8.10.010 and would be released because no reason for exclusion existed, not arrested on a separate trespassing statute that still would require good cause to exclude.

### III.    INCIDENT 3

SCHOOL IS IN SESSION: FINAL COMPLAINT - 148

The Plaintiff was never given the chance to leave on his own will that the Plaintiff attempted to leave on his own accord and was met with unreasonable physical force to prevent the Plaintiff from leaving. Why did force need to be used when the Plaintiff was later cited and released? What authority has exists providing casino security to place their hands on patrons under the circumstances?

### IV.    INCIDENT 4

the statement made by Judge Holmes at sentencing instructing the Plaintiff to just "do what he is told next time," is where the violations where allowed to occur. This statement made it clear that the Judges decision was partial in that her decision placed the Plaintiff under the authority of the casino rather then on equal terms. Would under normal circumstances the casino employees have to obey what the Plaintiff told them? So if the Plaintiff cannot do it why would others have that authority over the Plaintiff without good reason, as how is this equality? Additionally, a record of such common law supporting such standing would be great to reference, as to why such decision was made to "just do what one is told," as this standard not only seems intrusive upon ones liberties and freedoms but would be contrary to common law principles.

### 6.    FREE SPEECH

#### I.    REASONS FOR CLAIMS

The Plaintiff is claiming a violation to his free speech occurred primarily involving **Incident 1** as the Plaintiff specifically had his general invitation revoked because the Plaintiff was unreasonable demand to shut his mouth or leave and then questioned how

But the Plaintiff's rights to free speech have also been intruded upon by using "speaking out against intrusion" as a means to claim the Plaintiff had behaved in an unacceptable manner when the Plaintiff had not.

### 7.    CONSPIRACY

#### I.    INCIDENT 4

Why is it that 4 witness over 3 separate incidents on 3 separate days, whom all just had to simply claim that the Plaintiff behaved "belligerent, aggressive and loud," because the Plaintiff was "contesting his constitutional rights were being violated," and that makes it factually unpermitted conduct as described by city witnesses through hostility? Yet the Plaintiff actions were not portrayed as matching the hostility claimed by city witnesses.

How could 4 witnesses describe the Plaintiff in the exact same manner, doing almost the exact same things, with limited correlation between events, having each not heard the others testimony nor in some cases having any

SCHOOL IS IN SESSION: FINAL COMPLAINT - 149

involvement, unless the testimony was scripted and coached by Angie Gianoli? Why did the prosecuting attorney tell witnesses what to say having not been a part of the incidents herself?

If testimony was not scripted, the Plaintiff is claiming that city witnesses would have been able to provide, a clear narrative of their respective incidents with supporting examples of how impermissible belligerent, aggressive, and loud behavior was displayed by the Plaintiff, and that testimonies would not match corroborative claims so identically, basically verbatim, through vague statements.

The Plaintiff is claiming that the defamatory statements were made, because it was recognized by the prosecuting attorney, through the first motion to dismiss filed by the Plaintiff pertaining to the Cal-Neva incident, that without some aspect of "good reason" no reason for exclusion existed, and thus no reason to prosecute existed under the circumstances. This can be seen through the decision to pursue an unlawful conviction in the way the prosecuting attorney coached city witnesses to intentionally and maliciously defame the Plaintiff's character by proclaiming the Plaintiff had behaved unruly.

By presenting the Plaintiff as having been claimed "out of control," instead of that the Plaintiff was simply demanded to leave and refused because he felt he was being discriminated against and unlawfully excluded for being homeless, the prosecuting attorney seemed to think that by proving good cause would substantiate her allegations under RMC 8.10.010.

But that was not what the prosecuting attorney needed to prove to substantiate a claim under RMC 8.10.010. Rather claims that were made were an attempt at associating a violation of RMC 8.10.010 through a violation NRS 203.010 Breach of Peace. And as was covered in Part 4 Section 1 subsection D is that even the claims of belligerent, aggressive, and loud behavior were exaggerated.

So, in order to obtain a verdict the prosecuting attorney conspired and scripted by city Prosecutor Angie Gianoli with city witnesses Donald Stewart, Michael Blanco, Michael Herrick, and Joseph Hanek, when the prosecuting attorney coached Defendants on what to say prior to the trial. This was done as a means to deprive the Plaintiff of his protected rights and to provide justification for exclusion where no justification existed. Why present the Plaintiff as having been hostile, which created a falsified narrative to create good reason to exclude, if places of public accommodation could exclude simply because they said so? The Plaintiff notes that perjury is criminal conduct! So why lie and create a false narrative?

SCHOOL IS IN SESSION: FINAL COMPLAINT - 150

1

        **The Plaintiff provides the following document under penalty of perjury, affirming that all the**

2

**facts stated here in are true and accurate.**

3

**5th of October 2020**

4

Dated this day of Month, year.                *CMJMJR*
                                  Attorney Name

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28